Matt Mead, Alaska Bar No. 0711095
Andrew Erickson, Alaska Bar No. 1605049
LANDYE BENNETT BLUMSTEIN LLP
701 West Eighth Avenue, Suite 1100
Anchorage, AK 99501
(907) 276-5152
mattm@lbblawyers.com
andye@lbblawyers.com

*Attorneys for Defendant Joseph Delia*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RAYMOND C. GIVENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JOSEPH DELIA, | ) |
| | ) |
| Defendant. | ) Case No. 3:23-cv-00121-HRH |
| | ) |

### DEFENDANT JOSEPH DELIA'S OPPOSITION TO PLAINTIFF'S MOTION FOR PREJUDGMENT WRIT OF ATTACHMENT

A fundamental tenant of due process is "that everyone should have his own day in court" and a "full and fair opportunity to litigate."[1] Here, Givens' motion seeks to preclude Delia from raising legitimate defenses and deprive him of the financial resources to mount

---

[1] *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940) and *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996)).

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 1 of 23

those defenses before this litigation has even fully begun.[2]  This Court should deny Givens'

Motion for Prejudgment Writ of Attachment, Docket No. 36, for at least five reasons.

*First*, Alaska Rule of Civil Procedure 89 does not authorize the type of order that

Givens requests. Givens is actually seeking injunctive relief in the form of an order

sequestering funds that might be paid to Delia in the future; however, Alaska Rule 89 does

not provide for that relief. *Second*, the specific property that Givens targets—Delia's

Individual Indian Money ("IIM") account—consists of funds held in trust by the United

States government that are not subject to prejudgment attachment under AS 09.40.030

because those funds are not property located "in the state." *Third*, federal law specifically

prohibits the relief that Givens seeks in this motion (and the case as a whole) because funds

accruing from the lease of an allotment may only be used to satisfy a claim against an

Alaska Native with "the approval and consent" of the federal government, which Givens

did not receive.[3] *Fourth*, Givens fails to establish by a "preponderance of the evidence"

that he is likely to prevail on the merits and that Delia has no "reasonable probability" of

asserting at least one successful defense.[4] And *fifth*, Givens fails to present any evidence,

---

[2]    On November 16, 2023, Givens produced his initial disclosures; however, the
parties have not yet had the chance to begin formal discovery. As of December 18, 2023,
this Court continued scheduling proceedings in this case and the related case, *Givens v.
Oenga Jr*., No. 3:21-cv-0008-HRH. *See* Docket No. 33.

[3]    25 U.S.C. § 410.

[4]    Alaska R. Civ. P. 89(d).

*Givens v. Delia*                                                    Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment          Page 2 of 23

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 2 of 23

besides pure speculation, establishing that he is entitled to the amount of money he seeks to attach. For any of those reasons, this Court should deny Givens' motion.

## FACTUAL BACKGROUND

This Court is already familiar with many of the background facts that gave rise to this case, Leroy Oenga Jr.'s related case, and a previous case involving Wallace Oenga. For the purposes of this motion, Delia provides a brief overview of the history of Givens' dealings with Delia, establishing the foundation for Delia's defenses that will be further explored and developed as this case progresses.

In 1980, Joseph Delia's grandfather, Andrew Oenga, received a forty-acre Native Allotment on the North Slope.[5] Because of its location "on a peninsula known as Heald Point that juts out into the Beaufort Sea and is strategically located for directional drilling into state oil and gas leases,"[6] the allotment was uniquely valuable. In 1989, Andrew Oenga and several oil companies entered into a lease agreement—with the required approval of the United States Department of the Interior, Bureau of Indian Affairs ("BIA")—granting the oil companies rights to operate an oil and gas development and production facility on the allotment.[7] The lease provided for annual rent payments to Andrew Oenga, and subsequently, his heirs, who inherited various percentages of the allotment.[8] The lease also

---

[5]     *See Oenga v. United States*, 83 Fed. Cl. 594, 598 (2008).

[6]     *Oenga v. United States*, 96 Fed. Cl. 479, 482 (2010).

[7]     *See id*.

[8]     *See* Docket No. 30-1 (SEALED).

*Givens v. Delia*                                                    Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment          Page 3 of 23

Case 3:23-cv-00121-HRH    Document 56    Filed 06/26/24    Page 3 of 23

provided for rental increases every five years based on the greater of either the allotment's appraised value or a cost adjustment factor.

In 2003, Givens advertised his services as a lawyer in Alaska, even though he was not a member of the Alaska Bar.[9] In response to Givens' advertisements, one of the Oenga heirs, Leroy Oenga Sr., contacted Givens regarding the lease payments, which the Oenga heirs believed were too low.[10] Givens agreed to represent the Oenga heirs without making it clear to them that he was not licensed to practice law in Alaska.[11] Most of the Oenga heirs, including Delia, had limited formal education and no reason to question an offer from an attorney to represent them.

On October 31, 2003, Givens and the Oenga heirs signed a Contingency Fee Contract, providing that Givens would represent the heirs and be paid directly from the lease payments a percentage of any funds the heirs received as a result of: (a) any back payments owed to the heirs as compensation for the lease dating back to 1989; (b) any increase in lease payments from modification, reformation, or cancellation of the lease; (c) any other compensation, including damages, fees, or costs that the heirs become entitled to, "but which the [heirs] would not be entitled to receive under the existing" lease; (d) any proceeds from any sale of the allotment; (e) any judgment or settlement amount; and

---

[9]     Exhibit A at 2-3 (filed under seal).

[10]     *See id*.; Docket No. 1 at 2.

[11]     *Cf.* Exhibit B at 1 (filed under seal) ("Attorney shall represent the [Oenga heirs] in said matter and do all things necessary, appropriate, or advisable, in regard thereto, whether the same be by representation in legal proceedings or otherwise.").

*Givens v. Delia*                                                    Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment          Page 4 of 23

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 4 of 23

(f) any increased payments resulting from the adoption of an ongoing BIA appraisal as the basis for an adjustment to the lease rental value. Givens' fess were to be calculated under the "Gross Recovery" basis, meaning his fee would be calculated based on the total amount the Oenga heirs received before reimbursing Givens for any costs.

Importantly, because Givens knew that the BIA was in the process of conducting an appraisal of the allotment,[12] which the BIA subsequently used to increase the rental payments for a new five-year period, the Contingency Fee Contract was essentially risk-free to Givens. He became entitled to a percentage of the Oenga's increased annual rental payments automatically as soon as the BIA adopted the appraised value as the basis for the rent payments. Givens started receiving those payments from the heirs, including Delia, in 2006 even while administrative appeals challenging the rental amounts were pending.[13]

Despite Givens' risk-free contractual arrangement, Delia does not dispute the fact that Givens performed substantial legal work on behalf of the Oenga heirs—although Givens' representation of the heirs was materially limited by the fact that Givens never became a member of the Alaska Bar and did not associate with local counsel. For example, when it became clear that the Oenga heirs had potential claims against the oil companies for trespass and unauthorized use of the allotment, Givens did not advise the Oenga heirs to seek an Alaska attorney so that they could file a lawsuit against the oil companies in

---

[12]    Exhibit B at 2.

[13]    *See BP Exploration (Alaska) Inc., and Heirs of Andrew Oenga v. Alaska Regional Director, BIA*, Nos. IBIA 06-71-A; 06-72-A; 07-112-A; 11-061.

*Givens v. Delia*                                                    Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment                Page 5 of 23

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 5 of 23

Alaska. Instead, Givens filed a lawsuit on behalf of the Oenga heirs in the Court of Federal Claims against the United States for breach of its trust responsibility and fiduciary obligations.[14]

On February 8, 2011, after years of litigation against the United States—and the oil companies that intervened as a defendants—the Court of Federal Claims awarded the Oenga heirs $4,924,000 in damages against the United States for breach of trust.[15] Rather than pursue appeals, the parties reached a settlement agreement that provided a lump sum payment to the Oenga heirs and a new lease agreement for the allotment.

The events surrounding the settlement agreement and Givens' ongoing representation of the Oenga heirs are riddled with improprieties and ethical breaches of Givens' duties as an attorney. A full recital of those facts is unwarranted here. For now, it is sufficient to state that Delia looks forward to a full opportunity to engage in discovery and to present those facts to this Court at the appropriate time.

## ARGUMENT

Because prejudgment attachment is a harsh remedy, courts adhere to "the well-settled rule that statutes permitting and providing for the levying of attachments must be strictly construed and followed."[16] Here, Givens' requested relief is both unauthorized by

---

[14]     *See Oenga v. United States*, 83 Fed. Cl. 594 (2008).

[15]     *See Oenga v. United States*, 96 Fed. Cl. 479 (2010).

[16]     *First Nat'l Bank of Anchorage v. Pioneer Laundry & Cleaners*, 14 Alaska 89, 1952 U.S. Dist. LEXIS 4970 at * 5 (D. Alaska 1952) (quoting *Clyne v. Easton, Eldridge & Co.*, 83 P. 36 (Cal. 1905)).

*Givens v. Delia*                                                                    Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment            Page 6 of 23

Case 3:23-cv-00121-HRH    Document 56    Filed 06/26/24    Page 6 of 23

Alaska law and specifically prohibited by controlling federal law. But even if Givens'
requested relief was lawful, Givens fails to meet his evidentiary burden under Alaska Rule
89 "to establish by a preponderance of the evidence the probable validity of [his] claim for
relief in the action and the absence of any reasonable probability that a successful defense
can be asserted by [Delia]."[17] Thus, this Court should deny the motion for prejudgment
writ of attachment.

### I. Alaska Rule 89 Does Not Authorize Givens' Requested Relief.

*First*, Givens styles his motion as a request for prejudgment attachment but he is
actually seeking preliminary injunctive relief against Delia in the form of an order
sequestering Delia's funds pending the outcome of this case. Alaska Rule 89 does not
provide for that type of relief.

Under Alaska Rule 89(e), if the court finds that prejudgment attachment is
appropriate, the court shall order a writ "be directed to a *peace officer* and shall require the
*peace officer* to attach and safely keep property of the defendant."[18] Here, Givens is not
seeking a writ "directed to a peace officer," but rather an order directed specifically at
*Delia*. Givens' proposed order and writ would require that Delia instruct the BIA to transfer
funds from the United States Treasury to the Court registry.[19] That proposed writ is not
actually a "writ of attachment" as described in Alaska Rule 89, but instead a preliminary

---

[17]     Alaska R. Civ. P. 89(d).

[18]     Alaska R. Civ. P. 89(e) (emphasis added).

[19]     *See* Docket Nos. 36-2, 36-3.

*Givens v. Delia*                                                    Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment            Page 7 of 23

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 7 of 23

injunction or a sequestration order. But Givens is not entitled to injunctive relief in this case for money damages,[20] and this Court has previously concluded that Alaska law does not allow prejudgment sequestration.

In *The Aleut Corporation v. Arctic Slope Regional Corporation*, this Court denied a plaintiff's attempt to order a defendant to sequester disputed funds pending the outcome of litigation.[21] The plaintiff, an Alaska Native regional corporation, filed a motion for sequestration, requesting that the court order the defendant, a different regional corporation, to place future revenues received pursuant to Section 7(i) of the Alaska Native Claims Settlement Act into "liquid and secure investments pending this litigation."[22] This Court noted that Alaska law provides for certain prejudgment remedies including attachment, civil arrest, receivers, and replevin; however, "[a]bsent from these statutory enactments is the remedy sought herein [sequestration]."[23] "Given the harsh nature of this remedy and the fact that the Alaska legislature has spelled out in some detail the procedure

---

[20]     *See Cotter v. Desert Palace, Inc.*, 880 F.2d 1142, 1145 (9th Cir. 1989) (affirming denial of preliminary injunction in contract dispute) ("Injuries compensable in monetary damages are not normally considered irreparable.").

[21]     424 F. Supp. 397, 398 (D. Alaska 1976).

[22]     *Id*. at 398.

[23]     *Id*. at 399 (citing AS 09.04.010 *et seq*.; AS 09.40.240-.250; AS 09.40.260 *et seq*.; and Alaska Rules 89, 65, and 88).

*Givens v. Delia*                                                    Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment          Page 8 of 23

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 8 of 23

for obtaining other similar remedies, the implication is clear that Alaska has decided that sequestration of the nature sought herein is not available."[24]

For the same reasons that this Court rejected the sequestration motion in *Aleut Corporation*, Givens' motion for an order directing Delia to sequester disputed funds in the court registry pending the outcome of this litigation should be denied.[25] Prejudgment sequestration of disputed funds is not an available remedy in Alaska.[26]

## II. AS 09.40.030 Does Not Authorize Attachment of Delia's IIM Account Because the IIM Account Is Not "Property in the State."

*Second*, Givens' motion asks this Court to take the extraordinary step of ordering the attachment of funds held in trust by the United States government. Such a provisional remedy is unheard of in a private lawsuit in which the United States is not a party—

---

[24]  *Id*. at 400; *see also Kanaway Seafoods, Inc. v. Pac. Predator*, No. 3:22-cv-00027-JMK-KFR, 2022 U.S. Dist. LEXIS 218131 at * 16 (D. Alaska Sept. 23, 2022) ("Compliance with the substantive requirements of the relevant statute and rule are a necessary component that must be met prior to the ordering of a 'harsh remedy [that] causes the defendant to lose control of his property before the plaintiff's claim is adjudicated.' " (quoting *Hamilton Beach Brands, Inc. v. Metric and Inch Tools, Inc*., 614 F. Supp. 2d 1056 (C.D. Cal. 2009))).

[25]  Although Givens appears to be seeking prospective relief in the form of attaching funds that have not yet been paid to Delia, *see* Docket No. 36-3, Givens does not identify any case in which a court issued a prospective writ of attachment covering property that was not yet in the defendant's possession. *See Anchorage Helicopter Serv. v. Anchorage Westward Hotel,* 417 P.2d 903, 908-09 (Alaska 1966) ("[T]here is nothing in the rule which authorizes the court to restrain the garnishee prospectively . . . The restraint may be imposed only as to wages owing at the time the order of restraint is issued.").

[26]  *See Stokes v. Van Seventer*, 355 P.2d 594, 597 (Alaska 1960) (concluding there is "no authority either by statute or common law for an order requiring the payment of rents into the registry of the court while the action is still pending").

especially a case in which the Untied States could not be made a party under the principles of sovereign immunity.[27]  Even if the proposed writ were proper under Alaska Rule 89, which it is not, this Court should conclude that Alaska law does not authorize Givens' requested order because Delia's IIM account is not property located in the state and Alaska law does not authorize attachment of extraterritorial property.

Alaska Statute 09.40.030 provides that "[a]ll property in the state not exempt from execution may be attached." Nothing in the statute purports to provide authority for a court to order the attachment of property located outside of Alaska. But here, Givens specifically seeks to attach funds held by the United States Treasury in trust for Delia, which are funds that are not held in Alaska.

As the United States has explained, an IIM account is "an interest bearing account for trust funds held by the Secretary that belong to a person who has an interest in trust assets."[28] "As trustee, the Department of [the] Interior has the primary fiduciary responsibility to control and manage trust funds within IIM accounts."[29] Although Delia may withdraw funds from his IIM account, until he does so, the funds remain in the United States Treasury, which is not located in Alaska and is certainly outside the jurisdiction of

---

[27]     *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").

[28]     United States' Supplemental Filing, *Givens v. Wallace Oenga*, No. 3:19-cv-00043-HRH, Docket No. 69 at 9 (D. Alaska Mar. 19, 2020) (citing 25 C.F.R. § 115.002).

[29]     *Id*.

*Givens v. Delia*                                                    Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment          Page 10 of 23

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 10 of 23

Alaska state courts.[30] Because Givens relies on Alaska Rule 89, and a state court would clearly lack jurisdiction over property held by the United States Treasury, this Court should conclude that its authority is similarly limited.[31] There is no separate authority to order the attachment of "extraterritorial property" located outside Alaska,[32] let alone funds held in trust by the United States, and Givens has not identified a single case in which funds held in trust by the United States have been subject to prejudgment attachment in a private civil lawsuit. Thus, this Court should conclude that AS 09.40.030 does not authorize the attachment of Delia's IIM account.

### III.   Federal Law Prohibits Attachment of Delia's IIM Account.

*Third*, 25 U.S.C. § 410 clearly prohibits Givens' claim against allotment lease proceeds in Delia's IIM account. Section 410 provides that "[n]o money accruing from any lease or sale of lands in trust by the United States for any Indian shall become liable for the payment of any debt of, or claim against, any Indian contracted or arising during such trust period . . . except with approval and consent of the Secretary of the Interior."  The statute

---

[30]     *See Crum v. Blixseth (In re Big Springs Realty LLC)*, 426 B.R. 860, 870 (Bankr. D. Mont. 2010) (declining to grant writ of attachment for property outside the state "[a]bsent an express intent" by the legislature).

[31]     *See Koehler v. Bank of Bermuda Ltd*., 911 N.E.2d 825, 829 (N.Y. 2009) ("[I]t is a fundamental rule that in attachment proceedings the *res* must be within the jurisdiction of the court issuing the process, in order to confer jurisdiction." (quoting *Nat'l Broadway Bank v. Sampson,* 71 N.E. 766 (N.Y. 1904))).

[32]     *See FDIC v. Rodenberg*, 622 F. Supp. 286, 288 (D. Md. 1985) (declining to issue writ of attachment for extraterritorial property and distinguishing "post-judgment" attachment, "which, arguably is a more expansive provision").

*Givens v. Delia*                                                    Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment          Page 11 of 23

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 11 of 23

is clear and unambiguous; allotment lease proceeds may not be attached or encumbered for payment of a claim without prior approval from the Secretary.[33]

Givens does not dispute the fact that he seeks to satisfy his claim against Delia from money accruing from the lease of an allotment. And Givens concedes that the Secretary did not approve the Contingency Fee Contract. Instead, he urges this Court to ignore Section 410 entirely.[34]

But Givens' arguments undermine the important public policy reasons behind Section 410. The "provision found its way into the law for the protection of the Indians, who were wards of the government."[35] The statute "is designed to exempt certain Indian property from liability for the payment of certain debts,"[36] ensuring that those proceeds are available for the benefit of Alaska Natives. Although paternalistic (and perhaps an anachronism), the statute remains an important provision that implements the federal government's fiduciary responsibilities to Alaska Natives.[37] Section 410 provides an essential safety net for Alaska Natives who may lack the education and business experience

---

[33] *See Pretty Paint v. Rocky Mtn. Reg'l Director, BIA*, 38 IBIA 177, 178-79 (2002) ("25 U.S.C. § 410 establishes the general rule that funds derived from trust property are not available for the payment of debts of, or claims against, the account holder.").

[34] *See* Docket No. 36 at 18-19.

[35] *Jordan v. O'Brien*, 69 S.D. 230, 234, 9 N.W.2d 146 (S.D. 1943).

[36] *Law Offices of Vincent Vitale, P.C. v. Tabbytite*, 942 P.2d 1141, 1147 (Alaska 1997).

[37] *See Pretty Paint*, 38 IBIA at 178-79 ("[F]unds held in an IIM account are held in trust by the Department of the Interior for the account holder, to whom the Department owes a fiduciary obligation.").

*Givens v. Delia*                                                    Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment          Page 12 of 23

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 12 of 23

to protect themselves from more sophisticated business parties, like Givens. Under the Indian canon of construction, Section 410's protections "should be construed broadly" and "ambiguities resolved in favor of the Indians;"[38] in this case, Delia.

Importantly, the Alaska Supreme Court has interpreted Section 410 to prohibit attorneys from claiming funds derived from Native allotments to satisfy debts owed by their clients. In *Law Offices of Vincent Vitale, P.C. v. Tabbytite*, an Alaska Native allottee entered into a fee agreement with an attorney for litigation involving condemnation of the allotment.[39] After the condemnation was upheld in the courts, the attorney filed a lien on the condemnation proceeds as payment for the representation. The Court concluded that Section 410 prohibited the attorney's claim because the condemnation proceeds were derived from the allotment and "fall within the protection of Section 410."[40] Thus, under controlling Alaska law, an attorney fee agreement that provides for payments directly from allotment lease proceeds is illegal and unenforceable, unless it complies with Section 410.[41]

Although Givens attempts to distinguish *Tabbytite* and rely on two earlier federal cases that applied equitable rules to allow attorneys to be paid from allotment proceeds,[42]

---

[38]    *Tabbytite*, 942 P.2d at 1147 (quoting *Matter of City of Nome*, 780 P.2d 363, 367 (Alaska 1989)).

[39]    *See id*.

[40]    *Id*. at 1148.

[41]    *See Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 888 (Alaska 2013) ("We have held that courts have no power, either in law or equity, to enforce an agreement which directly contravenes a legislative enactment." (internal quotation marks omitted)).

[42]    *See* Docket No. 36 at 19-23.

*Givens v. Delia*                                                                 Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment          Page 13 of 23

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 13 of 23

the *Tabbytite* Court provided a compelling reason why those federal cases are unpersuasive: "Section 410 is neither mentioned nor discussed in the *Arenas* [*v. Preston*, 181 F.2d 62 (9th Cir. 1950)] opinion. Given that Section 410 applies, we are not free to decide this case based on the rationale underlying *Arenas*, because that rationale conflicts with the explicit command of the statute."[43] Put simply, unlike *Tabbytite*, neither *Arenas* nor *United States v. Equitable Trust Company of New York*, 283 U.S. 738 (1931) addressed Section 410's explicit prohibition on claims against allotment lease proceeds.

In both *Arenas* and *Equitable Trust*, the courts applied equitable powers to award attorney's fees from allotment proceeds in suits against the United States. Importantly, in both cases, it was the United States that opposed the attorney's fees payments—not the client or allotee. The courts, sitting in equity, erred on the side of ensuring that allotees could hire and pay their attorneys. For example, in *Arenas*, the Ninth Circuit specifically invoked the Indian canon to resolve doubts about the court's authority to order payments in favor of the allotee's attorney. The exact opposite situation is present here: Givens seeks payments from Delia's IIM account over the objections of both Delia (the allotee) and the United States, and this lawsuit is between private parties, not against the United States.

Ultimately, it is determinative that Givens admits that he has not complied with Section 410. According to his motion, he "believed the government likely would not approve [the Contingency Fee Contract] or would insist on terms that would dissuade

---

[43] *Tabbytite*, 942 P.2d at 1148.

*Givens v. Delia*                                                    Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment          Page 14 of 23

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 14 of 23

Givens from taking the case in the first place."[44] But Givens does not explain the logic of that statement; why would the Secretary disapprove an attorney contract if the contract complied with governing rules of professional conduct and treated the allotees fairly? Courts "cannot assume that the Secretary of the Interior will unreasonably disapprove of reasonable fees under section 410."[45] This Court should not entertain Givens' brazen attempt to circumvent federal law. At the very least, Delia has raised a substantial question of law that deserves full briefing on the merits before Delia's property is seized and sequestered.

## IV.    Givens Fails to Establish that He Is Likely to Prevail on the Merits.

*Fourth*, Givens has not met his burden to establish by a "preponderance of the evidence" that he is likely to prevail on the merits.[46] To succeed under Alaska Rule 89, Givens must show that Delia lacks a "reasonable probability" of asserting at least one successful defense. Inversely, only one of Delia's defenses needs to have a "reasonable probability" of success to defeat Givens' motion.

### A.    Delia Has a Reasonable Probability of Success on His Defense of Coercion, Undue Influence, and Duress.

Delia raises numerous defenses to Givens' claims, none of which have been fully adjudicated with respect to Delia. For example, Delia asserts that the Contingency Fee

---

[44]    Docket No. 36 at 19.

[45]    *Tabbytite*, 942 P.2d at 1148 n. 6.

[46]    Alaska R. Civ. P. 89(d).

*Givens v. Delia*                                                    Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment          Page 15 of 23

Case 3:23-cv-00121-HRH    Document 56    Filed 06/26/24    Page 15 of 23

Contract as amended is void and unenforceable because it was entered into as a result of coercion, undue influence, and duress.[47] Givens presents absolutely no evidence to establish that Delia lacks a "reasonable probability" of success on that defense. The only evidence that Givens includes with his motion is an affidavit signed by Delia stating that Givens attempted to intimidate Delia and the other Oenga heirs into signing an amendment to the Contingency Fee Contact.[48] Rather than disprove Delia's allegations, that evidence clearly *supports* Delia's defense. Givens has never refuted Delia's allegations, either through a declaration or any other admissible evidence. Because Delia has raised a triable issue of fact, at least with respect to his defense of coercion, undue influence, and duress,[49] this Court should deny Givens' motion for prejudgment attachment.

### B. Delia Is Not Precluded From Raising Any of His Defenses.

Givens' argument that res judicata or collateral estoppel bar Delia from raising certain defenses, including duress, is meritless.[50] Under Alaska law, a non-party may only be bound by a prior judgment if that non-party was in "privity" with a party that actually litigated a case that resulted in a final judgment on the merits.[51] Alaska has adopted the

---

[47]  *See* Docket No. 7 at 11.

[48]  Docket No. 41-2 at 2 (SEALED).

[49]  *See Totem Marine Tug & Barge v. Alyeska Pipeline Serv. Co.*, 584 P.2d 15, 21 (Alaska 1978) (reversing summary judgment on duress claim and remanding for trial).

[50]  Docket No. 36 at 11.

[51]  *See Powers v. United Servs. Auto. Ass'n*, 6 P.3d 294, 297-98 (Alaska 2000).

*Givens v. Delia*                                                    Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment          Page 16 of 23

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 16 of 23

Restatement (Second) of Judgments approach to privity, which "relies on the various specific relationships that justify preclusion."[52] According to the Alaska Supreme Court,

> A non-party will be found to have been in privity with a party to a prior legal proceeding only if that non-party (1) substantially participated in the control of a party's presentation in the adjudication or had an opportunity to do so; (2) agreed to be bound by the adjudication between the parties; or (3) was represented by a party in a capacity such as trustee, agent, or executor.[53]

Here, none of the circumstances necessary to find privity between Delia and Oenga Jr. apply.[54] Delia did not substantially participate nor control Oenga Jr.'s litigation in other proceedings. Oenga Jr. is represented by separate counsel and pursued an independent legal strategy. Oenga Jr. chose to raise his challenge to the reasonableness of Givens' fee under the Alaska Bar Association's fee dispute rules,[55] while Delia chose to litigate the issue in

---

[52]  *Id*. (quoting *Alaska Foods, Inc. v. Nichiro Gyogyo Kaisha, Ltd*., 768 P2.d 117, 121 (Alaska 1989)).

[53]  *Strong v. Williams*, 435 P.3d 872, 875 (Alaska 2018). (quoting *State, Dep't of Health & Soc. Servs., Office of Children's Servs. v. Doherty*, 167 P.3d 64, 73 (Alaska 2007)).

[54]  Givens appears not to contest that fact that Delia has never agreed to be bound by any other adjudication, and Delia was never represented by any other Oenga heir acting as his trustee, agent, or executor. *See id*.

[55]  *See generally Oenga Jr. v. Givens*, No. 2:23-cv-0002-HRH and *Givens v. Oenga, Jr.,* No. 3:21-cv-0008-HRH.

*Givens v. Delia*                                              Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment          Page 17 of 23

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 17 of 23

this Court.[56] Delia was never afforded a "full and fair opportunity" to litigate the issues that Oenga Jr. raised in a completely different forum—a forum that mandates strict confidentially and bars participation or even observation by non-parties.[57]

Importantly, Delia lacked a full and fair opportunity to substantiality participate in Oenga Jr.'s arbitration proceedings because those proceedings were confidential under Alaska Bar Rule 40(r). Delia did not receive any specific information or filings from the arbitration proceedings until Givens provided his initial disclosures in this case on November 16, and only after this Court had approved a stipulated confidentiality agreement.[58] To date, Delia has never been provided with the whole case file or merits briefs submitted in the Superior Court confirmation proceedings, which remain under seal by order of Judge Roetman.[59] Courts have been especially reluctant to apply preclusion

---

[56] *See* Docket No. 17 at 5 ("Under Alaska Bar Rule 39(d) a client who is the subject of an attorney fee dispute may elect to seek judicial resolution rather than through the Alaska Bar Association's fee dispute program. Delia has filed an answer in this case and believes that this Court is the appropriate forum in which to raise his defenses to the purported contingency fee contract.").

[57] *See Taylor*, 553 U.S. at 892.

[58] Docket No. 13.

[59] The docket for *Oenga Jr. v. Givens*, No. 2BA-23-111CI is not even available publicly on Courtview.

*Givens v. Delia*                                              Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment          Page 18 of 23

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 18 of 23

where, like here, the prior arbitration proceedings were confidential and the non-party "could not effectively or meaningfully engage in the adversary process."[60]

Givens' exclusive reliance on *Donnelly v. Eklutna, Inc.* is misplaced.[61] In *Donnelly*, the Alaska Supreme Court concluded that a homesteader, his wife, and children were in privity because "the parties are so closely related that it is fair to legally bind both."[62] The Alaska Supreme Court relied on the fact that the homesteader, his wife, and children "occupied the land as a family unit" and were "successors in interest" to the real party with the same claim to title of the land.[63]

In contrast to the facts in *Donnelly*, Delia and Oenga, Jr. do not have a close familial relationship, are not successors in interest, and do not share identical defenses against Givens' claims. Delia was one of the Oenga heirs who originally signed the purported Contingency Fee Contract in 2003 and was personally involved in the transactions with Givens beginning in 2003 and continuing through at least 2018. Some of Delia's defenses stem from his personal presence at the meeting in August 2011 where Givens coerced the heirs to sign an amendment to the Contingency Fee Contract. Oenga Jr. was not present at

---

[60] *Asahi Glass Co. Ltd. v. Toledo Eng'g Co.*, 505 F. Supp. 2d 423, 437-38 (N.D. Ohio 2007) ("To the extent that [the non-party] participated in the arbitration, [the non-party] fought its adversary with its vision dimmed. Due process prevents this court from imposing issue preclusion on [the non-party] under these circumstances.").

[61] *See* Docket No. 36 at 14 (citing 973 P.2d 87 (Alaska 1999)).

[62] 973 P.2d at 92.

[63] *Id*. at 93.

*Givens v. Delia*                                          Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment          Page 19 of 23

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 19 of 23

that meeting and it is not clear that he would have standing to raise that defense. On the other hand, Oenga Jr. has indicated that he will assert defenses based on the fact that he never signed the Contingency Fee Agreement or amendments, and never retained Givens as an attorney. Oenga Jr.'s legal rights with respect to the Contingency Fee Agreement may be completely different than Delia's. Thus, although there is some unity of interest between Delia and Oenga Jr., it is not enough to establish that they were in "privity" with one another and may be bound as non-parties to separate litigation.

This Court should be especially cautious of Givens' preclusion arguments because they implicate Delia's fundamental due process rights. In *Taylor v. Sturgell*, the U.S. Supreme Court explained that the "application of claim and issue preclusion to nonparties thus runs up against the deep-rooted historic tradition that everyone should have his own day in court."[64] The Court rejected a "broad theory of virtual representation," in which a non-party could be bound by a prior judgment if the relationship between the party and non-party was "close enough."[65] Justice Ginsberg, writing for the unanimous Court, emphasized that "virtual representation would authorize preclusion based on identity of interests and some kind of relationship between parties and nonparties, shorn of the procedural protections" required by due process.[66] In other words, the application of preclusion to non-parties must be limited and narrowly applied. This Court should reject

---

[64]     *Taylor*, 553 U.S. at 893 (quoting *Richards*, 517 U.S. at 798).

[65]     *Id*.

[66]     *Id*.

*Givens v. Delia*                                                    Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment          Page 20 of 23

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 20 of 23

Givens' attempt to resurrect "virtual representation" in the context of his contract claims against two related but independent Native allotment interest-holders.[67]

### C. Delia's Defenses Have Never Been Raised in a Prior Proceeding.

Finally, even if Delia were in privity with the other Oenga heirs, which he is not, preclusion does not bar Delia's defense of coercion, undue influence, and duress because no court or tribunal has ever reached the merits of Delia's defense that *his* signature on the Contingency Fee Contract was improperly obtained.[68] In Alaska, duress is a fact-specific defense to contract enforcement.[69] A contract may be voided if "1) one party involuntarily accepted the terms of another; 2) circumstances permitted no other alternative; and 3) such circumstances were the coercive acts of the other party."[70] "The involuntariness prong of duress is a subjective test. The question is not whether a 'reasonable' person's will would have been overcome; the question is whether [Delia's] was."[71] Delia's defense will center

---

[67]    Applying preclusion in the context of Native allotment litigation could have far-reaching consequences. Many Native allotments are owned by numerous heirs to the original allotee. The heirs are often related to some degree or another, but like Delia and Oenga Jr. may not share close familial ties or coordinate in their legal strategies. Givens' theory would severely limit the ability of non-party allotees to raise new or different claims once one allottee has litigated allotment-related claims.

[68]    *See Strong*, 435 P.3d at 875 (preclusion requires a final decision on the merits).

[69]    *See generally Totem Marine Tug & Barge*, 584 P.2d at 22 (noting that what constitutes a wrongful or coercive act "depends on the particular facts in each case").

[70]    *Helstrom v. N. Slope Borough*, 797 P.2d 1192, 1197 (Alaska 1990).

[71]    *Id*. at 1198.

*Givens v. Delia*                                                      Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment                    Page 21 of 23

Case 3:23-cv-00121-HRH    Document 56    Filed 06/26/24    Page 21 of 23

on his subjective mindset at the time of the purported contract formation. It is not clear whether any other Oenga heir would even have standing to raise that particular defense.

Although Leroy Oenga, Jr. purportedly raised similar defenses in his Alaska Bar Association Fee Arbitration, neither the Fee Arbitration Panel Decision and Order, nor the Superior Court's order confirming that decision, address contract defenses as applied to Delia.[72] Importantly, neither decision even mentions the phrase "duress."[73] It appears that the Bar Association did not even consider any traditional contract defenses to the Contingency Fee Contract, which would mean there is no preclusive effect, even as to Oenga Jr.'s defenses. Thus, this Court should deny Givens' motion because he failed to establish that he is likely to prevail on the merits.

## V. Givens Fails to Submit Admissible Evidence Supporting His Claimed Damages Amount.

*Fifth*, and finally, Givens does not produce any admissible evidence justifying his claim that he is owed "$157,141.70, plus accrued prejudgment interest."[74] Givens' declaration includes a table containing "estimates" of the amounts of rent payments due in 2022, 2023, and 2024. But those "estimates" are not based on anything besides speculation. Givens has not engaged in discovery to determine the exact amounts that were paid to Delia's IIM account from the lease. Outside of the discovery process, Givens is not

---

[72]    *See* Docket Nos. 52 (SEALED) and 53 (SEALED).

[73]    *See id*.

[74]    Docket No. 36 at 25; Docket No. 38-1 (SEALED).

*Givens v. Delia*                                                          Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment          Page 22 of 23

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 22 of 23

otherwise entitled to that confidential information. To meet his burden of proof, Givens was required to produce actual, admissible evidence justifying the precise amounts to be attached. Givens made no effort to acquire that information. He should not be allowed to take shortcuts and attempt to win this case before it has even begun.

## CONCLUSION

For the foregoing reasons, this Court should deny Givens' motion for a prejudgment writ of attachment.

Respectfully submitted.

DATED: June 26, 2024        LANDYE BENNETT BLUMSTEIN LLP

*/s/ Andrew Erickson*

_____

Matt Mead, Alaska Bar No. 0711095
Andrew Erickson, Alaska Bar No. 1605049

*Attorneys for Defendant Joseph Delia*

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2024, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

*s/ Andrew Erickson*

_____

Andrew Erickson

*Givens v. Delia*        Case No. 3:23-cv-00121-HRH
Delia's Opposition to Motion for Prejudgment Writ of Attachment    Page 23 of 23

Case 3:23-cv-00121-HRH   Document 56   Filed 06/26/24   Page 23 of 23