ERIC GRANT, Deputy Assistant Attorney General
U.S. Department of Justice,
Environment & Natural Resources Division

JOANN KINTZ
PO Box 7611, Ben Franklin Station
Washington, DC, 20044-7611
Telephone: 202-305-0424
Facsimile: 202-305-0275
Email: joann.kintz@usdoj.gov

BRYAN SCHRODER, United States Attorney
STEVEN SKROCKI, Assistant U.S. Attorney
222 West 7th Ave., Room 253, #9
Anchorage, AK 99513
Telephone:  907-271-5071
Facsimile:  907-271-3224

*Attorneys for the United States*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RAYMOND C. GIVENS,<br><br>    Plaintiff,<br><br>v.<br><br>WALLACE OENGA,<br><br>    Defendant. | No. 3:19-cv-00043-HRH |

**UNITED STATES' SUPPLEMENTAL BRIEF
REGARDING PLAINTIFF'S MOTION TO ENFORCE JUDGMENT AND RULE 70(a)
ORDER AND THE COURT'S ORDER TO SHOW CAUSE**

TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2
      A.   Procedural Background ............................................................................. 2
      B.   History of Contingency Fee Agreement(s) ............................................... 4
      C.   BIA/OST Involvement .............................................................................. 5

III.  STATUTORY AND REGULATORY CONSIDERATIONS GOVERNING IIM
      ACCOUNTS ....................................................................................................... 9

IV.   ARGUMENT .................................................................................................... 11
      A.   Plaintiff Has Failed to Establish a Waiver of the United States' Sovereign Immunity ..... 11
           1.   Neither Rule 70 Nor the Court's Inherent Jurisdiction Are a Basis For Jurisdiction
                Against the United States ................................................................... 12
           2.   The Administrative Procedure Act is Not a Basis for a Waiver of Sovereign Immunity ..
                .......................................................................................................... 14
      B.   Plaintiff Must Comply with Specific Interior Procedures Before Turning to a Federal
           Court And Has Failed to Do So ................................................................ 15
      C.   Plaintiff's Arguments Against Adhering to BIA Regulations Fail .................... 17
      D.   Because Defendant's IIM Account Is In a Supervised Status, OST Does not Possess
           Authority to Issue Disbursements Absent BIA Approval ......................... 21

V.    CONCLUSION ................................................................................................. 22

**Exhibit M**
**Page 2 of 26**

## I. INTRODUCTION

Pursuant to the Court's Minute Entry on January 16, 2020, the United States hereby files this response to Plaintiff's Supplemental Response to United States' Notice of Statement, ECF No. 65. Plaintiff seeks to utilize the default judgment issued in this case against Defendant as a basis to ignore federal laws, regulations, policies, and procedures that govern disbursements from Individual Indian Money ("IIM") accounts. What is more, Plaintiff seeks to have this Court require the Office of the Special Trustee for American Indians ("OST"), a non-party to this case and agency of the United States, to disburse trust assets from Defendant's IIM account to Plaintiff, notwithstanding governing laws to the contrary. Plaintiff seeks to achieve this under the guise of a contempt order against OST, even though, prior to Plaintiff's motion for an order to show cause against OST, the Court had not issued a single order directed at OST or any other federal agency or official. As a result, Plaintiff's request is jurisdictionally flawed; he has failed to establish a waiver of sovereign immunity allowing the Court to assert jurisdiction over OST in this case. Plaintiff has also failed to establish a legitimate justification for directing any contempt order against OST. For these reasons and the reasons stated below, the Court should deny Plaintiff's request for a contempt order against OST or an order directing OST to otherwise pay Plaintiff from Defendant's IIM account. Instead, the Court should direct Plaintiff to follow and exhaust the administrative process for third-party requests to encumber IIM accounts, as he should have done in the first instance.

## II.     BACKGROUND

### A.  Procedural Background

On February 14, 2019, Plaintiff Raymond C. Givens filed a complaint against Defendant Wallace Oenga for declaratory judgment and specific performance or damages for failure to pay pursuant to an attorney contingency fee agreement between Plaintiff and the heirs of Andrew Oenga ("Oenga heirs"), which included Defendant. ECF No. 1 ("Complaint").  The Complaint did not name the United States or any federal agencies as a defendant in the lawsuit, alleging the basis for jurisdiction as 28 U.S.C. § 1332, diversity jurisdiction. *Id*. ¶ 3.  Plaintiff alleged that Defendant violated the terms of a 2018 Settlement Agreement regarding the contingency fee agreement between Plaintiff and the Oenga heirs, entitling Plaintiff to a portion of rents payed by BP Exploration, Inc. under a lease on a restricted fee allotment, located at Point Heald, east of Prudhoe Bay, Alaska. *Id*. ¶ 19.  The Complaint further alleged that in the 2018 Settlement Agreement, Defendant agreed to give direction to OST to pay Plaintiff automatically from Defendant's IIM account but failed to do so. *Id*. ¶¶ 18-23. Plaintiff sought the following relief:  a declaration that: the 2018 Settlement Agreement is an enforceable contract; Defendant is bound by the Agreement; Defendant owes Plaintiff a percentage of past and future rent payments under the contingency fee agreement; Defendant is obligated to direct BP and/or OST to pay Plaintiff past and future amounts owed to Plaintiff plus interest and attorney's fees from rents paid to Defendant; and Defendant is obligated to direct BP and/or OST to make future automatic, annual payments to Plaintiff. *Id*. at 12-13.  Plaintiff further sought damages from Defendant's failure to pay Plaintiff past amounts owed; an order of specific performance requiring Defendant to instruct BP and/or OST to pay Plaintiff for past amounts owed to Plaintiff plus interest and

attorney's fees; an order of specific performance requiring Defendant to instruct BP and/or OST to pay automatic, annual payments to Plaintiff for future amounts owed to Plaintiff through calendar year 2036; and attorney's fees and costs for this action. *Id*. at 13-14.

The Court entered a Default Judgment ("Judgment") against the Defendant on June 10, 2019. ECF No. 29. The Judgment awarded the Plaintiff $136,116.91. *Id*. It also contained a specific performance award that required the Defendant to sign and submit two Forms OST 01-004, which would instruct OST to make certain payments to the Plaintiff from the Defendant's IIM account. *Id*. The Judgment also stated that if the Defendant failed to sign and submit the Forms OST 01-004 as ordered, the Plaintiff may apply to the Court for an order under Federal Rule of Civil Procedure ("Rule") 70(a) that will direct the Clerk of Court to sign the Forms on Defendant's behalf. ECF Nos. 28, 29. Defendant did not sign and submit the Forms OST 01-004. The Court granted an Order Enforcing Judgment ("Order") on July 9, 2019, pursuant to Rule 70(a), that directed the Clerk of Court to sign the Forms OST 01-004 on the Defendant's behalf. ECF No. 39. The Judgment became final when the United States Court of Appeals for the Ninth Circuit dismissed the Defendant's appeal on October 17, 2019. The Plaintiff submitted the Forms OST 01-004 signed by the Clerk of Court to OST on July 10, 2019, and OST has not made payments pursuant to the Forms.

On December 6, 2019, Plaintiff filed with this Court a Motion to Enforce Judgment and Rule 70(a) Order ("Motion") against OST, for the first time attempting to bring OST and the United States into this lawsuit. ECF No. 55. Plaintiff's Motion sought entry of an order that requires OST to show cause why it should not be held in contempt "for its failure to make payment to" Plaintiff from the Defendant's IIM account "pursuant to direction from the Clerk of

Court, acting for and on behalf of Defendant by order of this Court under Rule 70(a)." *Id*. at 1. Alternatively, the Plaintiff's Motion sought entry of an order that requires OST to show cause why the Court "should not directly order OST to make payment to" the Plaintiff from the Defendant's IIM account. *Id*. at 2.

On January 2, 2020, the Court issued an order to show cause, directing counsel and a representative for OST to appear at a hearing and show cause why OST should not be held in contempt for failing to pay Plaintiff from Defendant's IIM account pursuant to the Forms submitted by the Clerk of Court. ECF. No. 59. On January 16, 2020, a show cause hearing was held in which counsel for the United States and a representative from OST were present and raised several jurisdictional and substantive arguments against Plaintiff's request that the Court issue a contempt order against OST or otherwise direct the agency to pay Plaintiff from Defendant's IIM account. At the hearing, the Court directed the Plaintiff and the United States to file supplemental briefing on the issues. The United States files this supplemental brief in response to Plaintiff's supplemental brief filed February 18, 2020. ECF No. 65.

### B. History of Contingency Fee Agreement(s)

According to the Complaint, there are several iterations of the claimed contingency fee agreement between Plaintiff and Defendant. On October 31, 2003, Plaintiff initially entered into a contingency fee contract with Defendant and the other Oenga heirs concerning potential claims against the Bureau of Indian Affairs ("BIA") for breach of fiduciary duties regarding approval of a lease on the restricted fee allotment. Complaint, ¶ 1. The Oenga heirs believed the rental payments approved by the BIA were too low. *Id*. Under the 2003 contingency fee agreement, Plaintiff was to be paid a percentage of any increases in past and future rent he was able to obtain

for the allotment. *Id.*

In 2006, Oenga's heirs brought suit against the United States in the Court of Federal Claims alleging breach of the BIA's fiduciary duties regarding the amount of the rental payments on the allotment. *Wallace Oenga, et al. v. United States of America, and Intervenors BP Exploration, et al.*, United States Court of Claims, Case No. 06-0491-NBF. After a judgment in the Oenga heir's favor and while the case was on appeal, a confidential term sheet was signed between the parties on June 23, 2011. Complaint, ¶¶ 8-10. And on May 30, 2012, a confidential settlement agreement was reached by the parties. *Id.* ¶ 13. In between the time of the confidential term sheet and settlement agreement, the contingency fee agreement was twice amended as between the Plaintiff and the Oenga heirs, on August 11, 2011 and May 24, 2012. *Id.* ¶¶ 11, 12.

After Defendant failed to pay Plaintiff in calendar year 2018, Plaintiff and Defendant entered into a Settlement Agreement in which Plaintiff agreed to refrain from bringing suit against Defendant if Plaintiff received by October 31, 2018, the amount Defendant owed Plaintiff from rent for calendar year 2018 (paid by BP in October 2017), plus interest at 5% per annum. *Id.* ¶ 18. Included within the Agreement was a provision that Defendant would sign forms to give OST direction to make automatic yearly payments to Plaintiff from future rents paid by BP. *Id.* When Defendant failed to pay Plaintiff or submit the forms, Plaintiff brought this action against Defendant.

### C. BIA/OST Involvement

Up until the confidential terms sheet and settlement relating to the Court of Federal Claims ("CFC") lawsuit, neither BIA nor OST had any involvement with the contingency fee

agreement between Plaintiff and the Oenga heirs. When BIA was involved in any matters related to the contingency agreement, it continuously stated the agreement was between the Plaintiff and the Oenga heirs, not the United States, and at no time did the United States approve any iteration of the contingency fee agreement between Plaintiff and the Oenga heirs. The confidential terms sheet recognized that an agreement existed between Plaintiff and the Oenga heirs regarding attorney's fees, but the United States did not approve the agreement between the two parties. *See* Pl.'s Ex. 3 at 2 ("Some of the lump sum and the future rents will be paid to Givens Law Firm and some to BIA for Plaintiffs' benefit, *as agreed to by Plaintiffs and Givens Law Firm*.") (emphasis added).

Following the confidential terms sheet and in the context of the settlement discussions of the CFC case, Plaintiff requested that the United States enter into a distribution agreement that would account for attorney's fees. To that end, Plaintiff wanted the requested distribution agreement to include provisions that would authorize a one-time standing directive to OST, pursuant to which one-quarter of each annual rent payment deposited into the Oenga heirs' IIM accounts would be automatically calculated and disbursed to Plaintiff. In denying the request, on October 17, 2011, the Department of Interior communicated to Plaintiff the following:

> While it is true that BIA and OST have a duty to adult IIM account holders to comply with their directions as to disbursement of IIM account balances, that is considered to cut against, rather than in favor of, the execution of the Distribution Agreement you have proposed on behalf of your clients. Because an account holder would have the last word as to what to do with the deposits to his account, OST wouldn't be able to commit to entering into and implementing the proposed Distribution Agreement. If after it was executed, one of the account holders changed his mind, and contacted the OST with instructions not to make payments provided for under the Agreement, the OST would consider that its obligation would be to comply with the account owner's most current instructions, rather than the directive in the proposed Distribution Agreement.

United States' Supplemental Filing
Case No. 3:19-cv-00043-HRH                6

*See* Exhibit A at 1. (attached).

The BIA also reviewed an iteration of the contingency fee agreement after receiving a request to pay Plaintiff's attorneys fees from a minor Oenga heir's IIM account in 2011. In response, on December 9, 2011, Eugene Virden, Alaska Regional Director of the BIA, sent a letter to Plaintiff explaining the distribution plan process for disbursing funds from the minor's IIM account and raised concerns with the contents of the contingency fee agreement. Pl's Ex. 17, ECF No. 66. In the letter, Virden explained BIA's process for approving a distribution plan for expenses paid from the minor's account, noting that "even if a creditor can point to legitimate obligations, and a guardian advocates a particular disbursement, the BIA will not authorize IIM accounts disbursements which would jeopardize the account holder's ability to meet living expenses." *Id*. at 3. The BIA requested additional information and documentations about the claimed attorneys expenses, *id*. at 3-5, and also stated that "BIA is uncertain whether or not the current Contingency Fee Agreement meets the standard for 'reasonableness' under Rule 1.5(a)." *Id*. at 6 (citing Model Rule of Professional Conduct 1.5(a)). Thus, the BIA requested that Plaintiff provide a submission to address whether payment of the fees is in the minor's best interest and whether the contingency fee agreement is reasonable under Rule 1.5(a) with regard to the future rents provision. *Id*. at 5, 7. BIA also noted that the Oengas never sought BIA's advice on the contingency fee agreement. *Id*. at 5. Nonetheless, BIA approved payment of the fees in the disbursement plan for the minor's account, but it did not purport to broadly approve the agreement between the Oenga heirs and Plaintiff.

Unwilling to accept the explanation and denial of automatic payments from the Oenga heirs' IIM account as provided in the October 17, 2011 communication, Plaintiff filed a petition

with the BIA again on April 27, 2015 requesting that BIA automatically pay annual payments for attorney's fees from the Oenga heirs' IIM accounts. *See* Exhibit B (attached). In the request, Plaintiff argued, *inter alia*, that BIA was required to pay "because a representative of the Secretary of the Interior has approved the attorney-fee agreement between Mr. Givens and the Oenga heirs, under which they agreed to these yearly payments." *Id*. at 1-2. Weldon B. Loudermilk, Regional Director of the BIA, responded to the petition on August 17, 2015, notifying Plaintiff that "BIA did not approve the original fee contract or any amended agreements in advance of Mr. Givens and the Oenga heirs signing them" and "that the BIA and/or OST are not parties to any of the fee contracts/amendments signed between the Oenga heirs and Mr. Givens." *Id*. at 2. BIA further stated:

> The annual lease payments are made to and are distributed by OST to each eligible allotment owners' respective IIM accounts. As such, it is the responsibility and legal control of the Oenga heirs to pay the annual attorney fees to Mr. Givens as signed by each person in the fee contracts/amendments. The United States, Department of Interior, BIA or OST are neither parties to the fee contracts nor responsible to ensure annual payments are made to Mr. Givens.

*Id*. at 3. Thus, BIA denied Plaintiff's request for automatic payments from the Oenga heirs' IIM accounts. BIA also notified Plaintiff of his right to appeal the decision to the Interior Board of Indian Appeals and the time requirements for doing so. *Id*. at 6. Plaintiff chose not to appeal the decision.

With respect to Defendant's IIM account, in January 2020, BIA determined that a competency assessment needed to be done on Defendant Wallace Oenga. Upon completion of the assessment, BIA determined that Defendant was an adult in need of assistance, and on January 9, 2020, Defendant was notified by letter that, as a result of the assessment, his IIM account would be made restricted through supervision. The restriction became effective on

United States' Supplemental Filing
Case No. 3:19-cv-00043-HRH                   8

**Exhibit M**
**Page 10 of 26**

January 10, 2020. Tony Delia has a Department of Interior approved power of attorney over Defendant's account,[1] and as set forth below, given BIA's determination that Defendant is in need of assistance and its consequent decision to supervise his account, certain restrictions have been placed on Defendant's IIM account.

## III. STATUTORY AND REGULATORY CONSIDERATIONS GOVERNING IIM ACCOUNTS

Through passage of the American Indian Trust Fund Management Reform Act of 1994 (Public Law 103-412), Congress created OST to improve the accountability and management of Indian funds held in trust by the United States. As trustee, the Department of Interior has the primary fiduciary responsibility to control and manage trust funds within IIM accounts. 25 C.F.R. § 115.002. In furtherance of this responsibility, OST as well as BIA have prescribed policies, procedures, and regulations that they must follow in authorizing and distributing disbursements from IIM accounts.

An IIM account is "an interest bearing account for trust funds held by the Secretary that belong to a person who has an interest in trust assets." *Id*. There are three types of IIM accounts: unrestricted, restricted, and estate accounts. Unrestricted accounts allow an account holder, upon request, to withdraw funds from an IIM account and place or remove a voluntary hold on an account without BIA approval. *See* Interagency Procedures Handbook: Management of Trust Funds Derived From Assets and Resources on Trust and Restricted Indian Land ("Interagency Procedures Handbook"), Ch. 6, § 6-6. On the other hand, supervised IIM accounts "are a type of

---

[1] In his Motion for Rehearing and to Vacate Default Judgment, Defendant notified the Court that Tony Delia was granted power of attorney over his affairs on June 19, 2019. ECF No. 42 at 1.

restricted account under the control and management of the Secretary, which requires disbursements to be approved by the BIA." 70 Indian Affairs Manual ("IAM") 5 § 1.1; 25 C.F.R. §115.002. The funds within an IIM account of an adult who is *non compos mentis* or in need of assistance[2] "may be disbursed for his benefit for such purposes *deemed to be for his best interest and welfare*, or the funds may be disbursed to a legal guardian or curator *under such conditions as the Secretary or his authorized representative may prescribe*." 25 C.F.R. §115.102 (emphasis added). However, under BIA and OST procedures, no funds from an IIM account that is supervised will be disbursed without a BIA approved distribution plan, which must be done on an annual basis. Interagency Procedures Handbook, Ch. 8, § 8-1. A distribution plan is defined as "a written plan for expenditures for a supervised IIM account, including payees, amounts of payments, and frequency of payments, as recommended by the Social Service provider and authorized by the [BIA]." 70 IAM 5 §1.7.

Federal law specifies that, "[n]o money accruing from any lease or sale of lands held in trust by the United States for any Indian shall become liable for the payment of any debt of, or claim against, such Indian contracted or arising during such trust period. . . . except with the approval and consent of the Secretary of the Interior." 25 U.S.C. § 410. The restricted or protected nature of the land, therefore, attaches to proceeds from that land. Through promulgation of 25 C.F.R. §§ 115.601 and 115.104, BIA has enumerated the limited circumstances in which, acting on behalf of the Secretary of the Interior, it is authorized to release funds in an IIM account to fulfill a debt. These limited circumstances were explained in

---

[2] An adult in need of assistance means "an individual who has been determined to be 'incapable of managing or administering his or her property, including his or her financial affairs' either (a) through a BIA administrative process that is based on a finding by a licensed medical professional or licensed mental health professional, or (b) by an order or judgment of a court of competent jurisdiction." 25 C.F.R. § 115.002.

the United States' Notice of Statement Regarding Plaintiff's Motion to Enforce Judgement and Rule 70(a) Order and the Court's Order to Show Cause ("Notice"), ECF No. 61 at 4-7. The United States incorporates the full contents of the Notice herein and thus we do not repeat the regulatory provisions here.

## IV. ARGUMENT

### A. Plaintiff Has Failed to Establish a Waiver of the United States' Sovereign Immunity

Plaintiff has failed to establish a necessary express waiver of sovereign immunity that would allow this Court to issue a contempt order against OST. The United States and its agencies cannot be sued or otherwise hailed into court absent a waiver of sovereign immunity. *FDIC v. Meyer,* 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction"). While it is true that Congress has waived the United States' immunity for certain types of suits, *see* Administrative Procedure Act, 5 U.S.C. §§ 702 *et seq.*, Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.,* the Tucker Act, 28 U.S.C. § 1491, none of these statutes are implicated in this action. "The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank,* 372 U.S. 609, 620 (1963) (quotations and citations omitted).

## 1. Neither Rule 70 Nor the Court's Inherent Jurisdiction Are a Basis For Jurisdiction Against the United States

Plaintiff first points to Rule 70(a) as a basis for jurisdiction over OST. However, "Rule 70 does not establish jurisdiction or venue; Rule 70 neither broadens nor contracts the district court's jurisdiction conferred under federal statute." *Analytical Engineering, Inc. v. Baldwin Filters, Inc.*, 425 F.3d 443, 449 (7th Cir. 2005); *see also Georgia Central Credit Union v. Martin G.M.C. Trucks, Inc.*, 622 F.2d 137 (5th Cir. 1980). Commentary on the Rule makes this clear. "Rule 70 does not confer freestanding subject matter jurisdiction." Steven S. Gensler, Lumen N. Mulligan. *Rule 70. Enforcing a Judgment for a Specific Act,* 2 Federal Rules of Civil Procedure, Rules and Commentary Rule 70. Here, the only basis for jurisdiction cited by Plaintiff in the Complaint is 28 U.S.C. § 1332, diversity jurisdiction, and Section 1332 does not waive sovereign immunity or otherwise authorize suits against the United States or its agencies. *Villegas v. United States*, 926 F. Supp. 2d 1185, 1200 (E.D. Wash. 2013). This is because "Sections 1331, 1332, and 1338 operate merely as grants of general jurisdiction and require an accompanying waiver of sovereign immunity." *O'Brien v. United States*, 18 F. Supp. 2d 1356, 1358 (N.D. Ga. 1998).

Further, the "equitable remedies provided for by Rule 70 can be directed only toward *parties* against whom a judgment has been entered." *Gabovitch v. Lundy*, 584 F.2d 559, 560 (1st Cir. 1978) (rejecting assertion that Rule 70 empowered district court to hold nonparty bank in contempt for failing to honor writ of execution levied on defendant's funds in bank);[3] *see also*

---

[3] In addition, ordinarily "the equitable remedies provided under Rule 70 are not appropriate in enforcing a monetary judgment." *See Spain v. Mountanos*, 690 F.2d 742, 744 (9th Cir. 1982) (citing *Gabovitch*, 584 F.2d at 560 n.1).

Case 3:19-cv-00043-HRH   Document 69   Filed 03/19/20   Page 14 of 26

*Westlake North Property Owners Ass'n v. City of Thousand Oaks*, 915 F.2d 1301, 1304 (9th Cir. 1990) (quoting Rule 70(a) and concluding that "[a]ccording to its plain language, this rule applies only to *parties* who have failed to perform specific acts pursuant to a judgment.") (citation omitted) (emphasis added). OST is not a party to this lawsuit and prior to the filing of the Motion seeking a contempt order against OST, the Court issued no orders against OST or any other federal agency or official. And even though the Court directed the Clerk to sign and initial the Forms OST 01-004, that Order cannot be read to somehow contain a corollary and implied obligation on OST to honor the Forms OST 01-004.

Plaintiff also contends that "inherent authority" of the Court "to enforce its judgments" creates *jurisdiction* over OST and the United States. However, the Court's inherent authority does not negate the sovereign immunity OST enjoys absent an express waiver. *United States v. Droganes*, 728 F.3d 580, 590 (6th Cir. 2013), *cert. denied*, 572 U.S. 1114 (2014) ("[M]ost circuits [faced with the argument that a court's inherent authority to sanction trumps the government's sovereign immunity] have suggested that the government's sovereign immunity wins when it comes head-to-head with a lower court's inherent authority.") (internal citations omitted) (citing *Barry v. Bowen*, 884 F.2d 442, 444 (9th Cir.1989)).[4] Contrary to Plaintiff's assertions, the Court's inherent authority to enforce the Judgment does not act as a basis to establish jurisdiction over OST absent an express waiver of sovereign immunity.

---

[4] Further, it is a "principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party....." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940). To be sure, a judgment may bind third parties that are in privity, *see Taylor v. Sturgell*, 553 U.S. 880, 893-95 & 894 n.8 (2008), but that is not the case here.

## 2. The Administrative Procedure Act is Not a Basis for a Waiver of Sovereign Immunity

Plaintiff also argues without analysis or support that 5 U.S.C. § 702 of the Administrative Procedure Act ("APA") waives OST's and the United States' sovereign immunity. While the APA provides a limited waiver of sovereign immunity, it is not a source of substantive law or a grant of subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 105–07 (1977); *Palomar Med. Ctr. v. Sebelius,* 693 F.3d 1151, 1167 (9th Cir. 2012). In order to obtain judicial review of agency action, a plaintiff must identify a final agency action governed by other substantive law, or show that it has exhausted administrative mechanisms for compelling agency action that the agency was required by law to take but did not. *Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 64 (2004). Plaintiff's Motion against OST does neither, and even if Plaintiff is arguing that OST failed to act, proper assertion of that claim would be through bringing suit against OST directly, not in the context of seeking to compel agency action through a contempt order in this case. As a result, Plaintiff's requested relief does not come within the waiver of sovereign immunity afforded by the APA.

The APA provides that "[a]gency action made reviewable by statute and *final* agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704 (emphasis added). The APA limits the definition of "action" to an "agency rule, order, license, sanction [or] relief[.]" *S. Utah Wilderness Alliance*, 542 U.S. at 62 (quoting 5 U.S.C. § 551(13)). And while the APA may allow a party to sue to "compel agency action unlawfully withheld," *id.* (quoting 5 U.S.C. § 706(1)), such a suit must seek to compel a *discrete* agency action, coming within the limitations of Section 551(13), that the agency is *required* to take. *Id.* at 62–65. As explained below, Plaintiff has failed to establish that OST was required to

pay based on submission of the Clerk of Court's signed Forms 01-004.[5]  Plaintiff cannot identify

any statute or regulation that requires OST to take a discrete "action."  The APA does not

provide a waiver of sovereign immunity in the manner Plaintiff contends. *See, e.g., Cloverdale*

*Rancheria of Pomo Indians of Cal. v. Jewell*, 593 F. App'x. 606, 608-609 (9th Cir. 2014).

### B. Plaintiff Must Comply with Specific Interior Procedures Before Turning to a Federal Court And Has Failed to Do So

Section 10(c) of the APA provides that judicial review is available for "final agency

action for which there is no other adequate remedy in a court," and that "[a] preliminary,

procedural, or intermediate agency action or ruling not directly reviewable is subject to review

on the review of the final agency action." 5 U.S.C. § 704.  It further provides

> that agency action otherwise final is final for the purposes of this section whether
> or not there has been presented or determined an application for a declaratory
> order, for any form of reconsideration, or, *unless the agency otherwise requires by
> rule* and provides that the action meanwhile is inoperative, for an appeal to
> superior agency authority.

*Id*. (emphasis added).  "Section 10(c) explicitly requires exhaustion of all intra-agency appeals

mandated either by statute or by agency rule[.]" *Darby v. Cisneros*, 509 U.S. 137, 147 (1993).

Department of the Interior regulations expressly provide administrative procedures that must be

exhausted before someone can challenge an agency action in a district court.

Here, Interior's regulations and policies provide and limit the specific mechanisms by

which BIA may authorize payments from Defendant's IIM account.  First, because Defendant's

IIM account is supervised, BIA must approve all authorized requests for disbursements from

---

[5] To the extent Plaintiff points to the BIA's August 17, 2015 decision denying his request to receive automatic payments from OST as the triggering agency action, Plaintiff might have had a claim under the APA had he opted to administratively appeal the BIA's decision in 2015, but plaintiff failed to seek timely review.

United States' Supplemental Filing
Case No. 3:19-cv-00043-HRH                    15

Defendant's IIM account, but only after a distribution plan is in place for the account. Further, in order for a third party's claim for expenses owed to be considered as part of that distribution plan, Interior regulations prescribe a procedure by which a third party may seek to encumber Defendant's account. As stated in the United States' Notice, 25 C.F.R. §§ 115.104 and 115.601 authorizes the Department to encumber an IIM account under certain circumstances. An encumbered account by regulations is a restriction placed on an IIM account "by the BIA until money owed from [ ] the account is paid to a specified party." 25 C.F.R. § 115.701. Unless Secretary approves and consents to such payments, 25 U.S.C § 410 operates to prohibit the payment: "[n]o money accruing from any lease or sale of lands held in trust by the United States for any Indian shall become liable for the payment of any debt of, or claim against, such Indian contracted or arising during such trust period." Since Plaintiff is seeking to have past debts paid—that is the unpaid attorney's fees under the contingency fee agreement for calendar year 2018 and calendar year 2019, as well as specific performance requiring payment from Defendant's IIM account of future amounts owed under the contingency fee agreement and damages, *see* Complaint at 12-14—there is no question that Plaintiff's suit was filed to fulfill a past debt and to make a claim against moneys accrued pursuant to the lease on the restricted fee allotment. Because of this, Section 410 applies to bar Plaintiff's demand for payment from Defendant's IIM account unless the Secretary approves such payment. Interior regulations provide the mechanism by which BIA may authorize a third-party encumbrance to be placed on the account.

In order for a third party to seek to have BIA encumber an IIM account, it must make a request to the BIA, along with the following information: (1) a copy of the original contract

between an IIM account holder and the third party, which uses the IIM account as security or collateral for the transaction; (2) a copy of documentation showing that the BIA provided advanced approval of the contract; (3) proof of default on the contract; and (4) a copy of the original assignment of IIM income as security/collateral for the contract, signed and dated by the IIM account holder and notarized. 25 C.F.R. § 115.601(b)(1)(i-iv); Interagency Procedures Handbook, ch. 10, § 10-1. Once a decision has been made on the request, BIA will issue a notice of decision to encumber an account to the IIM account holder, and then BIA is required to provide the account holder notice of their right to request a hearing on the matter. 25 C.F.R. § 115.605.  It is only after the culmination of this process, that BIA may issue a final decision to encumber the account, 25 C.F.R. §§ 115.606, 115.615, which is appealable under 25 C.F.R. Part 2 to the Interior Board of Indian Appeals, 25 C.F.R. § 115.107.

At this stage, Plaintiff has failed to engage in the prescribed administrative process to seek a BIA determination to encumber Defendant's account, and instead seeks to force another agency, OST—who is not authorized to make such determinations—to pay the Judgment without consideration of agency regulations.  For these reasons, Plaintiff has failed to engage in the administrative process, let alone exhaust administrative remedies, as he is required to do under the APA before seeking relief in this Court. *Darby*, 509 U.S. at 147.  Therefore, the Court should deny Plaintiff's Motion against OST.

### C.  Plaintiff's Arguments Against Adhering to BIA Regulations Fail

In an attempt to circumvent the administrative process, Plaintiff advances several arguments in support of his position that the Court has authority to decide this issue without BIA as a party, all of which are incorrect.  The crux of Plaintiff's first argument that BIA was not

required to approve the contingency fee agreement in this case rests on a general notion that requiring BIA approval of the contingency fee agreement would frustrate a beneficiary's ability to obtain legal representation to bring a breach of trust case against the United States.[6] *See* Pl's Supp. Response, ECF No. 65 at 16. This argument is misplaced and misunderstands the nature of the United States' objection to Plaintiff's Motion against OST in this action. The United States is not suggesting that Plaintiff is prohibited from entering into a contingency fee agreement with Defendant without BIA approval—on the contrary, the parties are free to contract as they see fit for legal services. Nor is the United States suggesting that Plaintiff cannot seek a judgment against Defendant for breach of that contract, to the extent it is authorized under federal law. *See* 25 U.S.C. § 410. What the United States objects to is Plaintiff's attempt to tie the hands of the agency in a suit to which it is not a party, requiring it to pay from Defendant's IIM account—a trust asset—without regard to governing federal law and agency regulations, procedures, and processes. If Plaintiff desired to protect his ability to obtain payment of funds from Defendant's IIM account, even over Defendant's objection, or to use IIM funds as security/collateral for the contingency fee agreement, then Plaintiff should have sought BIA approval of the contract *prior* to entering into it, as required by 25 C.F.R. § 115.601. Plaintiff has provided no evidence or explanation that he even attempted to seek BIA approval prior to entering into the initial contingency fee agreement in 2003, or that he tried to seek BIA

---

[6] Plaintiff also cites *Bogert's the Law of Trusts and Trustees* § 809 to support their argument that the Court has broad equitable powers and discretion to entertain this lawsuit. In doing so, Plaintiff fails to recognize that the "general relationship between the United States and the Indian tribes is not comparable to a private trust relationship." *Cherokee Nation of Okla. v. United States*, 21 Cl. Ct. 565, 573 (1990); *see also United States v. Jicarilla Apache Nation*, 564 U.S. 162, 173 (2011); *Klamath and Moadoc Tribes v. United States*, 296 U.S. 244, 254 (1935).

approval of the 2018 Settlement Agreement between Plaintiff and Defendant that Plaintiff seeks to enforce through this action.

Next, Plaintiff points to *Arenas v. Preston*, 181 F.2d 62 (9th Cir. 1950) to support his argument that this Court has equitable jurisdiction to enforce the contingency fee agreement against OST for access to the funds in Defendant's IIM account. *Arenas* has no bearing on this case. There, the court upheld the district court's decision to place a lien on a trust allotment for fees stemming from a lawsuit brought by an Indian against the United States to declare an individual's interest in a trust allotment. *Id.* The court determined that the United States' waiver of sovereign immunity under 25 U.S.C. § 345, allowing Indians to bring suit to determine their rights to an allotment under treaty or statute, also allowed a supplemental decree for attorney's fees. *Id.* The statutory provision is not applicable to this case, and in any event, the Ninth Circuit later determined that the rationale in *Arenas* did not apply to a situation where an attorney seeks to independently sue the United States for attorney's fees under Section 345. *United States v. Preston*, 352 F.2d 352, 356 (9th Cir. 1965) ("So far as the United States is concerned, even if a claim against it had been asserted here, it cannot be sued without its consent. Section 345 gives no general consent of the United States to be sued even in connection with its administration of allotments, much less for the recovery of attorneys' fees of this kind."). Here, as in *Preston*, no "property has been brought into court," *id.* at 356, since the CFC case has long been settled and disposed of. Further, "the attempted recovery of fees and costs is not incidental or supplemental to any such action." *Id.* Therefore the rationale for asserting jurisdiction over attorney's fees in *Arenas* does not apply here.

In addition, the Alaska Supreme Court rejected a similar argument about *Arenas*'

applicability made by an attorney who sought to recover attorneys' fees stemming from work

performed in relation to a condemnation action on a trust allotment in *Law Offices of Vincent*

*Vitale, P.C. v. Tabbytite*, 942 P.2d 1141 (Alaska 1997). The court there aptly determined that

*Arenas* "is not controlling" given "Section 410 is neither mentioned nor discussed in the *Arenas*

opinion." *Id.* at 1148. Because Section 410 did apply, the court held that it was "not free to

decide this case based on the rationale underlying *Arenas*, because that rationale conflicts with

the explicit command of the statute." *Id.* For the same reasons, the rationale in *Arenas* does not

apply here. Outside of the authorized ways in which BIA may encumber an IIM account under

25 C.F.R. Part 115, Section 410 applies to bar Plaintiff's claims against the funds held in

Defendant's IIM account.

Finally, Plaintiff argues that BIA actually approved the contingency fee agreement as

amended between Plaintiff and the Oenga heirs through acknowledgement of the contingency fee

agreement in the June 23, 2011 confidential term sheet and the settlement of the CFC case. ECF

No. 65 at 22-23. The United States' acknowledgment of the existence of the agreement as

between Plaintiff and the Oenga heirs is not the same as approval of the agreement. Plaintiff also

points to the Virden letter, which involved the development of a distribution plan for one of the

Oenga heirs, who was a minor at the time. There, the BIA raised several questions as to the

reasonableness of the attorney's fees and requested further documentation for the claimed

expense submitted by Plaintiff, and ultimately agreed to include the attorney's fees as part of the

distribution plan for the minor's account. It did not, however, purport to broadly approve the

agreement between Plaintiff and the Oenga heirs. Further, on August 17, 2015, when BIA

denied Plaintiff's request to receive automatic payments from the Oenga heir's IIM accounts for the attorney's fees, the BIA informed Plaintiff expressly that it had not approved any of the contingency fee agreements. *See* Ex. B. As stated above, Plaintiff failed to administratively appeal that decision to the Interior Board of Indian Appeals. That being said, Plaintiff is free to raise these arguments in a request to BIA seeking to encumber Defendant's account pursuant to Interior regulations.

### D. Because Defendant's IIM Account Is In a Supervised Status, OST Does not Possess Authority to Issue Disbursements Absent BIA Approval

Even if the Court determines it has jurisdiction over OST, Plaintiff incorrectly argues that when the Clerk of Court signed the OST Forms 01-004, it had the same effect as if done by Defendant and therefore OST was required to pay Plaintiff. As the United States explained in its Notice, the Forms signed by the Clerk of Court do not constitute a request by an authorized representative because the Office of the Special Trustee for American Indians Desk Operating Procedures provides only one mechanism by which an account holder may have an authorized representative: "[A] Solicitor approved Power of Attorney Instrument." Vol. 1, § 1.1, ch. II, at 3-4 (Nov. 29, 2004, rev'd Nov. 1, 2006)*; see also* Interagency Procedures Handbook, Ch. 6, § 6-6 (providing that only the account holder or his Power of Attorney may make disbursement requests).

However, even if the Court were to determine that OST should treat the Clerk of Court Forms "as if done by Defendant," OST would still be unable to disburse funds to Plaintiff. Contrary to Plaintiff's assertions, OST is not obliged in all circumstances to make payment from an IIM account when directed by the account holder. Because BIA determined that Defendant is

**Exhibit M**
**Page 23 of 26**

an adult in need of assistance, as of January 10, 2020, his account is no longer in an unrestricted status but is instead supervised by the BIA.[7]  This means that even if Defendant, or his power of attorney as an authorized representative, were to submit a request to withdraw funds from his IIM account, BIA must first approve the release of funds before OST has authority to disburse the funds. 25 C.F.R. §115.102; 70 IAM 5 § 1.1.  Further, BIA is not able to approve disbursements of funds from Defendant's IIM account until a distribution plan for expenditures is in place, *see* Interagency Handbook, Ch. 8, § 8-1, taking into account the Defendant's best interests and welfare, 25 C.F.R. §115.102.  BIA's creation of a distribution plan for and approval of disbursements from Defendant's supervised IIM account are separate and independent actions from a request to withdraw funds through submission of the Form 01-004.  Therefore, any actions by BIA related to supervision of Defendant's IIM account are outside of the scope of Plaintiff's requested relief, *see* Complaint at 12-14, Prayer for Relief (seeking a declaration that Defendant owes past and future rent payments, specific performance obligating Defendant to direct BP and/or OST to make future automatic, annual payments to Plaintiff, and damages), and beyond the Court's authority to enforce its Judgment.  Because Defendant seeks to force OST to take action that it is prohibited from doing, the Court should deny Plaintiff's request for a contempt order against OST.

## V.    CONCLUSION

For these reasons, the Court lacks jurisdiction over OST, but even if it does have jurisdiction,

---

[7] It is irrelevant that BIA's decision to place Defendant's IIM account in a supervised status occurred after the submission of the Clerk of Court signed Forms 01-004.  OST was under no obligation to pay pursuant to the Forms because as stated above, the Forms were not submitted by an authorized representative of Defendant.  And even if the Clerk of Court's signature were to be treated as such, that would not alleviate the need for a distribution plan. Interagency Procedures Handbook, Ch. 8, § 8-1.

OST is not in contempt of any order issued by the Court. The Court should therefore deny the

Plaintiff's request for a contempt order against OST.

RESPECTFULLY SUBMITTED, on March 19, 2020.

BRYAN SCHRODER
United States Attorney

s/ *Steven Skrocki*
STEVEN SKROCKI, Assistant U.S.
Attorney
United States of America
222 West 7th Ave., Room 253, #9
Anchorage, AK 99513
Telephone: 907-271-5071
Facsimile: 907-271-3224

ERIC GRANT, Deputy Assistant Attorney
General
U.S. Department of Justice,
Environment & Natural Resources Division

s/ *JoAnn Kintz*
JOANN KINTZ
PO Box 7611, Ben Franklin Station
Washington, DC, 20044-7611
Telephone: 202-305-0424
Facsimile: 202-305-0275
Email: JoAnn.Kintz@usdoj.gov

*Attorneys for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2020, a copy of the foregoing was served on:


Raymond C. Givens (electronically via the Court's CM/ECF system)

Wallace Oenga (via FedEx)

s/ JoAnn Kintz
U.S. Department of Justice
