Andrew Erickson, Alaska Bar No. 1605049
Matt Mead, Alaska Bar No. 0711095
LANDYE BENNETT BLUMSTEIN LLP
701 West Eighth Avenue, Suite 1100
Anchorage, AK 99501
(907) 276-5152
andye@lbblawyers.com
mattm@lbblawyers.com

*Attorneys for Defendant Joseph Delia*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| MARIA M. GIVENS, as Personal Representative of the Estate of Raymond C. Givens, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| JOSEPH DELIA, | ) | Case No. 3:23-cv-00121-HRH |
| Defendant. | ) ) | |
| _____ | ) | |

## DEFENDANT'S OPPOSITION TO GIVENS' CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................................3

INTRODUCTION.....................................................................................7

LEGAL STANDARDS ..............................................................................10

STATEMENT OF FACTS.........................................................................12

ARGUMENT............................................................................................22

    I.      The Contract violates 25 U.S.C. § 410...........................................22

    II.     Delia is not barred by claim preclusion.........................................28

    III.    Givens is not entitled to summary judgment on
            Delia's defense under AS 13.16.645................................................30

    IV.    Givens is not entitled to summary judgment on
            any of Delia's other defenses.........................................................32

    V.     Givens fails to present any evidence establishing
            the amount of claimed damages ....................................................37

    VI.    Givens waived any claim to quantum meruit ...............................37

CONCLUSION .........................................................................................38

CERTIFICATE OF COMPLIANCE..........................................................39

CERTIFICATE OF SERVICE...................................................................39

# TABLE OF AUTHORITIES

## Federal Cases

*Arenas v. Preston,*
  181 F.2d 62 (9th Cir. 1950).................................................................25, 26

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)........................................................................10, 11

*First Nat'l Bank v. Cities Serv. Co.,*
  391 U.S. 253 (1968)..............................................................................11

*Green v. Allstate Ins. Co.,*
  885 F. Supp. 2d 959 (D. Alaska 2012)....................................................11

*Harris v. Cnty. of Orange,*
  682 F.3d 1126 (9th Cir. 2012)...............................................................13

*Jenkins v. Cnty. of Riverside,*
  398 F.3d 1093 (9th Cir. 2005)................................................................10

*Kone v. Elmore,*
  No. 3:24-cv-00230-SLG,
  2025 WL 210670 (D. Alaska Jul. 28, 2025).............................................12

*Lopez v. Smith,*
  203 F.3d 1122 (9th Cir. 2000)...............................................................11

*Metabolife Int'l, Inc. v. Wornick,*
  264 F.3d 832 (9th Cir. 2001)..................................................................12

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.,*
  210 F.3d 1099 (9th Cir. 2000)..........................................................11, 14

*Oenga v. United States,*
  97 Fed. Cl. 80, 88 (2011)......................................................15, 16, 25, 26

*Pratap v. Wells Fargo Bank, N.A.,*
63 F. Supp. 3d 1101 (C.D. Cal. 2014)........................................................13

*Ponkey v. LLR, Inc.,*
2024 U.S. Dist. LEXIS 160916 (C.D. Cal. Sept. 5, 2024).........................13

*Specter v. Tex. Turbine Conversions, Inc.,*
519 F. Supp. 3d 576 (D. Alaska 2021)......................................................11

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,*
809 F.2d 626 (9th Cir. 1987).....................................................................11

*Taylor v. Sturgell,*
553 U.S. 880 (2008)........................................................................7, 29, 30

*United States v. Equitable Trust Co. of New York,*
283 U.S. 738 (1931)..................................................................................25

**Alaska Cases**

*Crane v. Crane,*
986 P.2d 881 (Alaska 1999).....................................................................36

*Donnelly v. Eklutna, Inc.,*
973 P.2d 87 (Alaska 1999)..................................................................29, 30

*In re Chaobal,*
498 P.3d 617 (Alaska 2021)......................................................................34

*Jacobus v. Kalenka,*
464 P.3d 1231 (Alaska 2020)....................................................................34

*Law Offices of Vincent Vitale, P.C. v. Tabbytite,*
942 P.2d 1141 (Alaska 1997).............................................................23, 27

*Pavone v. Pavone,*
860 P.2d 1228 (Alaska 1993)......................................................................8

*Powers v. United Servs. Auto. Ass'n,*
    6 P.3d 294 (Alaska 2000)...........................................................28

*State, Dep't of Health & Soc. Servs., Office of Children's Servs. v. Doherty,*
    167 P.3d 64 (Alaska 2007)..........................................................28

*Strong v. Williams,*
    435 P.3d 872 (Alaska 2018).........................................................28

*Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Serv. Co.,*
    585 P.2d 15 (Alaska 1978)..........................................................36

**Other Cases**

*First-Citizens Bank & Trust Co. v. Harrison,*
    326 P.3d 808 (Wash. Ct. App. 2014)...........................................27

*Pretty Paint v. Rocky Mtn. Reg'l Director,*
    38 IBIA 177 (2002)....................................................................23

**Court Rules**

Alaska R. Prof. Conduct 1.5...............................................18, 33, 34, 35

Alaska R. Prof. Conduct 1.7.............................................................33, 34

Alaska R. Prof. Conduct 1.8.............................................................33, 34

Fed. R. Civ. P. 56(a)..............................................................9, 10, 33, 38

**Other Authorities**

25 C.F.R. § 15.304........................................................................32

43 C.F.R. § 30.140........................................................................32

Alaska Pattern Jury Instructions § 24.08D
    Affirmative Defense – Duress...................................................36

## STATUTES PRINCIPALLY RELIED UPON

25 U.S.C. § 410 provides:

No money accruing from any lease or sale of lands held in trust by the United States for any Indian shall become liable for the payment of any debt of, or claim against, such Indian contracted or arising during such trust period, or, in case of a minor, during his minority, except with the approval and consent of the Secretary of the Interior.

Defendant Joseph Delia hereby opposes Plaintiff Maria M. Givens' ("Givens") Cross-Motion for Summary Judgment (Docket No. 120).

## INTRODUCTION

Givens rests her case on a slender reed. She theorizes that because a different Oenga heir lost in a confidential Alaska Bar Association Fee Arbitration dispute regarding Raymond C. Givens' fees, Delia should be estopped from raising his own, unique defenses to the Contingency Fee Contract in this case. That flawed argument should be rejected outright because it runs roughshod over Delia's fundamental due process rights.[1] Delia is entitled to have his own day in court.

As the movant and plaintiff, Givens has the burden to prove that she is entitled to any relief. But here, Givens' Cross-Motion seeks judgment on all claims and defenses without submitting a single piece of admissible evidence or relying on a single sworn declaration to support her claims. She simply re-argues legal issues that have already been fully briefed as part of Delia's

---

[1]     *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) ("[T]he application of claim and issue preclusion to nonparties thus runs up against the deep-rooted historic tradition that everyone should have his own day in court.").

*Givens v. Delia*
Opposition to Cross-Motion for Summary Judgment

Case No. 3:23-cv-00121-HRH
Page 7 of 39

summary judgment motion while ignoring the material facts that undermine her claims.[2]

This Court should deny Givens' Cross-Motion for the following reasons. First, as explained in Delia's Motion for Summary Judgment (Docket No. 96) and Reply (Docket No. 115), the Contract is unenforceable because it violates 25 U.S.C. § 410. Courts "have no power, either in law or in equity, to enforce an agreement which directly contravenes a legislative enactment."[3] Delia, and not Givens, is entitled to summary judgment on that issue.

Second, Delia is not barred by claim preclusion from raising his own defenses to the Contract in this case.[4] Delia was not in privity with Leroy Oenga Jr., who never signed the Contract but rather inherited his interest in the Contract after the fact.[5] Oenga Jr. did not have standing to raise some of Delia's unique defenses to the Contract in the Alaska Bar Association Fee Arbitration, including that Delia's signature on the Contract was procured under duress.[6]

---

[2]     *See* Docket No. 115 at 9-10.

[3]     *Pavone v. Pavone*, 860 P.2d 1228, 1231 (Alaska 1993).

[4]     *See* Docket No. 115 at 26-31.

[5]     Docket No. 96-14 at 6.

[6]     *See* Docket No. 115 at 29; Docket No. 7 at 11.

Third, Givens fails to meet her burden to show that she is entitled to summary judgment on Delia's defense that AS 13.16.645 bars Givens' claim to contingent fees with respect to Delia's inherited ownership interest in the allotment. When the Contract was initially signed in 2003, Delia owned a 1% interest in the allotment. Delia's 1% ownership interest was the basis for his consideration under the Contract. Subsequently, Delia inherited an additional 24% interest from his brother, Michael Delia, bringing his total ownership interest to 25%.[7] Givens does not state any facts demonstrating that Delia's inherited interest is subject to the preexisting contract. In any event, Givens' cursory legal analysis is inadequate to prevail as a matter of law.[8]

Fourth, Givens fails to meet her burden to show that she is entitled to summary judgment on *all* of Delia's defenses. Givens does not set forth any facts that would entitle her to summary judgment.[9] On the contrary, the undisputed facts demonstrate that each of Delia's defenses has merit.

Fifth, Givens fails to meet her burden to establish the amount of damages that she is purportedly owed.[10] Givens does not even attempt to put

---

[7]     Docket No. 30-1 at 4 (SEALED).

[8]     *See* Docket No. 120 at 13-15.

[9]     Fed. R. Civ. P. 56(a).

[10]    Docket No. 120 at 17-18.

forward any evidence justifying the amount of damages, which is an element of her claim that she must prove at trial. Summary judgment cannot be granted on mere promises that material evidence "will" be forthcoming at some point in the future.[11]

Sixth, Givens waived any claim to quantum meruit by not briefing the issue in her Opposition to Delia's Motion for Summary Judgment.[12] Claims not raised in an opposition to summary judgment are considered "abandoned."[13]

## LEGAL STANDARDS

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[14] Summary judgment is therefore appropriate "if the *movant* shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] The *moving* party has the "ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[16]

---

[11]    Docket No. 120 at 18.

[12]    *See* Docket No. 105 at 46 (conceding that Givens should "not" be paid under quantum meruit).

[13]    *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005).

[14]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[15]    Fed. R. Civ. P. 56(a).

[16]    *Celotex*, 477 U.S. at 333 n.3 (emphasis added).

The moving party can meet its burden as to the absence of a genuine issue of material fact by either presenting affirmative evidence or by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."[17] If, *and only if*, the movant meets its burden, the nonmoving party must set forth "significant probative evidence" in support of its position to defeat summary judgment.[18] "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial . . . In such a case, the nonmoving party may defeat the motion for summary judgment without producing *anything*."[19]

"In resolving a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party."[20] This Court has explained that "federal courts routinely deny such motions [for summary

---

[17]     *Specter v. Tex. Turbine Conversions, Inc.*, 519 F. Supp. 3d 576, 581 (D. Alaska 2021) (quoting *Celotex*, 477 U.S. at 325).

[18]     *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

[19]     *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000) (internal citations omitted) (emphasis added).

[20]     *Green v. Allstate Ins. Co.*, 885 F. Supp. 2d 959, 961 (D. Alaska 2012) (citing *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)).

judgment] as premature if the opposing party has not had a fair opportunity to conduct discovery."[21] "Summary judgment is generally disfavored where relevant evidence remains to be discovered, particularly in cases involving motive or intent."[22]

## STATEMENT OF FACTS

Givens does not attempt to argue that there "is no genuine dispute as to any material fact."[23] Instead, she simply points to her Opposition brief for "facts supporting" her motion.[24] But Givens' Opposition was rife with unsupported factual assertions, relying exclusively on the Arbitration Panel decision in *Leroy Oenga Jr. v. Givens* to present certain "facts" that remain unproven in this case.[25] The Arbitration Panel decision cannot be used to prove any facts here because Delia was not a party to that proceeding and the decision is not binding on Delia.[26] Federal Rule of Evidence 201 provides that

---

[21]     *Kone v. Elmore*, No. 3:24-cv-00230-SLG, 2025 WL 210670 (D. Alaska Jul. 28, 2025).

[22]     *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001).

[23]     *See* Docket No. 120 at 3.

[24]     Docket No. 120 at 3.

[25]     Docket No. 105 at 6, 8-10, 12, 16-22, 33 (citing Docket No. 35-1 (SEALED)).

[26]     *See infra* Argument II; Docket No. 115 at 10-11, 26-31.

a court may take judicial notice of the fact that the Arbitration Panel exists,[27] but it is not appropriate to rely on that non-public[28] record to prove "the truth of the matters asserted therein."[29] Courts may take "judicial notice of undisputable facts—such as the filing or the fact that the document states something to give context" but not "the truth of the matter asserted in any document."[30] Thus, Delia objects to the use of the Arbitration Panel decision to prove any factual assertions in this case.

Delia's Reply pointed out that Givens has no evidence (other than the inadmissible Arbitration Panel decision) to support her assertions regarding (1) the number of hours that Ray allegedly worked on the Oenga heirs' matter, (2) whether each amendment to the Contract actually reduced Ray's fees, (3) the exact amount of fee reductions, if any, that were provided to the Oenga heirs as a result of the Contract amendments, and (4) the exact amount of future rent increases that were achieved by Ray's efforts.[31] Importantly, the

---

[27]   *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

[28]   The Arbitration Panel decision is confidential and non-public, and has been filed under seal in this case. Docket No. 35-1 (SEALED).

[29]   *Ponkey v. LLR, Inc.*, 2024 U.S. Dist. LEXIS 160916 at * 7 (C.D. Cal. Sept. 5, 2024).

[30]   *Pratap v. Wells Fargo Bank, N.A.*, 63 F. Supp. 3d 1101, 1104 n.1 (C.D. Cal. 2014).

[31]   Docket No. 115 at 11-13.

Arbitration Panel decision relied on Ray's personal testimony—evidence that is no longer available to Givens.[32] She will have to come up with some other method to prove those factual assertions in this case.

Because Givens fails to meet her initial burden to show an absence of genuine issues of material facts, Delia has no obligation to come forward with "anything" to defeat the motion.[33] Regardless, the undisputed facts presented in Delia's Motion for Summary Judgment and Reply,[34] as supplemented below, demonstrate that Givens is not entitled to summary judgment.

In 2003, Ray and the Oenga heirs entered into the Contract, providing for attorney's fees on a contingent basis.[35] At that time, Delia owned a 1% interest in the allotment.[36]

Before the Contract was signed, Ray did not disclose that he was not licensed to practice law in Alaska. Ray also did not advise the Oenga heirs regarding potential conflicts of interest that might arise in the joint representation or request that the Oenga heirs sign conflict waivers. Rather

---

[32]     Docket No. 35-1 (SEALED).

[33]     *Nissan Fire*, 210 F.3d at 1102-03.

[34]     Docket Nos. 96, 96-1 through 96-21, and 115 are incorporated herein by reference. *See* D. Alaska L. Civ. R. 5.1(f)(2).

[35]     Docket No. 96-6.

[36]     Docket No. 30-1 at 3 (SEALED).

Case 3:23-cv-00121-HRH     Document 125     Filed 11/03/25     Page 14 of 39

than disclose those risks in writing, Ray chose to deal with potential future conflicts by including a "super-majority vote" provision in the Contract.[37] Thus, a client who did not want to agree to a potential settlement would be bound by the affirmative vote of the other clients.

Importantly, although the Contract expressly purported to create a "lien" on allotment lease proceeds,[38] Ray admitted that he did not seek approval of the Contract from the Department of the Interior because "he believed that the government would not approve it."[39]

In 2006, Ray filed a lawsuit on behalf of the Oenga heirs against the United States in the Court of Federal Claims. Ray acknowledged that the litigation was unpredictable, likely to go on for many years, and the amount and nature of the recovery was uncertain.[40] After prevailing at trial and securing a final judgment in the amount of $4,924,000,[41] Ray decided to forego the possibility of seeking his attorney's fees directly from the United States pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Ray

---

[37]    Docket No. 96-6 at 2.

[38]    Docket No. 96-6 at 1.

[39]    Docket No. 105 at 7; Docket No. 36 at 18-19.

[40]    Exhibit A at 2 (filed under seal).

[41]    *Oenga v. United States*, 97 Fed. Cl. 80, 88 (2011).

explained that he did not submit an EAJA attorney's fees claim in *Oenga v. United States* because he "didn't keep good time records;" "I just quit keeping time records all together. And so there were huge hours spent after that, but there's—there's no time records of them."[42]

While *Oenga v. United States* was on appeal, the Oenga heirs pursued settlement negotiations with the United States and the oil company intervenors.[43] As part of the settlement discussions, the parties entered into a "Confidential Term Sheet," contemplating a lump sum payment to the Oenga heirs and a replacement lease agreement for the allotment with substantially increased annual rent payments.[44] But Ray recognized that the initial Contract did not clearly specify his fees under that settlement scenario, so he demanded that the Oenga heirs sign a "First Amendment" to the Contract.[45]

At a meeting in August 2011, "things got heated" when one of the Oenga heirs did not want to agree to the settlement agreement or sign the Contract amendment.[46] Instead of determining that there was a conflict of interest, Ray

---

[42]     Docket No. 98-1 at 4 (SEALED).

[43]     Docket No. 1 at 4.

[44]     Docket No. 108-1 (SEALED).

[45]     Docket No. 96-8 at 1 (admitting that "the contingent fee formulas in the [Contract] have proven cumbersome to apply").

[46]     Docket No. 98-2 at 5 (SEALED); Docket No. 96-19 at 1.

prepared documents to facilitate a bribe from one of the other Oenga heirs to the holdout to gain that holdout's vote in favor of settlement.[47] Ray never informed the other Oenga heirs that he helped one of his clients make a side payment to another client in exchange for an agreement to settle the case.

Ray also threatened the Oenga heirs that if they did not agree to the settlement agreement and sign the Contract amendment, as he demanded, none of the Oenga heirs would receive anything. "Mr. Givens stated if we all didn't agree to sign the payment agreement none of us would receive anything."[48] Ray made that false threat to coerce the Oenga heirs to sign the documents despite the fact that they had already received a final judgment in their case and were entitled to $4,924,000 whether they signed or not. Only under Ray's demands and threats did the Oenga heirs vote to approve the settlement agreement and sign the First Amendment.[49]

The First Amendment extended the Contract term to include the new lease term (2014-2038) as provided for in the settlement agreement.[50] The First

---

[47]    Docket No. 98-1 at 6 (SEALED).

[48]    Docket No. 41-2 at 1 (SEALED). *See also* Declaration of Joseph Delia at ¶ 9-11.

[49]    *See* Declaration of Joseph Delia at ¶ 9-13.

[50]    Docket No. 96-8; Docket No. 98-4 at 2 (SEALED).

Amendment also specified (for the first time) that the Oenga heirs "shall direct" Ray's fees to "be paid directly to [Ray] . . . from the funds due [the Oenga heirs] at the same time the remaining funds due are paid."[51] Ray never advised the Oenga heirs that the First Amendment significantly changed the payments that they would make to Ray each year, or that they could seek independent legal advice before they signed the contract amendment. Ray also never advised the Oenga heirs that he would attempt to enforce the Contract as a lien on their interests in the allotment and that the payment obligation would be passed down to their heirs and assigns. Ray did not seek Interior's approval of the First Amendment.

As the settlement negotiations were culminating, Ray recognized that the Contract needed to be amended a second time in order to comply with Alaska Rule of Professional Conduct 1.5(c), which requires that contingent fee agreements specify whether costs are deducted before or after the fee is calculated.[52] Thus, the "Fee/Cost Reduction Agreement" revised the Contract to provide that "despite the provisions of the Contingency Fee Contract as

---

[51]     Docket No. 96-8 at 2.

[52]     Docket No. 96-12 at 1 ("[T]he Fee First Approach has been questioned by the Bureau of Indian Affairs, suggesting that the costs should be reimbursed before the fee is paid.").

amended to the contrary" reimbursement of Ray's $444,465 in litigation costs would be deducted from the $13.5 million lump sum payment before calculating Ray's attorney's fees.[53] That resulted in Ray receiving $4,569,437 in attorney's fees from the lump sum payment.[54] The Fee/Cost Reduction Agreement reiterated that "the contingency fee due on future rents, which was specifically provided for in both the original Contingency Fee Contract and the First Amendment thereof, remains due each year as a 25% fee of the total rent received each year."[55] Ray never advised the Oenga heirs that they could seek independent legal advice before they signed the Fee/Cost Reduction Agreement. Ray also did not seek Interior's approval of the Fee/Cost Reduction Agreement.

Although Givens makes the unsupported claim that both Contract "amendments resulted in Givens agreeing to reduce his fee,"[56] the admissible evidence indicates the contrary. The amendments changed the material Contract terms to provide that Ray's contingent fee would include annual

---

[53]    Docket No. 96-12 at 1.

[54]    Docket No. 96-12 at 1.

[55]    Docket No. 96-12 at 2.

[56]    Docket No. 120 at 9.

Consumer Price Index (CPI) adjustments to the lease payments.[57] The initial Contract specifically excluded those CPI adjustments.[58] Thus, although the amendments may have reduced Ray's claimed percentage of the lease payments, the addition of significant annual CPI adjustments potentially increased Ray's payments overall.

The amendments also extended the Contract term, which had originally provided that Ray's fees would be paid on any "increase in lease payments under the Lease Agreement or extended term."[59] However, as part of the Settlement Agreement, the Oenga heirs entered into a replacement lease (the "2012 Lease Agreement"), with an entirely new term (2012-2036) and with significantly increased annual rental payments.[60] Additionally, Ray never accounted for the Oenga heirs' overpayments between 2006 and 2011, which were made before the Fee/Cost Reduction Agreement reduced Ray's contingent fees calculation by deducting costs first.

---

[57]    *Compare* Docket No. 96-6 at 1-2 (excluding annual CPI adjustments), *with* Docket No. 96-8 at 1-2 (including annual CPI adjustments in calculation of Ray's fees).

[58]    Docket No. 96-6 at 1 (excluding compensation which the clients would be entitled to receive under the lease).

[59]    Docket No. 96-6 at 1.

[60]    Docket No. 98-4 at 2 (SEALED).

In April 2015, while Ray was still purporting to represent the Oenga heirs as their attorney,[61] he organized a client meeting to again threaten and intimidate the Oenga heirs into continuing to make annual payments to him.[62] Ray knew that some of the Oenga heirs had been questioning Ray's conduct, including accusations that Ray had physically assaulted one of the Oenga heirs during the settlement negotiations in 2011.[63] Ray made it clear that "[f]rom now on, if any family member doesn't pay the attorney fees owed on time—by October 31 each year—I will simply have a lawsuit filed against that family member for collection of the attorney fees owed."[64] Despite the clear adversity between Ray and the Oenga heirs, Ray continued to hold himself out as their

---

[61]    Exhibit B at 1 ("[I]n Ray's April 8, 2015 declaration, he states that he is retired. I can see how it is confusing to the beneficiaries.").

[62]    *See* Exhibit C at 2.

[63]    *See* Exhibit D at 2 ("Attorney Givens picked me (Wallace Oenga) up by the lapels and told me to sign the Agreement and get the rest of the family members to sign."); Declaration of Joseph Delia at ¶ 12.

[64]    Exhibit C at 3.

attorney in order to gain access to the heirs' confidential financial information for the next several years.[65]

Ray stopped being a licensed attorney in any jurisdiction in January 2018,[66] but he failed to inform his clients of that fact until September 2018.[67] During that nine-month period, Ray continued to exert influence over the Oenga heirs by purportedly acting as their attorney.[68]

Discovery is ongoing in this case. There may be additional facts supporting Delia's defenses that come to light before trial.

## ARGUMENT

## I. The Contract violates 25 U.S.C. § 410.

Givens re-argues the merits of Delia's summary judgment motion.[69] For the reasons explained in Delia's briefing on that motion,[70] the Contract is

---

[65]     Exhibit E at 1; Exhibit F at 1-3 ("Mr. Givens is no longer practicing law but there have been several recent actions by Mr. Givens that could lead someone to believe he is representing the Oenga Heirs. . . . BIA has evidence to believe that Mr. Givens is possibly representing himself on behalf of the Oenga Heirs to gain access to information between a lessee and lessor without proper authorization from the lessee.").

[66]     Exhibit G at 2.

[67]     Exhibit G at 2.

[68]     Exhibit E at 1.

[69]     *See* Docket Nos. 96, 105, 115.

[70]     Docket No. 96 at 25-40; Docket No. 115 at 14-26.

unenforceable because it creates a "lien" on allotment lease proceeds that was not approved by the Department of the Interior as required by Section 410.

Briefly, Section 410 provides that "[n]o money accruing from any lease or sale of lands held in trust by the United States for any Indian shall become liable for the payment of any debt of, or claim against, such Indian . . . except with the approval and consent of the Secretary of the Interior." Section 410 "establishes the general rule that funds derived from trust property are not available for the payment of debts of, or claims against, the account holder."[71]

Here, there is no factual dispute that the allotment is land held in trust by the United States and that the Contract was intended to create a "lien" on money accruing from the lease of the allotment.[72] Givens argued that the Contract was intended to "run with the land"[73] and included "an implied-in-fact covenant that [Ray's] fee would be paid from annual rents."[74] But as an

---

[71] *Pretty Paint v. Rocky Mtn. Reg'l Director*, 38 IBIA 177, 179 (2002). See *also Law Offices of Vincent Vitale, P.C. v. Tabbytite*, 942 P.2d 1141, 1147 (Alaska 1997) (noting that Section 410 is Indian legislation that "should be construed broadly" and "ambiguities resolved in favor of the Indians").

[72] Docket No. 96-3 at 25.

[73] Docket No. 96-3 at 19.

[74] Docket No. 96-3 at 20.

Case 3:23-cv-00121-HRH  Document 125  Filed 11/03/25  Page 23 of 39

Indian account holder, Delia's portion of the lease proceeds could not have been pledged for payment of his debt to Ray without Interior's approval and consent.

As Delia's Reply pointed out, none of Givens' arguments regarding Section 410 have merit[75] (and they fare no better this time around). First, this Court has not already ruled "in Givens' favor on this matter."[76] If it had, Givens would easily be able to point out and quote this Court's holding; Givens does not do so. Instead, Givens distorts this Court's order denying the motion for prejudgment writ of attachment. There, this Court clearly stated that it was "inappropriate to address the merits of potentially dispositive, conflicting legal opinions as to the absence of BIA approval of Givens' fee contract or other disputed contract or probate issues in the context of a motion for prejudgment writ of attachment."[77]

Similarly, in *Givens v. Wallace Oenga*, this Court did not conclude that the Contract does not violate Section 410.[78] The only issue addressed in the Sealed Order was whether to enforce a final judgment entered after Wallace Oenga's default. This Court ruled that "pursuant to its inherent authority, the

---

[75]     Docket No. 115 at 14-26.

[76]     Docket No. 120 at 5.

[77]     Docket No. 78 at 7.

[78]     Docket No. 108-2 at 8 (SEALED).

Case 3:23-cv-00121-HRH     Document 125     Filed 11/03/25     Page 24 of 39

court has jurisdiction over [the Office of Special Trustee] for the purposes of enforcing its judgment" and because "OST forms signed by the clerk are treated as if they were signed by the defendant, then what is at issue here is not payment of a debt, but rather compliance with a request from an IIM account holder."[79] That is an entirely different issue from whether the Contract violates Section 410.

Second, Givens continues to erroneously argue that *Equitable Trust*[80] and *Arenas*[81] "support the existence of an equitable lien that overrides [Section 410]."[82] However, neither *Equitable Trust* nor *Arenas* were cases involving enforcement of a contract between private parties. *Equitable Trust* and *Arenas* stand for the proposition that an attorney representing an allottee may file a claim for an equitable attorney's fees award in the same lawsuit where funds are recovered on behalf of the allottee.[83] But here, Givens decided to forego seeking his attorney's fees directly from the United States in *Oenga v. United*

---

[79]   Docket No. 108-2 at 16, 18 (SEALED).

[80]   *United States v. Equitable Trust Co. of New York*, 283 U.S. 738 (1931).

[81]   *Arenas v. Preston*, 181 F.2d 62, 67 (9th Cir. 1950).

[82]   Docket No. 120 at 7.

[83]   *See* Docket No. 96 at 34-39.

*States*, and instead filed a private lawsuit for breach of contract against his former client. *Arenas* specifically rejected that type of claim.[84]

Third, despite repeatedly admitting that Ray did not seek Interior's approval of the Contract because he "believed that the government would not approve it,"[85] Givens now argues that Interior did approve the Contract after all. It is clear that Givens has come up with that post hoc rationale in a desperate attempt to circumvent Section 410. Givens cannot point to any clear statement from Interior indicating its "approval and consent" to the Contract, let alone any evidence that Interior did so *after* reviewing the Contract, First Amendment, and Fee/Cost Reduction Agreement.

---

[84] *Arenas*, 181 F.2d 62, 67 (9th Cir. 1950) ("[A] lien on the property cannot be awarded upon any contract by and between the allottee and his attorney."). Typos in the Ninth Circuit's opinion do not undermine its clear meaning in the context of the entire opinion. *See* Docket No. 120 at 8. The Ninth Circuit held that payment of attorney's fees must be fixed by the lower court sitting in equity, and not based on any contract rate. Following the "garbled" sentence, the court went on to say that "[w]hen, as here, the attorneys seek to secure their fees by a lien upon the property the judge as the chancellor has the jurisdiction to impress the lien for a sum equal to but not in excess of the sum which he deems reasonable." *Arenas*, 181 F.2d at 67. In other words, an attorney may be entitled to an award of quantum meruit for their legal services, but they cannot enforce a contingent fee contract for allotment proceeds, except with the approval and consent of Interior.

[85] Docket No. 105 at 7; Docket No. 36 at 18-19.

Fourth, Givens abandoned the arguments that Section 410 does not apply to contingent fee contracts for lawsuits against the United States or to newly recovered funds by an allottee.[86] Givens does not brief the issues, and for good reason—those unsupported theories rested on a hope and a prayer rather than canons of statutory interpretation. Section 410 is abundantly clear: "money accruing from any lease" is protected from the payment of any claim against the allottee.[87] This Court cannot simply ignore the plain language of a federal statute. Importantly, the Alaska Supreme Court explained that courts "cannot assume that the Secretary of the Interior will unreasonably disapprove of reasonable fees under section 410."[88] Thus, Ray had no excuse for not seeking Interior's approval of the Contract as required by Section 410.

For the foregoing reasons, and the reasons explained in Delia's previous briefing on this issue,[89] Delia is entitled to summary judgment because the Contract is unenforceable. Givens' Cross-Motion should be denied.

---

[86]    *See* Docket No. 105 at 35-36.

[87]    *See First-Citizens Bank & Trust Co. v. Harrison*, 326 P.3d 808, 812 (Wash. Ct. App. 2014) (interpreting Section 410 broadly in favor of allotee).

[88]    *Law Offices of Vincent Vitale, P.C. v. Tabbytite*, 942 P.2d 1141, 1148 n.6 (Alaska 1997).

[89]    Docket No. 96; Docket No. 115.

## II. Delia is not barred by claim preclusion.

Givens re-argues that Delia is precluded from raising his defenses in this case because a different Oenga heir, Leroy Oenga Jr., lost in an arbitration before the Alaska Bar Association. For the reasons explained in Delia's Reply,[90] this Court should conclude that Delia was not in privity with Oenga Jr., and thus, Delia is not precluded from raising any defenses to the Contract here.

Under Alaska law, a non-party may only be bound by a prior judgment if that non-party was in "privity" with a party that actually litigated a case to a final judgment.[91] "Privity" requires establishing that one of three factors applies: "the non-party (1) substantially participated in the control of a party's presentation in the adjudication or had an opportunity to do so; (2) agreed to be bound by the adjudication between the parties; or (3) was represented by a party in a capacity such as trustee, agent, or executor."[92]

Here, Givens concedes correctly that the first and second factors do not apply, but Givens' myopic focus on the fact that Delia and Oenga Jr. are

---

[90]    Docket No. 115 at 26-31.

[91]    *Powers v. United Servs. Auto. Ass'n*, 6 P.3d 294, 297-98 (Alaska 2000).

[92]    *Strong v. Williams*, 435 P.3d 872, 875 (Alaska 2018) (quoting *State, Dep't of Health & Soc. Servs., Office of Children's servs. v. Doherty*, 167 P.3d 64, 73 (Alaska 2007)).

"closely related" and share some of the same interests misses the point.[93] The third privity factor addresses "limited circumstances" in which a non-party was "adequately represented by someone with the *same interests*" who was a party.[94] For example, in *Donnelly v. Eklutna, Inc.*, the Alaska Supreme Court concluded that a homesteader, his wife, and children were in privity for purposes of a property dispute because they all had the same interests in the litigation, they "occupied the land as a family unit," the wife and children were successors in interest, and the wife and children had the opportunity to participate in the original litigation, "which on its face plainly extended to the entire family."[95] Other examples of such "limited circumstances" include class actions and "suits brought by trustees, guardians, and other fiduciaries."[96] None of those "limited circumstances" are present here.

Even if Delia and Oenga Jr. are considered "closely related" and have some overlapping defenses to the Contract, Delia could not have been "virtually represented" by Oenga Jr. in the fee arbitration. Delia and Oenga Jr. have different interests and Delia has different defenses to the Contract, some of

---

[93]    Docket No. 120 at 11.

[94]    *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (emphasis added).

[95]    *Donnelly v. Eklutna, Inc.*, 973 P.2d 87, 93 (Alaska 1999).

[96]    *Taylor,* 553 U.S. at 894 (citing Restatement of Judgments).

Case 3:23-cv-00121-HRH    Document 125    Filed 11/03/25    Page 29 of 39

which Oenga Jr. would not have been able to raise on his own. For example, Delia's signature on the Contract was procured under duress, while Oenga Jr. never even signed the Contract.[97] Oenga Jr. could not have raised duress as a contract defense in the arbitration.

Givens essentially argues that *Donnelly* adopted the theory of "virtual representation," in which "closely related" parties may be bound in circumstances where there was "adequate representation" in the prior litigation.[98] But the U.S. Supreme Court rejected that theory as unconstitutional in *Taylor v. Sturgell*: "[V]irtual representation would authorize preclusion based on identity of interest and some kind of relationship between the parties and non-parties, shorn of the procedural protections" required by due process.[99] Thus, this Court should reject Givens' argument that Delia is bound to Oenga Jr.'s arbitration decision.

## III.   Givens is not entitled to summary judgment on Delia's defense under AS 13.16.645.

Givens fails to meet her burden to prove that she is entitled to summary judgment on Delia's defense that enforcement of the Contract is partially

---

[97]   *See* Docket No. 56 at 19-20; Docket No. 115 at 29.

[98]   Docket No. 120 at 13 (citing *Donnelly*, 973 P.3d 87, 92 (Alaska 1999)).

[99]   *Taylor v. Sturgell*, 553 U.S. 880, 901 (2008).

barred by AS 13.16.645 with respect to Delia's inherited interest in the allotment. Under AS 13.16.645, "the claim of any claimant to recover from a distributee who is liable to pay the claim . . . is forever barred at the later of (1) three years after the decedent's death; or (2) one year after the time of distribution of it."

Delia owned a 1% interest in the allotment in 2003 when he signed the Contract.[100] At that time, Delia's brother, Michael Delia, owned a 4% interest in the allotment and he acquired an additional 20% interest at some later time, which the record does not currently reflect.[101] The consideration that the Oenga heirs offered for Ray's legal services was based on a percentage of their individual lease payments in 2003, which were proportional to their ownership interests. Thus, Delia paid Ray's fees based on his 1% interest beginning in 2006.

When Michael died, his 24% interest in the allotment was distributed to Delia, presumably according to Michael's will.[102] For some reason, Ray did not file a claim in Michael's probate, which is notable because Ray has filed claims in the probates of other Oenga heirs, including Leroy Oenga, Sr. and Wallace

---

[100]      Docket No. 30-1 at 3 (SEALED).

[101]      Docket No. 30-1 at 3-4 (SEALED).

[102]      Docket No. 30-1 at 4 (SEALED).

Oenga, seeking confirmation of his claims under the Contract.[103] Thus, Givens'
claim that Delia is responsible for Michael's portion of the payment obligations
is barred by the three-year claims period.[104] If this Court concludes that the
contract is enforceable, Givens' claim is limited to recovery on Delia's 1%
allotment interest that he originally promised as consideration for the
Contract. In any event, Givens fails to meet her summary judgment burden by
not explaining why AS 13.16.645 does not apply.

## IV.    Givens is not entitled to summary judgment on any of Delia's other defenses.

Givens argues that "Delia provides no support" for his affirmative
defenses,[105] but here, Givens is the movant, and not Delia. Givens fails to meet
her initial burden to show "that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law" with respect to

---

[103]    *See, e.g.*, Docket No. 96-14 at 6. In Wallace Oenga's case, this Court noted
that the "Plaintiff expressly states that he 'does *not* intend to seek payment
outside the probate proceeding of Mr. Oenga's estate.' Plaintiff further
represents that he is preparing to submit a claim for the enforcement of the
court's default judgment in the federal probate proceedings." Order on Motion
for Rule 60(b) Relief, Docket No. 90, *Givens v. Wallace Oenga*, No. 3:19-cv-
00043-HRH (D. Alaska Mar. 1, 2023).

[104]    *See also* 25 C.F.R. § 15.304; 43 C.F.R. § 30.140 (providing that claims
against an Indian estate must be filed prior to the conclusion of the first
hearing).

[105]    Docket No. 120 at 15.

any of Delia's defenses.[106] Discovery is ongoing. At trial, Delia will support each of his affirmative defenses or properly withdraw them.

Importantly, the undisputed facts demonstrate that each of Delia's defenses have merit. First, for the reasons explained *infra* and in Delia's motion for summary judgment, the Contract is unenforceable because it violates Section 410. The Contract is also unenforceable because it is contrary to public policy, at least with respect to the fact that the Contract on its face violated Alaska Rules of Professional Conduct 1.5, 1.7 and 1.8.[107]

Second, for the reasons explained *infra*, Givens' claims are likely barred in part by AS 13.16.645 because Ray did not file a claim in Michael Delia's probate before Delia inherited Michael's interest in the allotment.

Third, the undisputed facts demonstrate serious ethical breaches by Ray that bar any recovery of future attorney's fees. "A serious conflict of interest exists and existed by virtue of the joint representation provided for and contemplated by the [Contract] in violation of [Professional Rule 1.7]."[108] Givens "engaged in aggregate settlement negotiations and consummated a

---

[106]    Fed. R. Civ. P. 56(a).

[107]    *See* Declaration of Timothy Petumenos at ¶ 4.

[108]    *Id*. at ¶ 4(b).

settlement in violation of [Professional Rule 1.7(b) and 1.8(g)]."[109] "Givens failed to secure the written informed consent of his jointly represented clients, which is required by [Professional Rule 1.7(b)(4)]."[110] Givens failed to advise the Oenga heirs that they could "secure independent legal advice" before entering into the Contract amendments as required by Professional Rule 1.8(a)(2).[111] From its inception, the Contract violated Professional Rule 1.5(c) by not specifying whether Ray's costs would be deducted before or after the contingent fee was calculated.[112] Finally, Ray "should have kept a record of time spent in pursuing this matter on a concurrent basis, and the failure to do so violated [Professional Rules 1.2(c) and 1.3]."[113] In light of those serious ethical breaches, this Court should conclude that Givens is not entitled to any further fees.[114]

Fourth, Givens cannot meet her burden to prove that the "fee charged, and continuing to be charged, under all of the facts and circumstances, is

---

[109]  *Id*. at ¶ 4(c).

[110]  *Id*. at ¶ 4(d).

[111]  *Id*. at ¶ 4(e).

[112]  *Id*. at ¶ 4(f).

[113]  *Id*. at ¶ 4(g).

[114]  *See In re Chaobal*, 498 P.3d 617 (Alaska 2021); *Jacobus v. Kalenka*, 464 P.3d 1231 (Alaska 2020).

reasonable pursuant to [Alaska Rule of Professional Conduct 1.5(a)]."[115] Ray did not keep records of the time that he worked on this matter and thus, there is no longer an "opportunity for the former client to question the attorney on the reasonableness of the unusual fee, which purports to require continuing payments years and years into the future."[116] "Under these circumstances, and given that the [Contract] was written in a fashion to contemplate such an enormous and continuing obligation to pay attorney's fees for years and years, maintenance of contemporaneous time records was required to justify the reasonableness of the fee."[117]

Fifth, the undisputed facts demonstrate that the Contract cannot be enforced because it was entered into under duress. In 2011, "Ray started to pressure the family to agree to the terms and to sign an amended contingency fee agreement."[118] Ray told the Oenga heirs that "the only way [they would] ever get paid was to sign the amended contingency fee agreement."[119] Although that threat was flatly untrue (they had already received a damages award in

---

[115]    Declaration of Timothy Petumenos at ¶ 4(a).

[116]    *Id*. at ¶ 5(a).

[117]    *Id*.

[118]    Declaration of Joseph Delia at ¶ 9.

[119]    *Id*.

*Oenga v. United States*), the Oenga heirs were not experienced in complex legal transactions and relied on Ray for legal advice. The Oenga heirs "were all scared of Ray because of the way he yelled at us and threatened us."[120] According to Delia, Ray "bullied us into signing that agreement."[121] Under Alaska law, those facts adequately support the affirmative defense of duress.[122]

Sixth, because the Contract creates a "lien" or security interest on the allotment lease proceeds, the United States is an indispensable party that must be joined under Federal Rule of Civil Procedure 19. Here, Givens has already attempted to "attach" Delia's Individual Indian Money account, which is a fund held in trust by the United States. The United States has a significant interest in protecting property held in trust for the benefit of Alaska Natives,

---

[120] *Id.* at ¶ 10.

[121] *Id.*

[122] *Crane v. Crane*, 986 P.2d 881, 887 (Alaska 1999); *Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Serv. Co.*, 585 P.2d 15, 21 (Alaska 1978); Alaska Pattern Jury Instructions § 24.08D Affirmative Defense – Duress ("The defendant made his promise under duress if you decide that the following things have been proven by clear and convincing evidence: (1) the defendant involuntarily accepted the plaintiff's terms because the defendant believed he had no reasonable alternative but to accept those terms; (2) the defendant had no other reasonable alternative; and (3) the defendant had no other reasonable alternative because of coercive words or conduct by the plaintiff that was criminal, tortious, or morally wrong.").

Case 3:23-cv-00121-HRH    Document 125    Filed 11/03/25    Page 36 of 39

but Givens would not be to join the United States as a party because of sovereign immunity.

Thus, Givens does not show that she is entitled to summary judgment on any of Delia's affirmative defenses.

## V. Givens fails to present any evidence establishing the amount of claimed damages.

Givens cannot prevail on this case as a whole because she presents absolutely no evidence to prove the amount of her claimed damages.[123] Summary judgment is not appropriate where the movant merely promises to provide the court with evidence at some unclear point in the future. Even if Givens were to ultimately prevail on her claim that the Contract is enforceable, she will still have to introduce admissible evidence to prove the amount of damages—the actual lease payments received by Delia during the relevant years, less the annual CPI adjustments for those years. To date, Givens has made no attempt to acquire that critical evidence.

## VI. Givens waived any claim to quantum meruit.

In her Opposition, Givens disclaimed any award of quantum meruit, insisting that this Court should enforce only the Contract fees. Givens stated

---

[123]    Docket No. 120 at 17.

*Givens v. Delia*                                           Case No. 3:23-cv-00121-HRH
Opposition to Cross-Motion for Summary Judgment                    Page 37 of 39

that the fees "should be under the agreement, *not under the doctrine of quantum meruit*."[124] Regardless, Givens' Cross-Motion does not dispute the fact that the Oenga heirs have already paid more than $7 million in attorney's fees and that amount represents fair compensation. Givens is entitled to nothing more.

## CONCLUSION

For the foregoing reasons, this Court should deny Givens' Cross-Motion for Summary Judgment. Givens fails to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[125]

Respectfully submitted.


DATED: November 3, 2025          LANDYE BENNETT BLUMSTEIN LLP

                                 */s/ Andrew Erickson*
                                 _____
                                 Andrew Erickson, Alaska Bar No. 1605049
                                 Matt Mead, Alaska Bar No. 0711095

                                 *Attorneys for Defendant Joseph Delia*

---

[124]    Docket No. 105 at 46.

[125]    Fed. R. Civ. P. 56(a).

Case 3:23-cv-00121-HRH    Document 125    Filed 11/03/25    Page 38 of 39

## CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.4

Pursuant to Local Civil Rule 7.4(a)(3), I hereby certify compliance with the page/word limitation of Local Civil Rule 7.4(a)(1). This opposition memorandum contains 6,834 words, excluding the parts exempted by Local Civil Rule 7.4(a)(4). This memorandum has been prepared in a proportionally spaced typeface, Century Schoolbook, 13-point font, and I obtained the word count using Microsoft Word.

*/s/ Andrew Erickson*
_____
Andrew Erickson


## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2025, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

*/s/ Andrew Erickson*
_____
Andrew Erickson