IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARIA M. GIVENS, as Personal Representative of the Estate of Raymond C. Givens,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH DELIA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 3:23-cv-00121-HRH<br>)<br>)<br>) |

## DECLARATION OF TIMOTHY PETUMENOS

I, Timothy Petumenos, declare as follows:

1. I have been retained as an expert witness in this matter on the topics of legal ethics, professional responsibility, and potential legal malpractice as it pertains to the drafting and modification of fee agreements, joint representation, and collecting of fees for legal services under a contingent fee contract, as well as factors relating to the requirement that legal fees be reasonable pursuant to the Alaska Rules of Professional Conduct. This declaration is submitted in connection with Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment (Docket No. 120) filed in the above-titled matter and is submitted pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) and Federal Rule of Evidence 702.

2.  My qualifications are set forth in Appendix 1 to this declaration and as follows:

a.  On October 9, 2025, I taught a formal course on ethics specifically relating to issues of joint representation at the request of the Native Law Section of the Alaska Bar Association. I have taught legal ethics on behalf of and at the request of the Alaska Bar Association together with Alaska Bar Counsel for the last several years on a volunteer basis. The Alaska Bar Association affords required continuing legal education credits for attendance at these courses.

b.  I have previously provided a declaration with respect to legal fee issue as an expert witness in the United States District Court for the District of Alaska in another matter.

c.  I have previously been qualified as an expert witness on legal malpractice and legal ethics in a trial in the Superior Court for the State of Alaska, Third Judicial District.

d.  I have provided expert witness testimony in *Maxim Healthcare Services, Inc. v. Hozubin, Moberly, Lynch and Associates, et. al.*, Case No. 3AN-19-06876CI (Alaska Super. Ct.), within the last five years.

e.  I am being compensated on an hourly basis for the work done in this matter at the rate of $500/hour.

3.  In reaching the opinions set forth in this Declaration, I have studied and examined the following:

a. The Pleading file in this matter.

b. The Discovery exchanged in this matter between the parties, which discovery included the Fee Arbitration file entitled *Oenga v. Givens*, ABA No. 2021F012 (Fee Arbitration).

c. Independent Legal Research, conducted or supervised by me.

4. This declaration is specifically directed toward that aspect of the Cross Motion for Summary Judgment at 15-17, which seeks summary judgment with respect to the pled affirmative defenses that the Fee Agreement at issue in the above-titled matter violated and continues to violate the Alaska Rules of Professional Conduct ("R.P.C.s"), which impacts the enforceability of this Fee Agreement. It is my opinion that the pled affirmative defenses, based upon the ethics rules and public policy, have merit on the following grounds:

a. **Opinion No. 1.** Mr. Givens cannot meet his burden that the fee charged, and continuing to be charged, under all of the facts and circumstances, is reasonable pursuant to Alaska R. Prof. Conduct 1.5(a).

b. **Opinion No. 2.** A serious conflict of interest exists and existed by virtue of the joint representation provided for and contemplated by the Fee Agreement in violation of Alaska R. Prof. Conduct 1.7.

c. **Opinion No. 3.** Mr. Raymond Givens engaged in aggregate settlement negotiations and consummated a settlement in violation of Alaska R. Prof. Conduct 1.7(b) and 1.8(g).

d. **Opinion No. 4.** Mr. Raymond Givens failed to secure the written informed consent of his jointly represented clients, which is required by Alaska R. Prof. Conduct 1.7(b)(4).

e. **Opinion No. 5.** The Amendments to the Fee Agreement were sought and obtained without the referral by Mr. Givens to independent counsel, in order for the clients to secure independent legal advice on the matter of the Fee Agreement Amendments, in violation of Alaska R. Prof. Conduct 1.8(a)(2).

f. **Opinion No. 6.** The Fee Agreement *ab initio* failed to comply with Alaska R. Prof. Conduct 1.5(c).

g. **Opinion No. 7.** Under the circumstances, Mr. Givens should have kept a record of the time spent in pursuing this matter on a concurrent basis, and the failure to do so violated Alaska R. Prof. Conduct 1.2(c) and 1.3. The failure to keep contemporaneous time records is also a critical fact to be considered in assessing whether Mr. Givens can meet his burden of establishing that the ultimate fee charged was reasonable under Alaska R. Prof. Conduct 1.5(a).

5. Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), I state as the reasons and basis for my opinions in the order set forth above as follows:

a. **Opinions No. 1 & 7.** With respect to the reasonableness of the fee, my opinion is that the failure of Mr. Givens to keep contemporaneous time records, notwithstanding that this was a contingent fee contract, is fatal to his being able to meet his burden of proof that the fee received, and fee to be received, is reasonable pursuant to

Alaska R. Prof. Conduct 1.5(a). It is my opinion that when a complicated matter is undertaken on a contingent fee basis, which can be expected to continue in duration for many years and where the potential recovery is large and the expenditure of costs and legal services is substantial, an attorney who elects not to keep contemporaneous time records acts at his or her peril.

Your affiant first encountered this concept years ago, at the beginning of the Exxon Valdez consolidated litigation as a contingent fee attorney. This Court, at the outset, admonished all counsel to keep time records in recognition of the likelihood of judicial involvement in the award of attorneys' fees, the complexity of the matters presented and the likely duration of the matter. Counsel complied, whether they were contingent fee compensated or not.

In the instant case, it was evident and acknowledged by Mr. Givens in the Fee Arbitration that the litigation was unpredictable, likely to go on for many years, the amount and nature of the recovery was uncertain, and at the same time the recovery could be quite large. Exhibit A at 1 (filed under seal). In addition, as more specifically detailed *infra*, there was a significant and foreseeable expectation that fee shifting remedies would likely be available to his clients, such that the failure to keep time records caused Mr. Givens to forego statutory remedies to recover fees for his clients due to his failure to keep contemporaneous time records. This is an impermissible limitation on the scope of his representation that violates Alaska R. Prof. Conduct 1.2(c), which requires that any aspect of the retention of the attorney which limits the attorney's ability to represent the client must be

disclosed to the client and the client must give informed consent to any such limitation in advance and in writing.

Here, the former clients are at the mercy of the attorney who apparently believes he can meet his burden of establishing the reasonableness of the fees incurred by retroactively submitting an after-the-fact summary estimate of the time expended, years after the self-serving estimates were prepared (Docket No. 98-1 at 7-8 (SEALED)). It left the former client in the position of having to trust the attorney's *post hoc* justification for the fee, with no practical way to refute the submission. The attorney is now deceased and the opportunity for the former client to question the attorney on the reasonableness of the unusual fee, which purports to require continuing payments years and years into the future. Under these circumstances, and given that the Contingent Fee Agreement was written in a fashion to contemplate such an enormous and continuing obligation to pay attorneys' fees for years and years, maintenance of contemporaneous time records was required to justify the reasonableness of the fee.

While it may be the case that substantial work went into obtaining the recovery, and that the recovery was substantial, so too are the fees already recovered. Moreover, this agreement is most unusual in that it calls for fees to be paid very far into the future.

Since all of this was foreseeable, the failure to keep contemporaneous time records, with no apparent justification for failing to do so, could cause the ultimate factfinder in this matter to agree with my opinion and conclude that the attorney's burden to establish that his fee is reasonable cannot be met. To the extent the prior Fee Arbitration brought on

behalf of a different client is being pled as dispositive of this issue, I note that many of the issues addressed in this declaration were not raised at all in the Fee Arbitration and no expert witness was retained on behalf of the client in the Fee Arbitration.

   b. **Opinion Nos. 2 - 7.** With respect to the conflict-of-interest issue presented by the joint representation of clients in this matter, as set forth in this Declaration at §§ 1(b)-(d), *supra*, the inquiry surrounding the ethics of joint representation is a two-step process. First, under Alaska R. Prof. Conduct 1.7(a), an attorney must consider whether the joint representation can be undertaken at all, based upon whether the clients are directly adverse to one another when the proposed representation is undertaken. Second, if it appears there is an absence of an unwaivable conflict between putative clients based upon direct adversity, the attorney must assess whether the representation to be undertaken jointly is likely to be limited in any material way as to any of the putative clients, in which case the informed consent of each represented client must be obtained in writing before the representation is undertaken, pursuant to Alaska R. Prof. Conduct 1.7(b). Finally, attorneys are required to continually monitor developments in the case and be vigilant about when a conflict develops that requires action to address any conflict of interest that may arise.

  Here, it was evident at the beginning that the joint representation was likely to require aggregate settlement negotiations and a global agreement among jointly represented clients. This is because it is common that defendants require a global settlement for "total peace" before any settlement will be finalized. This, in turn, requires the claimants to reach

*Givens v. Delia*                                        Case No. 3:23-cv-00121-HRH
Declaration of Timothy Petumenos                           Page 7 of 15

Case 3:23-cv-00121-HRH  Document 125-9  Filed 11/03/25  Page 7 of 18

agreement on allocation of settlement proceeds, potentially pitting one represented client against another, which could be based legitimately upon disparities between the strength and value of the claims asserted, the assessment of which must be arrived at with each claimant being competently represented. Moreover, an attorney jointly representing multiple clients is in a position to enhance the settlement of a weaker claim by settling a stronger claim, and vice versa, to the potential detriment of one client over another.

Indeed, in recognition of this, Alaska R. Prof. Conduct 1.8(g) <u>prohibits</u> an attorney from engaging in aggregate settlements unless the advanced informed consent of the client is given in writing. Obviously, to be informed, these issues must be disclosed to the clients and their consent to these risks secured – in advance. In this case, Mr. Givens failed to disclose these risks in writing and instead chose to deal with these conflicts by providing in advance for a super-majority "vote" of his clients on a whether a settlement would be authorized, which resulted in each jointly represented client being bound to any settlement upon which he disagreed but found himself out-voted by other clients.

The problem with this arrangement is that, even with the "vote" provision, it places the attorney in a divided loyalty situation and deprives the clients of the advice of independent counsel at a critical juncture in the case – whether to accept a litigation-ending settlement and how to allocate it. In addition, such an arrangement runs afoul of the requirement under the R.P.C.s, which places the authorization for a settlement solely with each client. Pursuant to Alaska R. Prof. Conduct 1.2(a), a lawyer is required to abide by the decision of the client as to whether to settle the matter. This was the holding by the

Tenth Circuit, which directly addressed this issue in *Hayes v. Eagle-Picher Industries, Inc.*, 513 F.2d 892 (10th Cir. 1975).

Near the end of critical settlement negotiations, one of Mr. Givens' clients asserted his objection to the proposed settlement, <u>both</u> on the grounds that the settlement amount was inadequate and the fee agreement unfair. This is precisely what Rules 1.7 and 1.8(g) foresee is likely to occur when an attorney engages in aggregate settlement negotiations while representing multiple clients.

The events that unfolded due to the "majority vote" provision of the Fee Agreement confirm that the holding by the *Hayes* court was prophetic and wise. One client, who was apparently desperate to see the settlement go through, offered financial remuneration to the objecting client from his own settlement allocation in return for the objecting client's consent to the settlement, notwithstanding the objecting client's disapproval of both the settlement amount and the fairness of the Fee Agreement. The other represented clients were not informed of the transaction.

Upon learning of the unilateral action taken by these two clients, Mr. Givens participated in assisting these clients in carrying out the arrangement. At that point, Mr. Givens was hopelessly conflicted. This is so because Mr. Givens' duty of loyalty to each client could not be fulfilled, he had his own financial interest in maintaining his fee in the face of a client's assertion that the fee was unreasonable, and his duty to communicate fully to all clients about these developments was required by Alaska R. Prof. Conduct 1.4 & 1.6. Mr. Givens failed, at this point, to comply with Alaska R. Prof. Conduct 1.6, which requires


*Givens v. Delia*  
Declaration of Timothy Petumenos  
Case No. 3:23-cv-00121-HRH  
Page 9 of 15


Case 3:23-cv-00121-HRH   Document 125-9   Filed 11/03/25   Page 9 of 18

that confidences of one client cannot be kept from other jointly represented clients, as is set forth in Alaska R. Prof. Conduct 1.7 and the Commentary thereto.

Finally, the handling of the aggregate settlement ran afoul of Alaska R. Prof. Conduct 1.2 to the extent the clients' collective control of the settlement decision was delegated to a majority vote of other clients, when each client is required to control the settlement of their own case under Rule 1.2(a). The *Hayes* case also stands for the proposition that under these circumstances, the failure of the jointly represented clients to object to the arrangement at the time, when they lacked unconflicted competent representation and advice, is not a bar to later challenging the settlement.

In my opinion, the proper course of conduct, once this foreseeable and serious conflict arose during critical settlement negotiations, at which there was huge pressure to reach a fair settlement, was for Mr. Givens to advise his clients that they should consult with independent counsel. This was not done.

   c. **Opinion No. 5.** When a fee agreement is struck, promises are made as to the legal services that will be provided and for how much. In contingency fee cases, the attorney promises to fully represent the client's interests, as required, to reach a desired result at the end of the conflict resolution process, and all of the terms, including how costs will be handled, must be set forth in the initial fee agreement under Alaska R. Prof. Conduct 1.5(c). Any time a fee agreement amendment is proposed, the attorney is placed in a conflict with the client, since promises were made for the provision of legal services. If an amendment altering the terms is to be reached, the client should be offered the opportunity

to seek independent advice to determine why and whether circumstances have changed, such as the consideration for the contract should be modified.

Mr. Givens made a contractual promise to receive a fee in consideration for ultimate case resolution. Given that Mr. Givens sought a change to the consideration for the same legal services which were promised to be provided, the client is entitled to the benefit of independent counsel to obtain the advice on whether and to what extent the agreed upon terms should be modified. In this case, some of the modifications were to remedy violations of the R.P.C.s, while others went to the reasonableness of the fee. First, Rule 1.5(c) expressly provides that the fee agreement must address whether costs are to be deducted before or after the calculation of the contingent fee. The Contingency Fee Agreement in this case (Docket No. 96-6) failed to provide for a clear indication of whether the percentage fee to be taken would be before or after considering the costs that were advanced. This violated Alaska R. Prof. Conduct 1.5(c).

At first, fees were calculated including the costs incurred. Subsequently, in the face of a looming challenge to the fairness of this, Mr. Givens proposed an amended agreement which altered the manner in which the fee was calculated to exclude the amount of costs advanced. Nevertheless, fees were paid under the former construct and were not reimbursed. Moreover, it is no answer, as is set forth in Plaintiff's Cross-Motion for Summary Judgment, that some Amendments to the Fee Agreements amounted to a reduction of fee. The existence of the amendments is nothing more than a potential admission by Mr. Givens that the initial Fee Agreement was unreasonably high, such that it required modification.

The Amendments themselves tell us nothing about whether the reduction was sufficient or reasonable under the circumstances, and begs the question of whether the amendments were fair or whether additional concessions were warranted to cause the fee to be reasonable. This question should have been resolved with the participation of independent counsel. At the very least, that option should have been presented to the clients under these circumstances and under the guidance provided by the R.P.C.s. No referral to independent counsel to provide advice to the clients about amendments to the Fee Agreement was made by Mr. Givens to his clients. In addition, at the time of consummation of the initial Contingent Fee Agreement (or any fee agreement for that matter), any limitations on the scope of the representation to be provided must be reasonable, disclosed and be the subject of informed written consent pursuant to Alaska R. Prof. Conduct 1.2(c). The Commentary to Rule 1.2(c) makes clear that the failure to comply with this requirement can constitute the failure to provide competent representation under Alaska R. Prof. Conduct 1.1.

There are several instances where Mr. Givens limited his representation, without disclosure and without the informed consent of his clients. First, and most seriously, was the failure to keep contemporaneous time. In the fee arbitration, Mr. Givens conceded that the litigation to be undertaken was so complex, potentially lengthy, with many ways in which the outcome would be unpredictable, so it was extremely difficult to craft a contingent fee agreement that covered all of the potential eventualities. (Exhibit A at 1 (filed under seal). Under such circumstances, as set forth *supra*, it was incumbent upon Mr. Givens to not cease keeping contemporaneous time records. (Mr. Givens ceased keeping

time in March 2011; Docket No. 98-1 at 7-8 (SEALED)). No reasonable explanation for his failure to continue to keep time has been proffered. Moreover, Mr. Givens' decision to forego keeping time records was never consented to by his clients. The clients are now placed at an enormous disadvantage in challenging the reasonableness of the fee which, by design, was set to likely exceed the life expectancy of both the attorney and the clients.

In addition, there were other limitations that were both undisclosed and unconsented to under this fee arrangement that limited the claims that could be brought. The first related to the fact that Mr. Givens was not licensed to practice law in Alaska. This limited the fora to which the claims could be brought or enforced. Moreover, representation in this Alaska case infers that the attorney is licensed in this jurisdiction and is therefore familiar with, trained and has passed the Bar, which includes the attorney's familiarity with the R.P.C.s, to which an attorney practicing in Alaska must adhere. A licensed Alaska attorney is subject to regulation by the Alaska Bar, which enforces these R.P.C.s. His lack of Alaska licensure was a serious potential limitation on the representation which should have been disclosed and should have been the subject of written informed consent.

As related to potential claims to be asserted within the scope of the representation, Mr. Givens admitted in the Fee Arbitration that he had to forego making a fee-shifting claim on behalf of his clients, pursuant to the Equal Access to Justice Act (EAJA), because he hadn't maintained contemporaneous time records to submit in support of a fee application, as would have been required. (Docket No. 98-1 at 4 (SEALED)). It is evident that this was unreasonable, since Mr. Givens did in fact keep time at the outset of the

representation and for the first few years of the representation, but inexplicably ceased doing so. This was in the face of an entirely foreseeable claim for statutory attorneys' fees that was available to his clients. It was, of course, also foreseeable and reasonable that if fee shifting statutes require contemporaneous time records, that justifying an enormous fee in a complex meandering and lengthy case would also be deemed to be reasonably necessary in justifying the reasonableness of the attorney's fee to one's clients.

There are numerous occasions in other statutory fee shifting scenarios (e.g. Social Security, Bankruptcy proceedings, fee applications pursuant to the Complex Litigation Manual) where the failure to submit contemporaneous time records is fatal to obtaining any relief. The failure here has serious consequences to determining if Mr. Givens can meet his burden of proof on the reasonableness of the fee to the ultimate factfinder, and seemingly would certainly preclude summary judgment.

The consequences of the failure to comply with the R.P.C.s with respect to fees is a highly fact-dependent issue. Not every violation(s) results in complete forfeiture of fees, yet some do. Once violations of the R.P.C.s are established, the analysis of their impact on fees paid or due is conducted based upon equitable principles following these steps: 1) The Fee Agreement as written and executed is examined with respect to the nature and materiality of the violations of the R.P.C.s and the extent to which the Fee Agreement is illegal and unenforceable. 2) Nevertheless, to avoid unjust enrichment and other equitable unfairness, equitable principles such as *quantum meruit* and other equitable principles in *quasi contract* are applied to reach a fair result.

Serious deviations of the R.P.C.s occurred here. Doubtless, a great deal of work went into the representation of these clients, but there was also an enormous fee paid, and the request is that the fee be continued for many years after the representation has ceased and the legal services completed. There is authority for claw back of fees already paid, as well as complete disgorgement of fees under some circumstances. *In re Chaobal*, 498 P.3d 617 (Alaska 2021); *Jacobus v. Kalenka*, 464 P.2d 1231 (Alaska 2020); *Eriks v. Denver*, 824 P.2d 1207 (1992); *See e.g., Attorney Fee Disgorgement as a Disciplinary Action*, 7 Univ. of Puget Sound Law. Rev. 546 (1984); *The Law of Lawyering in Washington (WSBA) §9.G*. It is my opinion that the facts and circumstances of this case demonstrate that numerous and material violations of the R.P.C.s are likely to be found.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

DATED: October 31, 2025

_____
Timothy J. Petumenos
Alaska Bar No. 7611147

*Givens v. Delia*
Declaration of Timothy Petumenos

Case No. 3:23-cv-00121-HRH
Page 15 of 15

Case 3:23-cv-00121-HRH   Document 125-9   Filed 11/03/25   Page 15 of 18



**TIMOTHY J. PETUMENOS**

1022 N Street
Anchorage, AK 99501
timp@tpaklaw.com
907.360.7449

Timothy J. Petumenos is the sole owner of the Law Office of Tim Petumenos, LLC. For over forty years, Mr. Petumenos' practice has focused on complex commercial civil litigation for both the plaintiffs and defendants. Mr. Petumenos is an experienced trial lawyer in state, federal courts and in arbitration proceedings. Prior to forming the Law Office of Tim Petumenos, LLC, Mr. Petumenos was Birch Horton Bittner and Cherot's senior trial lawyer, responsible for supervising teams of attorneys and paralegals for some of the state's largest and most well-known cases. Mr. Petumenos served as the ethics partner, responsible for consulting and responding to ethics problems as they arose within the firm. Mr. Petumenos has served as counsel in various capacities within the resource extraction, healthcare and fishing industries, and in related Native American law representation. Later in his career, Mr. Petumenos elected to focus and teach on ethics issues and the professional responsibilities of attorneys, physicians, corporate executives and public officials. Mr. Petumenos has pursued this interest by teaching in continuing legal education programs, conducting internal investigations within the public and private sector and serving as an expert witness in professional liability matters. Mr. Petumenos continues to serve as a litigation consultant in large complex civil cases.

**ACADEMIC BACKGROUND**

- Georgetown University Law Center, Washington, D.C. (J.D., 1976)
- Tufts University, Medford, Massachusetts, cum laude (B.A., 1973)
- Certified Instructor, National Institute for Trial Advocacy (NITA)

**PROFESSIONAL EXPERIENCE**

- Mr. Petumenos began his career as a prosecutor. After a short stint in the Fairbanks District Attorney's Office during the pipeline construction days (1977-1978), where he served as the sole prosecutor in Barrow, Alaska, in 1978 Mr. Petumenos became the first attorney assigned to the State of Alaska's Office of Special Prosecutions (OSPA) at a time when the goal of the Alaska Attorney General's office was to enhance its capability to successfully litigate complex criminal cases involving commercial offenses, environmental crimes and public corruption cases. There, Mr. Petumenos distinguished himself by bringing several complex and high-profile cases to trial involving the state Securities Act, state antitrust laws and a conviction for bribery against a powerful state senator. Mr. Petumenos was among the first prosecutors selected for cross-designation as a Special Assistant United States Attorney to allow law enforcement the flexibility to pursue cases in either federal or state courts as the circumstances dictated.

- Mr. Petumenos left public service in 1983 to join Birch Horton Bittner & Cherot. He continued his career handling some of Alaska's most famous trials, including being called back as a special prosecutor for the series of Neil MacKay murder trials, as counsel for the Native Corporations who owned the oiled beaches in the state Exxon Valdez Oil Spill trial, and numerous other large cases involving oil spills, environmental trials, criminal tax trials, and wrongful termination trials. Many of Mr. Petumenos' trials led to the establishment of precedent setting holdings by the Alaska Supreme Court. Mr. Petumenos has served as

- Independent Counsel to the Alaska Personnel Board. Independent Counsel is, by law, responsible for standing in the shoes of the Alaska Attorney General in order to handle ethics investigations involving the Alaska Governor under the Alaska Executive Ethics Act. Mr. Petumenos has also been retained to conduct independent internal investigations by both governmental and private entities.
- Mr. Petumenos formed the Law Office of Tim Petumenos, LLC in October of 2012. The Law Office of Tim Petumenos, LLC was Of Counsel to Birch Horton Bittner and Cherot until it became fully independent in March of 2014.
- Mr. Petumenos served as appellate counsel in major cases before the Alaska Supreme Court involving employment law, the Alaska Unfair Trade Practices Act, Alaska Tort Reform and the constitutionality of important state statutes.
- Mr. Petumenos also has experience in day-to-day corporate matters by serving as General Counsel to St. Elias Specialty Hospital and as General Counsel to Copper River Seafoods, Inc.

**ADMITTED TO PRACTICE**

- Mr. Petumenos was admitted to practice in the State of Alaska in 1976. He is a member of the Ninth Circuit Bar and the Bar of the United States Supreme Court.

**REPRESENTATIVE CLIENTS OVER THE YEARS**

- Alaska Native Medical Center, Copper River Seafoods, Inc., Delta Western, Inc., St. Elias Hospital, Nabors Industries, Cook Inlet Region, Inc., Alaska Interstate Construction, Inc., Prudential Insurance Company of North America, Surgery Center of Wasilla, LLC, Lloyds of London, Alaska Industrial Hardware, Chugach Alaska Corporation, Chenega Corporation, insurance companies, personal injury clients, numerous physicians and surgeons and most importantly, many hard-working Alaskans and their families.

**PUBLICATIONS AND TEACHING ENGAGEMENTS**

- After having first been trained in trial advocacy at Georgetown, Mr. Petumenos underwent an intensive, lengthy trial advocacy program at the National Institute for Trial Advocacy (NITA). Mr. Petumenos went on to become a certified NITA instructor of trial advocacy. Mr. Petumenos has been invited to teach trial advocacy in many different states and on several occasions by the Alaska Bar and the Alaska Department of Law.
- Mr. Petumenos has taught continuing legal education programs presented by the Alaska Bar Association on such topics as legal ethics, technology in the courtroom, trial advocacy and early case evaluation.
- Mr. Petumenos has served as an adjunct professor teaching at the University of Alaska at Anchorage.
- Mr. Petumenos was retained to conduct an investigation and extensive report by the North Slope Borough involving the conduct of the U.S. Department of Defense in conducting experiments in the arctic Native Alaskan communities during the post-World War II era entitled *Threats to the Health and Environment of Alaska Natives in the Nuclear Age* (1997).

**PAST AND PRESENT PROFESSIONAL AND COMMUNITY HONORS & ACTIVITIES**

- Alaska Bar Association hearing committees on disciplinary issues
- Bar Association Convention Planning
- Service on Bar practice area committees
- One of five non-judicial Elected Members of the American Law Institute in Alaska
- Teaching Trial Advocacy and related ethical topics for the State of Alaska Department of Law, National Institute for Trial Advocacy, Hawaii Prosecutors' Office and the Alaska Bar Association
- Adjunct Professor, University of Alaska at Anchorage

**PUBLICATIONS**

- 1997, Threats to the Health and Environment of Alaska Natives in the Nuclear Age
- 2008, State of Alaska Personnel Board, Report of Findings and Recommendations, In Re: Ethics Complaint of September 1, 2008

**LANGUAGES**

Fluent Spanish