IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARIA M. GIVENS, as Personal Representative of the Estate of Raymond C. Givens,<br><br>      Plaintiff,<br><br>v.<br><br>JOSEPH DELIA,<br><br>      Defendant. | Case No. 3:23-cv-00121-HRH |

## DECLARATION OF JOSEPH DELIA

I, Joseph Delia, declare as follows:

1. I am the Defendant in this action.

2. My family now owns the Alaska Native allotment at Point Heald near Prudhoe Bay formerly owned by Andrew Oenga (the "Allotment") through our respective inherited interests in the Allotment.

3. I now own a 25% interest in the Allotment that I inherited from Andrew Oenga and my brother Michael Delia.

4. In October 2003, my family hired Raymond C. Givens ("Ray") to represent us to obtain fair rental payments for use of the Allotment for oil and gas extraction activities.

5. Ray never told my family he wasn't licensed to practice law in Alaska, and that this would limit the way he could represent us.

6. Ray never told my family that a conflict of interest could come up between family members because he was jointly representing all of us.

7. As part of the contingency fee agreement, Ray told us that we needed to vote to approve any settlement with the United States and that the super majority vote would trump any family member who did not want to sign the settlement agreement.

8. In 2006, Ray filed a lawsuit on behalf of my family against the United States in the Court of Federal Claims. Ray told us that the lawsuit could take many years without any guaranteed result.

9. In 2011, by the time settlement discussions were really getting serious, Ray started to pressure the family to agree to the terms and to sign an amended contingency fee agreement. Things started to get uncomfortable because Ray was demanding we sign it. He told us the only way we'd ever get paid was to sign the amended contingency fee agreement.

10. We were all scared of Ray because of the way he yelled at us and threatened us, and he knew that we were intimated. He bullied us into signing that agreement.

11. Ray amended the contingency fee agreement a couple of times to make sure he got paid. But he never advised us that we could or should talk to another attorney or that he had a conflict. He just demanded we sign it and threatened us that we would never get any money unless we signed it.

12. He even grabbed Wallace, shook him, and demanded that he sign it.

13. I later learned that Ray was so desperate to get everyone to sign that he set up a bribe to pay off the holdout vote.

14. In April 2015, Ray set up a meeting of my family members about paying his bill. He told us that he was still our attorney and that we had to pay his fees. He even brought his attorney, Russ Winner, to threaten to sue us if we didn't pay.

15. By that point, we were more and more concerned about the way he'd bullied us all. We also were starting to realize that he might have acted illegally but we didn't know our rights because Ray always said he was our attorney, so we had to listen to him.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

DATED: November 3, 2025

_____
Joseph Delia