*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LEROY OENGA, JR., | ) | |
| | ) | Supreme Court No. S-19136 |
| Appellant, | ) | |
| | ) | Superior Court No. 2BA-23-00111 CI |
| v. | ) | |
| | ) | O P I N I O N |
| MARIA M. GIVENS, Personal | ) | |
| Representative of the Estate of | ) | No. 7800 – January 23, 2026 |
| RAYMOND C. GIVENS, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Second Judicial District, Utqiaġvik, Paul A. Roetman, Judge.

Appearances: Rachel B. Lauesen, The Lauesen Law Team, LLC, Anchorage, for Appellant. Russell L. Winner, Winner & Associates, P.C., Anchorage, for Appellee.

Before: Carney, Chief Justice, and Borghesan, Henderson, and Pate, Justices. [Oravec, Justice, not participating.]

PATE, Justice.

## I.    INTRODUCTION

At the heart of this case are two novel questions pertaining to mandatory arbitration of attorney's fee disputes: (1) How much deference should courts give to an arbitration panel's decision to narrow the scope of issues presented for review; and (2)

when an arbitration panel's decision is challenged in superior court under the Revised Uniform Arbitration Act (RUAA), is the court permitted to award attorney's fees that are necessarily incurred in post-arbitration proceedings?

This appeal arises from a fee arbitration panel's decision regarding a dispute where the heirs to an Alaska Native allotment negotiated a contingency fee agreement with an attorney, and the attorney then successfully sued the federal government for mismanaging oil and gas leases on the allotment. Years later, a fee dispute arose and the attorney sued one of the heirs in federal court, arguing that he was owed payments pursuant to his contingency fee agreement with the heirs. After the heir moved to compel fee arbitration, the federal court stayed the lawsuit.

The arbitration proceeding was conducted by an Alaska Bar Association arbitration panel. At the outset, the panel followed the direction of Bar Counsel to limit the scope of its decision to the issue of whether the amount of the attorney's fee was reasonable. The panel declined to decide issues related to the enforceability of the fee agreement, leaving such issues for the federal court to resolve.

The panel ultimately found that the amount of the attorney's fee was reasonable. The heir sought to vacate the panel's decision in state superior court. The superior court declined to do so and also awarded attorney's fees for post-arbitration proceedings. The heir now appeals.

For the reasons explained below, we conclude that the superior court properly confirmed the panel's decision. When a fee arbitration panel decides to narrow the issues presented for review, a court should affirm that decision if it is a reasonably possible interpretation of the panel's authority under the Alaska Bar Rules. Here, we affirm the superior court because the panel's decision was a reasonably possible interpretation of its authority. Further, we hold that awards of attorney's fees under Alaska Civil Rule 82 are permissible in post-arbitration proceedings governed by the RUAA. Accordingly, we affirm the superior court's award of attorney's fees.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Andrew Oenga[1] received a 40-acre Alaska Native allotment from the United States Department of the Interior at Heald Point near Prudhoe Bay in 1971.[2] The allotment included a provision reserving subsurface oil and gas rights to the United States. Because the allotment was held in restricted fee status, Andrew could lease the allotment premises for oil exploration and development only upon the approval of the Bureau of Indian Affairs (BIA).[3] The BIA's governing regulations,[4] as well as the federal government's trust responsibilities toward Native allotment landowners,[5]

---

[1]    Andrew Oenga was Iñupiaq.

[2]    Alaska Native allotments are parcels of land held in restricted fee status, meaning that there were "restrictions on the title conveyed so that lands could not be alienated or taxed until . . . certain federally prescribed conditions were met." DAVID S. CASE & DAVID A. VOLUCK, ALASKA NATIVES AND AMERICAN LAWS 113 (2012); Alaska Native Allotment Act of 1906, ch. 2469, 34 Stat. 197, *amended by* Pub. L. No. 931, ch. 891, § 1(a)–(d), 70 Stat. 954 (1956), *repealed by* Alaska Native Claims Settlement Act, Pub. L. No. 92–203, § 18(a), 85 Stat. 688, 710 (1971). The purpose of the Alaska Native Allotment Act was to provide the means for Alaska Natives to obtain title to lands they occupied. *Foster v. Foster*, 883 P.2d 397, 400 (Alaska 1994).

[3]    *See* 25 C.F.R. §§ 162.2-162.6 (1987); *see also Oenga v. United States*, 83 Fed. Cl. 594, 600 (2008) (requiring BIA approval for lease).

[4]    25 C.F.R. §§ 162.617-162.623 (2008); *see also* 25 C.F.R. § 162.464, 211.54 (2025), *and* CASE & VOLUCK, *supra* note 2, at 139-40 ("The BIA . . . provides counseling and advice regarding sales, leases, or grants of rights-of-way related to allotments, and also investigates all trespass claims.").

[5]    *See Seminole Nation v. United States*, 316 U.S. 286, 296 (1942). *But see United States v. Mitchell*, 445 U.S. 535, 542-43 (1980) (holding allotments only created "limited trust relationship" that did not necessarily impose duty for federal government to manage resources on allotted lands). The federal government's trust responsibility may, however, underpin an enforceable fiduciary duty when other statutes and regulations "clearly give the Federal Government full responsibility to manage Indian resources and land for the benefit of the Indians." *United States v. Mitchell*, 463 U.S. 206, 224 (1983).

impose a duty on the BIA to review such leases and, if approved, to ensure that tenants comply with lease requirements through appropriate inspections and enforcement actions necessary to protect the interests of the Native landowners.[6]

Andrew executed a lease with the Standard Alaska Production Company to build a pipeline across the allotment in 1989. The pipeline would serve to transport oil from Prudhoe Bay. The lease conveyed ten acres of the allotment to the oil company for a term of 25 years in exchange for payments to Andrew via the BIA. Andrew died testate in April 1990, and his interest in the allotment was divided among his heirs per his will.[7]

In 2003 the heirs requested that the BIA provide them with an accounting of the lease payments. The information the BIA provided to the heirs included documentation that the allotment had been used for oil production by several companies in a manner that significantly exceeded the scope of the lease.

That same year, the heirs spoke with attorney Raymond Givens about their situation. Givens and the heirs executed a contingency fee agreement for representation to sue the federal government for breach of trust stemming from the unauthorized use of the allotment by the oil companies.[8] The fee agreement provided that Givens would

---

[6] *Oenga*, 83 Fed. Cl. at 621 ("[I]t is the assumption of control or supervision over tribal money or property by the government that gives rise to the imposition of trust standards, and control or supervision perfectly describes the [Department of the Interior]'s role with respect to commercial leasing of allotted lands." (quoting *Brown v. United States*, 86 F.3d 1554, 1558-59 (Fed. Cir. 1996)) (internal quotation marks omitted)).

[7] Andrew's heirs were his son Wallace Oenga; daughter Georgene Shugluk; grandsons Leroy Oenga, Sr., Michael Delia, Tony Delia, and Joseph Delia; granddaughter Jennie Miller; and great-granddaughter Trinity Delia.

[8] *See Oenga*, 83 Fed. Cl. at 598, 621-22 (denying summary judgment to government on breach of trust claim and finding government had duty to remedy breaches of lease).

receive a portion of any increase in past and future rents on the allotment that he was successful in obtaining for the heirs.

**B. Proceedings**

**1. Settlement of the heirs' claims against the federal government**

In 2006 Givens filed suit on behalf of the heirs against the BIA in the U.S. Court of Federal Claims, alleging breach of trust for failure to collect proper rents on the allotment. Several oil companies intervened as defendants. The parties settled the lawsuit in 2012, with the United States and defendant oil companies agreeing to pay the heirs $13,500,000 for past rents. After the heirs agreed to the settlement but prior to executing it, Givens and the heirs executed an amendment to the fee agreement that resulted in the heirs owing slightly less than under the original agreement. Givens and the heirs subsequently executed a second amendment to the fee agreement that was also more advantageous to the heirs.

**2. Federal lawsuit against Leroy Oenga, Jr.**

Appellant Leroy Oenga, Jr., Andrew Oenga's grandson, inherited his father's interest in the allotment through his father's will, which was federally probated. As part of the probate process, Givens was paid a portion of his fee from the estate in 2013.

In January 2021 Givens sued Leroy Oenga, Jr. (hereinafter Oenga) in federal court for failing to make payments under the contingency fee agreement.[9] The federal court determined that Givens's fee dispute with Oenga "was subject to Alaska Bar Rule 39 and that defendant could pursue arbitration of the fee dispute that is at the heart of this case."[10] Oenga subsequently filed a petition for fee arbitration with the Alaska Bar Association (the Bar).

---

[9]     *See Givens v. Oenga*, No. 3:21-CV-0008-HRH, 2021 WL 4502352, at *1 (D. Alaska Sept. 30, 2021).

[10]     *Id.*

After Oenga filed his petition, the federal court issued a stay of Givens's lawsuit pending resolution of fee arbitration.[11]    The court noted that "the issue of whether the fee agreement is fair and reasonable underlies all of [Givens's] claims."[12] But the court also noted that "once the arbitration panel has made its determination as to whether the fee agreement is fair and reasonable, there are likely to be other issues that this court . . . will need to address," including "complex Indian law issues, or any other issues."[13]

### 3.    Arbitration panel proceedings

The case was heard by an arbitration panel made up of two lawyers and one non-lawyer.  Oenga's arbitration petition generally asserted that the fee agreement was not enforceable because Givens had secured the heirs' consent to the agreement by duress, and because the agreement was illegal under federal Indian law.  Givens asked the arbitration panel to dismiss the petition or, in the alternative, to limit the scope of arbitration to the question of whether the amount of his fee was reasonable.

Bar Counsel, acting as legal advisor to the panel, denied Givens's motion to dismiss.  Regarding Givens's argument in the alternative, Bar Counsel noted that although the arbitration had been designated as "complex,"[14] the issues before the panel would still be "limited to those set forth in Bar Rules 34 through 42."  And citing to its authority under Bar Rule 40 to manage arbitration proceedings, Bar Counsel directed the panel to "limit its consideration to evidence and arguments that help to determine whether the fees are fair and reasonable based upon the eight (8) factors listed in Bar Rule 35(a) and [Alaska Rule of Professional Conduct] 1.5(a)."

---

[11]    *See id.* at *3.

[12]    *Id.*

[13]    *Id.* at *2-3.

[14]    *See* Alaska Bar R. 34(h) (authorizing executive committee of fee dispute resolution program to designate certain disputes as "complex").

Prior to the arbitration hearing, the panel issued an order stating that Oenga would bear the burden of proof because he was "the party attempting to modify the status quo." The panel held a three-day hearing in November 2022. On the second day of the hearing, the panel acknowledged that it had erred by placing the burden of proof on Oenga, and it reversed its earlier order. The panel explained that although Oenga would present his evidence first, Givens ultimately would bear the burden of proof. During the hearing, Oenga testified and called Givens as an adverse witness. Givens called several expert witnesses. Both parties filed post-hearing memoranda.

The arbitration panel issued a decision in February 2023 finding that the amount of Givens's fee was reasonable. The panel declined to consider the other issues raised by Oenga's petition, specifically the broad array of challenges Oenga made to the enforceability of the fee agreement. The panel also decided not to refer Givens to Bar Counsel for any alleged ethical violation.[15]

### 4. Superior court proceedings

Oenga filed a petition in superior court in May 2023 to vacate the arbitration panel's decision. Oenga alleged several grounds for vacating the panel's decision under the RUAA,[16] including that it violated federal law and was procured through fraud and that the panel was not impartial.

Givens asked the superior court to set a briefing schedule for Oenga's petition. Oenga opposed the request, asking the court to instead order Givens to respond to all of the claims in Oenga's petition to vacate. The superior court granted Givens's motion and ordered briefing; in its order, the court reminded the parties that "review of the arbitration panel's decision is a narrow and limited inquiry." Despite this reminder, Oenga proceeded to file a 53-page, overlength opening brief that went beyond the

---

[15]    *See* Alaska Bar R. 40(q)(4) (providing that panel shall consider whether to refer fee matter to Bar Counsel for disciplinary proceedings).

[16]    AS 09.43.300-.595.

limited scope of review and instead focused primarily on challenging the enforceability of the fee agreement.

In May 2024 the superior court denied Oenga's petition to vacate and confirmed the panel's decision. The court concluded that the panel did not exceed its powers when it limited the scope of arbitration to the question of the reasonableness of Givens's fee. And the court held that "because the panel's legal finding of their jurisdiction is unreviewable, [the superior court] affirms the panel's finding on the federal court retaining jurisdiction over complex Indian law and any issues that remain." It also granted Givens's motion for enhanced attorney's fees incurred during post-arbitration proceedings. The court awarded Givens 60% of his fees under Civil Rule 82(b), finding that "many of Oenga's claims lacked legal merit, or were frivolous."

Oenga appeals the superior court's decision to deny his petition to vacate and its decision to award Givens enhanced attorney's fees.

## III.   STANDARD OF REVIEW

"We 'review de novo the superior court's decision to confirm [an] arbitration award.' "[17] "Whether [a] claim is arbitrable is a question of law subject to de novo review."[18]   Under the RUAA, aside from legal conclusions related to arbitrability,[19] "neither the panel's factual findings nor its legal conclusions are reviewable."[20] "Where one party alleges that the arbitrator has exceeded his or her

---

[17]   *McAlpine v. Priddle*, 321 P.3d 345, 348 (Alaska 2014) (quoting *State v. Pub. Safety Emps. Ass'n*, 235 P.3d 197, 201 (Alaska 2010)).

[18]   *SMJ General Constr., Inc. v. Jet Com. Constr., LLC*, 440 P.3d 210, 213 (Alaska 2019) (alteration in original) (quoting *Geotek Alaska, Inc. v. Jacobs Eng'g Grp., Inc.*, 354 P.3d 368, 371 (Alaska 2015)) (internal quotation marks omitted).

[19]   *Butler v. Dunlap*, 931 P.2d 1036, 1039 (Alaska 1997) (quoting *Ahtna, Inc. v. Ebasco Constructors, Inc.*, 894 P.2d 657, 661 (Alaska 1995)).

[20]   *McAlpine*, 321 P.3d at 349 (citing *Haeg v. Cole*, 200 P.3d 317, 320 (Alaska 2009); *Breeze v. Sims*, 778 P.2d 215, 217 (Alaska 1989)).

authority, we will affirm the arbitrator's conclusion as to the scope of his or her powers if 'the arbitrator's conclusion is reasonably possible.' "[21] We apply the gross error standard of review to "issues concerning arbitration management."[22]

We review an award of attorney's fees for abuse of discretion.[23] We will find an abuse of discretion when an award is "arbitrary, capricious, manifestly unreasonable, or the result of an improper motive."[24] "But because an enhanced fee award under Rule 82[] 'calls into question [a party's] litigation conduct and the potential merits of [the party's] underlying . . . motions, we assess de novo the legal and factual viability of [the] motions and review relevant findings of fact for clear error.' "[25]

## IV. DISCUSSION

Oenga asserts that the arbitration panel's decision should be vacated for a variety of reasons, including that the panel exceeded its authority by declining to consider whether the contingency fee agreement with Givens was enforceable. Additionally, Oenga challenges the superior court's award of attorney's fees for post-arbitration proceedings, asserting that fee awards are not permitted under the RUAA and that, in any event, the award in this case was an abuse of discretion.

We explain below that the fee arbitration panel did not exceed its authority because the decision to decline to consider the enforceability of the fee agreement was

---

[21]    *Kinn v. Alaska Sales & Serv., Inc.*, 144 P.3d 474, 482-83 (Alaska 2006) (quoting *Marathon Oil Co. v. ARCO Alaska, Inc.*, 972 P.2d 595, 600 (Alaska 1999)); *see also Breeze*, 778 P.2d at 218.

[22]    *Moore v. Olson*, 351 P.3d 1066, 1071 (Alaska 2015) (citing *Marathon Oil Co.*, 972 P.2d at 602).

[23]    *Lee v. Sheldon*, 427 P.3d 745, 753 (Alaska 2018).

[24]    *Johnson v. Johnson*, 239 P.3d 393, 399 (Alaska 2010) (quoting *McGee v. McGee*, 974 P.2d 983, 987-88 (Alaska 1999)).

[25]    *Herring v. Herring*, 373 P.3d 521, 528 (Alaska 2016) (second and third alterations in the original) (quoting *Johnson*, 239 P.3d at 399).

a reasonably possible interpretation of its authority under the Alaska Bar Rules. We also conclude that the superior court otherwise properly affirmed the panel's decision. Further, we hold that an award of attorney's fees under Civil Rule 82 is permissible in post-arbitration proceedings under the RUAA and that the court's award of fees to Givens was proper.

### A. The Superior Court Did Not Err By Confirming The Fee Arbitration Panel's Decision.

The superior court has original jurisdiction to confirm or vacate arbitration decisions.[26] However, "to preserve the finality of arbitration awards, the superior court's function in confirming or vacating an arbitration award must necessarily be limited."[27] For fee arbitration awards, which are governed by the RUAA, "a court can review the award only on the grounds listed in the statute."[28]

Most of Oenga's arguments for vacating the panel's decision are based on grounds listed in the RUAA.[29] First, he asserts that the panel exceeded its powers in two ways, by limiting its consideration to the single issue of the reasonableness of Givens's fees and by misinterpreting the fee agreement.[30] Second, Oenga asserts that the panel impermissibly refused to consider evidence material to the controversy.[31]

---

[26] *Moore*, 351 P.3d at 1076.

[27] *Id.* at 1077 (quoting *City of Fairbanks Mun. Utils. Sys. v. Lees*, 705 P.2d 457, 460 (Alaska 1985)) (internal quotation marks omitted).

[28] *McAlpine v. Priddle*, 321 P.3d 345, 348 (Alaska 2014); *see also* AS 09.43.500(a). The RUAA generally applies to agreements to arbitrate made on or after January 1, 2005. AS 09.43.300. Under the RUAA, we generally "apply the same deferential review of arbitration decisions that we applied under the [Uniform Arbitration Act]." *Moore*, 351 P.3d at 1071 n.10.

[29] *See* AS 09.43.500(a).

[30] *See* AS 09.43.500(a)(4) (requiring court to vacate award if arbitrator exceeded arbitrator's powers).

[31] *See* AS 09.43.500(a)(3) (requiring, in part, court to vacate award if arbitrator refused to consider evidence material to controversy).

Third, Oenga asserts that the panel's decision was procured by corruption, fraud, or undue means[32] and that the panel was partial, corrupt, and engaged in misconduct.[33]

Oenga also offers two additional justifications for invalidating the panel's decision, but he does not specify grounds listed in the RUAA. He argues that the panel improperly charged him with the burden of proof. And he asserts the superior court "ignored" its "independent responsibility to decide whether [Givens's] contracts were legally enforceable."

We are not persuaded by Oenga's arguments. Thus, we hold that the superior court did not err by confirming the decision by the fee arbitration panel.

1. **The panel did not exceed its powers, either by narrowing its consideration to the reasonableness of the fees or by its interpretation of the fee agreement.**

We explain below that the panel did not exceed its powers under the RUAA by declining to decide issues beyond the reasonableness of Givens's fees. This is because the decision to limit its review to the reasonableness of the fees was a reasonably possible interpretation of the panel's authority under the Bar Rules to determine which issues and questions were necessary to resolve the dispute. We also decline Oenga's invitation to review the panel's interpretation of the fee agreement because our precedent is clear that neither the findings nor legal conclusions of the panel on this issue are reviewable.

a. **The Alaska Bar Rules provided the fee arbitration panel with the authority to narrow the scope of issues subject to arbitration.**

The superior court concluded that "by deferring to the federal court the panel did not exceed their powers." Then the court ruled, apparently in the alternative,

---

[32] *See* AS 09.43.500(a)(1) (requiring court to vacate award if it was procured by corruption, fraud, or other undue means).

[33] *See* AS 09.43.500(a)(2)(A)-(C) (requiring court to vacate award if there was evident partiality, corruption, or misconduct by arbitrator).

that "because the panel's legal finding of [its] jurisdiction is unreviewable," the court would "affirm[] the panel's finding on the federal court retaining jurisdiction over complex Indian law and any issues that remain[ed]."

Oenga argues that the panel exceeded its authority by refusing to resolve his claims regarding the enforceability of the fee agreement, including formation of the agreement and claims that it was void under federal Indian law.[34] In Oenga's view, the panel's decision was in effect a ruling on whether the additional claims were arbitrable, which Oenga claims is a question for the courts. He insists that we should review this question de novo and hold that the panel exceeded its authority by narrowing the issues in violation of the Bar Rules. In his view the panel was required to resolve all disputes contained in his petition.

Givens responds that the panel's decision did not raise an issue of arbitrability because "the question of arbitrability . . . concerns only whether the arbitrator *exceeded* the scope of his or her authority by deciding an issue not submitted for arbitration";[35] here, the panel *limited* the scope of its authority. And regardless, Givens asserts that when, as here, the parties do not have an agreement that addresses arbitrability, courts should defer to the arbitrator's interpretation of what was submitted to arbitration "if it is reasonable under the circumstances."

We agree with Oenga that courts are required to review questions of arbitrability de novo[36] and that the panel's decision here to narrow the scope of its review was the type of arbitrability determination that is subject to de novo review by the courts.

---

[34]    AS 09.43.500(a)(4) (requiring court to vacate award if arbitrator exceeded arbitrator's powers).

[35]    Emphasis in original.

[36]    *See Ahtna, Inc. v. Ebasco Constructors, Inc.*, 894 P.2d 657, 660 (Alaska 1995) (holding that arbitrability is question of law reviewed de novo).

However, as Oenga appears to acknowledge, de novo review may reveal that the parties have agreed to leave determinations of arbitrability to the arbitrator. In other words, there are circumstances where the parties have agreed that the arbitrator has the power to rule on his or her own jurisdiction.[37] We believe this is an analogous circumstance to the matter at hand: Upon de novo review, we conclude that the Alaska Bar Rules clearly provide a fee arbitration panel with the authority to make certain determinations of arbitrability. Specifically, the Bar Rules provide a panel with the authority to determine which issues "are necessary to resolve the dispute."[38] Thus, we conclude that the courts owe some deference to a fee arbitration panel's determination to narrow the scope of issues presented in a petition.

But this does not fully resolve the issue Oenga raises: The simple fact that a fee arbitration panel has the authority to narrow the scope of issues presented to it does not mean that the panel's decision to do so is unreviewable. For the reasons explained below, we now hold that a fee arbitration panel's determination to limit issues presented in a petition is subject to judicial review under the RUAA's "reasonably possible" standard.[39] We also conclude that the panel's decision here to limit the scope of arbitration to the issue of the reasonableness of Givens's fees was a reasonably

---

[37]    *See State v. Pub. Safety Emps. Ass'n*, 798 P.2d 1281, 1285 (Alaska 1990) ("[A]rbitrability is a question for the courts '[u]nless the parties clearly and unmistakably provide otherwise.' " (second alteration in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986))); *see also SMJ General Constr., Inc. v. Jet Com. Constr., LLC*, 440 P.3d 210, 214 nn.12-13 (Alaska 2019).

[38]    Alaska Bar R. 40(q)(3).

[39]    *See Kinn v. Alaska Sales & Serv., Inc.*, 144 P.3d 474, 482-83 (Alaska 2006) ("Where one party alleges that the arbitrator has exceeded his or her authority, we will affirm the arbitrator's conclusion as to the scope of his or her powers if 'the arbitrator's conclusion is reasonably possible.' " (quoting *Marathon Oil Co. v. ARCO Alaska, Inc.*, 972 P.2d 595, 600 (Alaska 1999))).

possible interpretation of its authority under the Alaska Bar Rules. Thus, we ultimately conclude that the panel did not exceed its powers under the RUAA.[40]

To provide context for our holding, we provide a brief discussion of the basic contours of fee arbitration, especially as it compares to contract-based arbitration. And because it is central to Oenga's claim, we also address the concept of "arbitrability" and the circumstances under which arbitrability is a question for the courts or the arbitrator in the first instance.

### i. A brief overview of fee arbitration, contract-based arbitration, and arbitrability under Alaska law provides context for our decision.

The Bar encourages "the amicable resolution of fee disputes between attorneys and their clients,"[41] but in the event such resolution cannot be achieved, Bar Rule 34 establishes a program for mandatory arbitration of disputes upon request by a client.[42] The Bar Rules outline procedures for the appointment of an attorney as Bar Counsel to oversee the fee arbitration program.[43] Bar Counsel has the authority to accept, deny, and process petitions for fee arbitration in accordance with Bar Rule 40.[44] When a petition is accepted, the matter is set for arbitration before an arbitrator or arbitration panel.[45] Once a dispute is arbitrated, among other requirements, the decision of an arbitrator or panel must include "findings of the arbitrator or panel on all issues

---

[40] *See* AS 09.43.500(a)(4) (requiring court to vacate award if arbitrator exceeded arbitrator's powers).

[41] Alaska Bar R. 34(a).

[42] *Breeze v. Sims*, 778 P.2d 215, 216-17 (Alaska 1989); Alaska Bar R. 34(b)-(c).

[43] Alaska Bar R. 36(a).

[44] Alaska Bar R. 36(a)(4)-(6). Bar Counsel also has the responsibility to select an arbitrator or arbitration panel to determine a fee dispute. Alaska Bar R. 36(a)(7).

[45] Alaska Bar R. 40(c), (e).

-14-

**7800**

and questions submitted which are necessary to resolve the dispute."[46] And notably, the "powers and duties of arbitrators" include the responsibility "to interpret and apply these rules insofar as they relate to their powers and duties."[47]

Regardless of whether it is mandatory or consensual, the purpose of arbitration is to provide "expeditious and inexpensive dispute resolution" as an alternative to litigation.[48] In its consensual form, "[a]rbitration is a creature of contract."[49] Contract-based arbitration requires the parties' agreement before they can be bound to arbitration; it necessarily requires a contract and, more specifically, an arbitration clause.[50] In contrast, a client can initiate mandatory fee arbitration without the attorney's consent because a client has a right to arbitration under the Bar Rules.[51] Contract-based arbitration is generally conducted by "a private tribunal" under terms that have been negotiated by the parties,[52] while mandatory fee arbitration is managed by the Bar.[53]

---

[46] Alaska Bar R. 40(q)(3).

[47] Alaska Bar R. 37(i)(6).

[48] *See Lexington Mktg. Grp., Inc. v. Goldbelt Eagle, LLC*, 157 P.3d 470, 476 (Alaska 2007); *see also A. Fred Miller, Att'ys at Law, P.C. v. Purvis*, 921 P.2d 610, 618 (Alaska 1996) (noting that in fee arbitration "[b]oth the attorney and the former client have an interest in fair, expedient and inexpensive adjudication").

[49] *Classified Emps. Ass'n v. Matanuska-Susitna Borough Sch. Dist.*, 204 P.3d 347, 353 (Alaska 2009).

[50] *See, e.g.*, *Lexington Mktg. Grp., Inc.*, 157 P.3d at 477 ("Because arbitration is a matter of contract, parties can only be compelled to arbitrate a matter where they have agreed to do so." (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986))).

[51] Alaska Bar R. 34(b).

[52] *See Ahtna, Inc. v. Ebasco Constructors Inc.*, 894 P.2d 657, 660-61 (Alaska 1995) (quoting *Nizinksi v. Golden Valley Elec. Ass'n*, 509 P.2d 280, 283 (Alaska 1973)).

[53] *See* Alaska Bar R. 37.

Given that the purpose of arbitration is the expedient resolution of disputes, courts are generally deferential to arbitrators' decisions.[54] But with regard to determinations of substantive arbitrability, Alaska's statutes provide that "*[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.*"[55] Questions of substantive arbitrability are appropriately subject to de novo review by the courts in the first instance; " '[b]ecause arbitrators have such broad discretion, it is often problematic for them to decide their own jurisdiction, for if they are wrong, there may be essentially no review' because of the 'extreme deference [that a court will give] to the arbitrator.' "[56]

The United States Supreme Court summarized the distinction between whether the question is one for the court or the arbitrator by stating that "in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability . . . are for the arbitrators to decide."[57] When there is a dispute of substantive arbitrability in contract-based arbitration, the

---

[54] *See Butler v. Dunlap*, 931 P.2d 1036, 1038 (Alaska 1997) ("The usual rule . . . is to give great deference to the arbitrator's findings of both fact and law. As a matter of both policy and law, the court is generally 'loathe to vacate an award made by an arbitrator.' " (quoting *Dep't. of Pub. Safety Emps. Ass'n.*, 732 P.2d 1090, 1093 (Alaska 1987))).

[55] *Geotek Alaska, Inc. v. Jacobs Eng'g Grp., Inc.*, 354 P.3d 368, 372 (Alaska 2015) (alteration in original) (emphasis added) (quoting AS 09.43.330(c)).

[56] *Id*. (alterations in original) (quoting *Classified Emps. Ass'n v. Matanuska-Susitna Borough Sch. Dist.*, 204 P.3d 347, 353 (Alaska 2009)).

[57] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting model RUAA § 6(c) & cmt. 2, 7 U.L.A. 13 (Supp. 2002)) (internal quotation marks omitted).

court thus generally reviews the arbitrator's determination of arbitrability de novo,[58] typically by examining the terms of the arbitration clause.[59]

The law presumes that the parties intend for courts to make determinations of "substantive" arbitrability,[60] such as " 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.' "[61]  In contrast, parties are presumed to intend for arbitrators to make determinations of procedural arbitrability, which may include disputes over time limits, notice, laches, or estoppel.[62]

> ii.     **Upon de novo review, we conclude that the fee arbitration panel had authority under the Bar Rules to make determinations of substantive arbitrability.**

Here, we agree with Oenga that the panel's decision to narrow the scope of review — declining to resolve issues of enforceability of the fee agreement raised in Oenga's petition — is a determination of substantive arbitrability.  It is not merely a determination of procedural arbitrability; instead, the panel's refusal to resolve the dispute over enforceability of Givens's fee agreement is a substantive decision, one that the parties are presumed to intend that a court will decide in the absence of an agreement to the contrary.

---

[58]     *See Lexington Mktg. Grp., Inc. v. Goldbelt Eagle, LLC*, 157 P.3d 470, 476 (Alaska 2007) ("[A] court may properly adjudicate claims that the arbitration clause itself is void . . . .").

[59]     *See id.* at 473 (There is a "presumption that the courts decide whether a dispute is arbitrable *under the terms of the agreement*." (emphasis added)).

[60]     *See Geotek Alaska, Inc.*, 354 P.3d at 372.

[61]     *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014) (quoting *Howsam*, 537 U.S. at 84).

[62]     *Geotek Alaska, Inc.*, 354 P.3d at 373 (citing *BG Grp., PLC*, 572 U.S. at 35).

As discussed above, questions of substantive arbitrability are generally reviewed de novo.[63]   However, in contract-based arbitration, we have also recognized that parties may "contract to have their disputes about arbitrability" resolved by the arbitrator instead of the courts.[64]  Where it is clear the parties have agreed that disputes over matters of substantive arbitrability will be resolved by the arbitrator, the court conducting de novo review should conclude that the arbitrator does "not act outside the scope of his authority" when making determinations of substantive arbitrability.[65]

Here, Oenga argues that the absence of any such contract delegating authority over questions of substantive arbitrability means that the court was required to conduct de novo review of the panel's decision to narrow the scope of issues.  But Alaska's mandatory fee arbitration program operates differently than suggested by Oenga:  While contract-based arbitration is governed by the terms of the agreement between the parties, fee arbitration in Alaska is governed by the Bar Rules.

Contrary to Oenga's argument, a contract is not the exclusive source of an arbitrator's authority to make determinations of substantive arbitrability.   Here, reviewing the Bar Rules de novo reveals that the arbitration panel had the authority to make such determinations.  Specifically, Bar Rule 40(q)(3) provides that the arbitration panel's decision "will include . . . the findings of the arbitrator or panel on all issues and questions submitted which are necessary to resolve the dispute."[66]  Oenga relies on Rule 40(q)(3) in support of his contention that the panel was required to resolve the dispute over the enforceability of the fee agreement.  But Oenga's argument fails to

---

[63]     *See Lexington Mktg. Grp., Inc.*, 157 P.3d at 476.

[64]     *See State v. Pub. Safety Emps. Ass'n*, 798 P.2d 1281, 1285 (Alaska 1990); *see also SMJ General Constr., Inc. v. Jet Com. Constr., LLC*, 440 P.3d 210, 214 nn.12-13 (Alaska 2019).

[65]     *Pub. Safety Emps. Ass'n*, 798 P.2d at 1285.

[66]     Alaska Bar R. 40(q)(3).

address Bar Rule 37(i)(6), which provides the arbitration panel with the power to "interpret and apply these rules insofar as they relate to their powers and duties."[67] Reading these two provisions together, Rule 37(i)(6) clearly provides an arbitration panel with the power to interpret and apply the rules governing the Bar's fee arbitration program, including decisions under Rule 40(q)(3) as to which "issues and questions" are "necessary to resolve the dispute" on the "issues and questions submitted."

Oenga is correct that "[t]here is a rebuttable presumption in favor of arbitration, and courts should order arbitration unless it can be said with positive assurance that the arbitration [clause] is not susceptible [to] an interpretation that covers the asserted dispute."[68] However, as explained above, arbitration of Oenga's petition is mandatory; the Bar Rules control in the absence of an arbitration clause agreed upon by the parties. And the Bar Rules specifically provide the panel with the authority to narrow the scope of the issues subject to arbitration to only those that the panel deems necessary to resolve the dispute.[69] Here, the panel's refusal to resolve the dispute over the enforceability of Givens's fee agreement was an exercise of its authority under the Bar Rules.

Oenga's remaining argument is not persuasive. He suggests that the panel was required to resolve the dispute over enforceability because it was required to do so under order of the federal court. But the federal court's order went no further than explaining its reasons for granting the stay and its expectation that the "[a]rbitration proceedings before the Alaska Bar Association will flow from [Oenga's] petition for

---

[67] Alaska Bar R. 37(i)(6).

[68] *Ahtna, Inc. v. Ebasco Constructors, Inc.*, 894 P.2d 657, 662 n.7 (Alaska 1995) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute." (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960))).

[69] *See* Alaska Bar R. 40(q)(3); Alaska Bar R 37(i)(6).

-19-

**7800**

arbitration." The federal court ruled, "Once the arbitration proceedings are completed, the court can take up any complex Indian law issues, or any other issues, that remain to be resolved."

### iii. A fee arbitration panel's decision to narrow the scope of issues subject to arbitration is reviewed under the "reasonably possible" standard.

Having determined that the Bar Rules provide an arbitration panel with the authority to narrow the scope of issues subject to arbitration, we next must determine the appropriate standard of review for the panel's determination that the question of enforceability was not necessary to resolve Oenga's petition for fee arbitration. For the reasons explained below, we hold that the "reasonably possible" standard of review is appropriate when evaluating the panel's decision under Rule 40(q)(3) to narrow the scope of issues subject to arbitration.

There is good reason not to immunize a panel's decision under Rule 40(q)(3) from review. Fee arbitration in Alaska is mandatory, and our precedent tells us that there should be some form of judicial review in mandatory arbitration.[70] In mandatory arbitration, parties have not "agreed voluntarily" that the arbitrators' decisions will be shielded from review by the courts.[71] And even in the context of contract-based arbitration, where questions of arbitrability have been "voluntarily submitted to [the] arbitrators," we have employed a "gross error" standard to review an arbitrator's answers to those questions.[72]

But, as noted above, there are also compelling reasons not to subject the panel's decision to a more sweeping review. First, the Bar Rules clearly place that

---

[70] *See Butler v. Dunlap*, 931 P.2d 1036, 1039 (Alaska 1997) (indicating heightened standard of review for compulsory arbitration).

[71] *State v. Pub. Safety Emps. Ass'n*, 798 P.2d 1281, 1287 (Alaska 1990).

[72] *Id.* at 1285 & n.10.

decision-making authority with the panel.[73]  Second, the courts should show some deference to the expertise of the panel and Bar Counsel.[74]  Third, unlike situations where there are allegations that the arbitrator has decided issues that go beyond those agreed upon by the parties, a panel's decision to *narrow* the scope of issues subject to arbitration does not necessarily insulate its decision from judicial review.[75]

In contract-based arbitrations, where determinations of arbitrability are not clearly committed to the discretion of the arbitrator, we have held that an arbitrator's decisions on matters of procedural arbitrability are subject to review under the reasonably possible standard.[76]  This standard credits Alaska's "strong public policy in favor of arbitration" while allowing for meaningful judicial review of the arbitrator's interpretation of ambiguity.[77]  And, although the dispute here concerns a matter of substantive arbitrability as opposed to procedural arbitrability, we conclude that the courts owe a similar amount of deference to the panel because the Bar Rules clearly provide the panel with the authority to narrow the scope of issues subject to arbitration. Balancing the competing considerations involved, we hold that the fee arbitration panel's decision to narrow the scope of issues for arbitration under Rule 40(q)(3) should

---

[73]     *See* Alaska Bar R. 37(i)(6); Alaska Bar R. 40(q)(3).

[74]     *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) (noting arbitrators were "comparatively more expert about the meaning of their own rule, [and were] comparatively better able to interpret and . . . apply it").

[75]     *See Geotek Alaska, Inc. v. Jacobs Eng'g Grp., Inc.*, 354 P.3d 368, 372 (Alaska 2015) ("[I]t is often problematic for [arbitrators] to decide their own jurisdiction, for if they are wrong, there may be essentially no review . . . ." (quoting *Classified Emps. Ass'n v. Matanuska-Susitna Borough Sch. Dist.*, 204 P.3d 347, 353 (Alaska 2009)).

[76]     *Ahtna, Inc. v. Ebasco Constructors, Inc.*, 894 P.2d 657, 662 (Alaska 1995) (citing *University of Alaska v. Modern Constr., Inc.*, 522 P.2d 1132, 1137 (Alaska 1974)).

[77]     *Id.*

be subject to review under the RUAA's "reasonably possible" standard. Under the "reasonably possible" standard, the court should affirm the panel's decision if it is a "reasonably possible" interpretation of its authority under the Bar Rules "that can seriously be made in the context" of the dispute.[78]

           **iv.**      **The panel did not exceed its powers because its decision was a reasonably possible interpretation of its authority under the Bar Rules.**

We conclude that the panel's decision to narrow the scope of issues to only the question of the reasonableness of Givens's fee was a reasonably possible interpretation of its authority under the Alaska Bar Rules. Thus, we reject Oenga's argument that the panel exceeded its powers under the RUAA.[79]

We arrive at this conclusion for three reasons. First, the panel was not particularly well equipped to handle the complicated issues raised by Oenga's challenge to the enforceability of the fee agreement. Second, the panel's decision to limit the scope of its review did little to prejudice Oenga because the federal court expressly retained jurisdiction to handle issues not decided by the arbitration panel. And third, it was reasonable for the panel to defer to the Bar Counsel's ruling as to which issues were necessary to resolve the dispute.

First, the panel was not well equipped to handle the complexity of issues raised in Oenga's petition. The Bar Rules provide that an arbitration may be considered complex if it contains complex legal or factual issues; the hearing exceeds eight hours; or the amount in dispute exceeds $50,000.[80] Oenga's petition for arbitration was formally designated as complex, and it is not difficult to see why. Oenga's challenges

---

[78]    *See Johnson v. Aleut Corp.*, 307 P.3d 942, 948 (Alaska 2013) (quoting *Ahtna Inc.*, 894 P.2d at 662).

[79]    AS 09.43.500(a)(4) (requiring court to vacate award if arbitrator exceeded arbitrator's powers).

[80]    Alaska Bar R. 34(h).

to enforceability raised complicated issues of federal Indian law; the arbitration hearing lasted for three days; and millions of dollars were at stake. Thus, it was reasonable for the panel to decline to resolve the dispute over enforceability of the fee agreement, especially given that one of the panel members was not an attorney.

Second, Oenga was not prejudiced by the panel's decision to limit its scope of review. As noted above, this fee arbitration related to an Alaska Native allotment that was held in restricted fee status by the federal government. One of the arguments raised by Oenga was that the fee agreement was illegal under federal Indian law. Although the federal court did not preclude the panel from deciding this complex issue, it retained jurisdiction to decide any remaining issues, which included Oenga's claims that the fee agreement was unenforceable.[81] Accordingly, it was reasonable for the panel to defer resolution of the enforceability of the fee agreement to the federal court. And, importantly, there was little risk of prejudice to Oenga because the federal court retained jurisdiction and the panel's decision was not insulated from judicial review.

Further, because Bar Counsel has the authority to accept and deny petitions and otherwise guide the panel and manage the fee arbitration program,[82] it was reasonable for the panel to defer to Bar Counsel's pre-hearing ruling narrowing the scope of arbitration. Although the panel arguably had the authority to decide whether Givens's fee agreement was enforceable, the panel's decision to defer to the federal court on this issue was "a reasonably possible" interpretation of its authority under the Bar Rules "that can seriously be made in the context" of the dispute.[83]

---

[81] *See Givens v. Oenga*, No. 3:21-CV-0008-HRH, 2021 WL 4502352, at *2-3 (D. Alaska Sept. 30, 2021).

[82] *See* Alaska Bar R. 36(a)(4)-(5).

[83] *See Johnson*, 307 P.3d at 948.

In sum, the panel did not exceed its powers under the RUAA because its decision to narrow the scope of arbitration to the issue of the reasonableness of Givens's fee was a reasonably possible interpretation of its authority under the Bar Rules.

### b. We decline to review the panel's interpretation of the fee agreement.

Oenga argues that the panel exceeded its authority under the RUAA by finding that Givens made multiple reductions to his fee over the course of the representation.[84] Oenga argues that the panel's finding exceeded its authority under federal law because it is "in manifest disregard of the law" and "completely irrational." According to Oenga, the panel's finding that Givens had reduced his fee multiple times to the advantage of the heirs was "expressly contrary to the . . . agreement" because "[n]othing in the Original Contingency Fee Contract gave Givens the right to a contingency fee for lease increases" or "to bind the heirs of a client, or to charge his contingency fee before deducting costs."

We decline to consider the panel's interpretation of the agreement. "[T]here are no statutory grounds for review of an arbitrator's determination as to the meaning of contract provisions which do not pertain to the issue of arbitrability."[85] And "neither the panel's factual findings nor its legal conclusions are reviewable."[86] We would reach the same conclusion under the federal authorities relied upon by Oenga.[87]

---

[84]　AS 09.43.500(a)(4) (requiring court to vacate award if arbitrator exceeded arbitrator's powers).

[85]　*See, e.g.*, *Ahtna, Inc. v. Ebasco Constructors, Inc.*, 894 P.2d 657, 661 (Alaska 1995) (quoting *Alaska State Hous. Auth. v. Riley Pleas, Inc.*, 586 P.2d 1244, 1247 (Alaska 1978)).

[86]　*McAlpine v. Priddle*, 321 P.3d 345, 349 (Alaska 2014) (declining to consider fee arbitration panel's findings related to written fee agreement).

[87]　*See Kyocera Corp. v. Prudential-Bache Trade Servs. Inc.*, 341 F.3d 987, 1003 (9th Cir. 2003) (noting that "[t]he risk that arbitrators may construe the governing

2.      **The panel did not commit gross error by refusing to consider evidence that Oenga sought to introduce in support of his additional claims.**

Oenga argues that the arbitration panel improperly refused to consider evidence material to the controversy when it declined to resolve issues related to the enforceability of the fee agreement.[88]  Specifically, Oenga argues that the panel erred by not making a meaningful attempt to interpret the fee agreement in accordance with the reasonable expectation of the parties.  We disagree.  The evidence Oenga sought to introduce was not material because it related to the enforceability of the agreement.

As explained above, the panel properly limited the scope of arbitration to the controversy over whether Givens's fee was reasonable.  Oenga's challenge to the enforceability of the fee agreement is a separate matter from the reasonableness of Givens's fee, and the panel acted within its discretion to refuse to consider evidence that was not material to the controversy over whether Givens's fee was reasonable.[89]  Further, as we recognized in *City of Fairbanks Municipal Utilities System v. Lees*, in order to overturn an arbitration award, an arbitrator's refusal to consider evidence must

---

law imperfectly . . . , or may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes").

[88]     The grounds for vacating under AS 09.43.500(a)(3), which include "refus[ing] to consider evidence material to the controversy," generally deal with arbitration management decisions that "prejudice substantially the rights of a party to the arbitration proceeding."  AS 09.43.500(a)(3); *see also Moore v. Olson*, 351 P.3d 1066, 1071 n.10 (Alaska 2015) (characterizing grounds for vacating under AS 09.43.500 as arbitration management decisions).

[89]     We apply the "gross error" standard of review to arbitration management decisions.  *Moore*, 351 P.3d at 1071 n.10.  Gross error means "only those mistakes which are both obvious and significant."  *Butler v. Dunlap*, 931 P.2d 1036, 1039 (Alaska 1997) (quoting *City of Fairbanks v. Rice*, 628 P.2d 565, 567 (Alaska 1981)).

Case 3:23-cv-00121-SLG     Document 134-1     Filed 01/29/26     Page 25 of 44     Exhibit 1
Page 25 of 44

prejudice a party's right to a fair hearing.[90] Here, the panel's limited review and ruling did not prejudice Oenga's right to a fair hearing; it did not foreclose Oenga's ability to defend against Givens's suit on additional grounds in federal court. Oenga's additional claims were clearly preserved for that forum, and the panel understood that the federal court had expressly retained jurisdiction to decide those issues, if necessary.

Thus, the panel's decision to refuse to consider evidence Oenga offered in support of his additional claims was not gross error.

### 3. Oenga waived his arguments that the panel's decision was procured through fraud and that there was evident partiality, corruption, or misconduct by the panel.

Oenga alleges fraud, evident partiality, corruption, and misconduct by the panel.[91] The superior court found that Oenga waived these arguments because he failed to adequately brief them despite raising them in his petition to vacate. Oenga argues that this was error and, alternatively, that his arguments merit review under the plain error doctrine.

We conclude that the superior court did not err by finding that Oenga waived these arguments. Although Oenga referred to the arbitration proceeding as a "kangaroo court" and "a sham legal proceeding" and described it as "fundamentally unfair," these allegations of fraud and corruption were non-specific and conclusory in nature. Instead, his specific arguments before the superior court focused on the panel's adverse rulings against him, including the preliminary decision to place the burden of proof on Oenga and the refusal to decide the dispute over the enforceability of the fee

---

[90] *See* 705 P.2d 457, 461-62 (Alaska 1985) ("[W]e must determine whether the arbitrator's exclusion of evidence deprived Lees of his right to a fair hearing."); *see also* AS 09.43.500(a)(3).

[91] *See* AS 09.43.500(a)(1) (requiring court to vacate award if it was procured through corruption, fraud, or other undue means); AS 09.43.500(a)(2)(A)-(C) (requiring court to vacate award if there was evident partiality, corruption, or misconduct by arbitrator).

agreement.[92]  Oenga did not expressly address AS 09.43.500(a)(1) or (2), nor did he cite to any authority that addressed evident partiality, corruption, or misconduct by an arbitrator.

Oenga correctly notes that we may review arguments raised for the first time on appeal if they are "1) not dependent on any new or controverted facts; 2) closely related to the appellant's trial court arguments; and 3) could have been gleaned from the pleadings, or constitute[] 'plain error.' "[93]  After applying this framework, we decline to reach Oenga's arguments.  We are unable to glean from the pleadings in superior court that Oenga made any claims of fraud, bias, or corruption.  Additionally, these arguments do not merit review under the plain error doctrine.  "A plain error involves an obvious mistake that is obviously prejudicial."[94]  First, it is not "obvious" that the panel relied on any fraudulent statements that would have corrupted the proceedings.  Furthermore, the panel's decision to limit the scope of its review and its initial mistake about which party bore the burden of proof do not demonstrate signs of "obvious" corruption, fraud, or partiality by the panel.  And there is no obvious prejudice:  The mere fact that the panel found in favor of Givens is not enough to infer bias on its part.[95]  Therefore, Oenga's arguments do not merit review under the plain error doctrine.

---

[92]     These issues are discussed in more detail in Sections IV.A.4-.5 below.

[93]     *State v. Nw. Constr., Inc.*, 741 P.2d 235, 239 (Alaska 1987) (citation omitted) (first citing *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985); and then citing *Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981)).

[94]     *In re Hospitalization of Carter K.*, 557 P.3d 755, 761 (Alaska 2024) (internal quotation marks omitted).

[95]     *Cf. Downs v. Downs*, 440 P.3d 294, 300 (Alaska 2019) ("[B]ias cannot 'be inferred merely from adverse rulings.' " (quoting *Kinnan v. Sitka Counseling*, 349 P.3d 153, 160 (Alaska 2015))).

### 4. Oenga waived his argument related to the burden of proof.

Oenga argues the superior court erred by not finding fault with the panel's preliminary decision to shift the burden of proof to Oenga. The panel did make repeated statements at the beginning of arbitration that Oenga would bear the burden of proof. However, the panel corrected course on the second day of the proceeding when it clarified that it was placing the burden on Givens. Oenga points to several instances during the arbitration that he claims show that the panel, though putatively placing the burden on Givens, actually placed the burden on Oenga.

But Oenga cites no statutory ground under the RUAA in support of this argument. Instead, Oenga cites *In re Estate of Johnson*,[96] which involved a dispute over attorney's fees incurred during a probate proceeding.[97] Crucially, that case did not involve arbitration; in *Johnson* we reviewed the superior court's ruling on the reasonableness of the fee for an abuse of discretion.[98] For attorney's fee awards in arbitration, which are governed by the RUAA, "a court can review the award only on the grounds listed in the statute."[99] Because Oenga has failed to specify any applicable statutory ground for vacating the award, he has waived this argument.[100]

Even if we were to consider the merits of this argument, we would still reject it. Under the RUAA, the court must vacate a decision made in an arbitration proceeding if "misconduct by an arbitrator prejudic[ed] the rights of a party to the arbitration proceeding."[101] Oenga's allegation of misconduct is based on his claim that,

---

[96] 119 P.3d 425 (Alaska 2005).

[97] *See id.* at 426.

[98] *Id.* at 430.

[99] *McAlpine v. Priddle*, 321 P.3d 345, 348 (Alaska 2014); *see also* AS 09.43.500(a).

[100] *See Windel v. Carnahan*, 379 P.3d 971, 980 (Alaska 2016) (noting that inadequately briefed arguments are waived).

[101] AS 09.43.500(a)(2)(C).

despite clearly ruling otherwise on the second day of the hearing, the panel placed the burden of proof on him.

However, the statements from the panel that Oenga cites as evidence in support of this allegation do not demonstrate any prejudice. For example, contrary to Oenga's assertion, he was not required to "prove" lease values or customary charges. Instead, Givens proved these matters, and Oenga failed to refute Givens's evidence. Further, even if we were to consider *Johnson* as an analogous case, it would not help Oenga's claim. In *Johnson*, we noted that requiring a party to present evidence first was an indication that the burden of proof was placed on that party.[102] However, we also stated that "order of proof [is] only one factor indicating that the burden was not allocated appropriately."[103] Because the order of proof is not determinative here, and Oenga's other arguments that he was prejudiced by the preliminary decision to shift the burden are unpersuasive, we conclude that there was no misconduct by the arbitrators that prejudiced Oenga. Thus, we decline to vacate the panel's decision on this ground.

### 5. The superior court was not independently obligated to determine whether the fee agreement was enforceable.

Oenga argues the superior court had an independent obligation to determine the legality of the underlying fee agreement in order to avoid enforcing an illegal contract. As part and parcel of this argument, Oenga continues to insist that the fee agreement was unenforceable under federal law. Oenga maintains that "[t]he legality of [Givens's] contracts was briefed by the parties before the Superior Court extensively and should have been decided."

Givens responds that the superior court was not required to decide an issue that the panel appropriately declined to address. Givens also asserts that the superior court's order did not enforce the fee agreement — the court simply confirmed the

---

[102]    119 P.3d 425, 432 (Alaska 2005).

[103]    *See id.* at 432 n.23.

panel's decision that the amount of the fee was reasonable. Alternatively, Givens argues that the fee agreement did not violate federal law.

We agree with Givens that the superior court did not have an independent obligation to decide whether the fee agreement was enforceable. It is true that our precedent informs us that "courts have 'no power, either in law, or equity, to enforce' " an illegal contingency fee agreement.[104] Here, however, the panel did not decide whether the agreement was enforceable. Rather, the panel decided one discrete issue relating to the agreement — whether the amount of the fee was reasonable. The superior court's confirmation that Givens's fee was reasonable does not foreclose Oenga from challenging the enforceability of the fee agreement in federal court. Accordingly, the superior court properly declined to consider ancillary issues related to enforceability of the fee agreement.

### B. The Superior Court Did Not Abuse Its Discretion By Awarding Enhanced Attorney's Fees To Givens.

After the superior court confirmed the arbitration panel's decision, Givens moved for attorney's fees incurred during post-arbitration litigation. Givens argued that Oenga's conduct was vexatious and in bad faith and that the court should award him full attorney's fees. After balancing factors under Alaska Civil Rule 82(b), the court awarded enhanced attorney's fees of 60% to Givens.

Under Civil Rule 82(a), the prevailing party in a civil case is entitled to an award of attorney's fees "[e]xcept as otherwise provided by law or agreed to by the parties." Although Rule 82 provides a schedule for calculating fee awards, the superior court may vary the award if it finds, based on several listed factors, that "a variation is warranted."[105]

---

[104] *See Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 888-89 (Alaska 2013) (quoting *Pavone v. Pavone*, 860 P.2d 1228, 1231 (Alaska 1993)).

[105] Alaska R. Civ. P. 82(b)(3).

Oenga argues that the RUAA does not authorize a court to award attorney's fees and costs in an action to confirm or vacate an arbitration decision and that awarding Givens fees would "undermine the purpose" of the Bar fee arbitration program. Further, Oenga asserts that the superior court abused its discretion because his conduct did not warrant an enhanced fee award under Civil Rule 82(b). Finally, he argues that the number of hours that Givens's attorney billed was unreasonable.

We have not yet addressed whether an award of attorney's fees under Civil Rule 82 is permissible in a post-arbitration proceeding under the RUAA. We now conclude that the superior court has that authority. We also determine that the superior court did not abuse its discretion when it awarded Givens enhanced fees under Rule 82(b).

### 1. Fee awards under Civil Rule 82 are permissible in a post-arbitration proceeding governed by the RUAA.

Oenga asserts that the RUAA, as the law that governs arbitration in Alaska,[106] "does not authorize" attorney's fees in an action to vacate or confirm an arbitration decision. He points out that the Alaska Uniform Arbitration Act (UAA), which preceded the RUAA, expressly permitted the award of "[c]osts of the application and of the proceedings subsequent to the application" for vacating or confirmation,[107] while the RUAA only provides that the judgment "may be recorded, docketed, and enforced as any other judgment in a civil action."[108] Oenga also argues that the legislative history of the RUAA supports his reading. Specifically, he notes that when the legislature enacted the RUAA, it omitted the provision of the model RUAA authorizing attorney's fees and costs in subsequent proceedings.[109]

---

[106] *See* AS 09.43.300-.595.

[107] AS 09.43.140.

[108] AS 09.43.520.

[109] Ch. 170, § 2, SLA 2004.

The superior court rejected this argument after searching legislative minutes for a reference to the omitted language. The court concluded that legislators intended to keep the RUAA "essentially the same"[110] as the UAA and omitted the express attorney's fees language "because it was redundant due to [Civil] Rule 82." Accordingly, the court decided it had the authority to award Givens enhanced attorney's fees under Rule 82(b) for the costs of representation in post-arbitration proceedings.

In defense of the fee award, Givens points to our decision in *Moore v. Olson*, in which we noted that "[t]he RUAA includes few substantive changes from the original UAA provisions regarding confirmation and vacatur" and that "the case law decided under the UAA is equally applicable to the RUAA; or, at the very least, provides highly persuasive guidance."[111]

Both parties focus their arguments on the contours of the RUAA, but the RUAA must be considered in relation to the broad reach of Civil Rule 82. Because Rule 82 is a rule of general applicability, and because the RUAA does not conflict with it, we hold that Rule 82 applies to post-arbitration proceedings governed by the RUAA. And contrary to Oenga's concerns, allowing attorney's fee awards in post-arbitration proceedings is consistent with public policy because it furthers the important goals of efficiency and finality in arbitration.

### a. Civil Rule 82 is a rule of general applicability.

"*Except as otherwise provided by law* or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under [Civil

---

[110]     Minutes, H. Jud. Comm. Hearing on House Bill (H.B.) 83, 23d Leg., 1st Sess., at 12 (Mar. 10, 2003) (comments of Rep. Pavetti, Chair).

[111]     351 P.3d 1066, 1071 n.10 (Alaska 2015).

Rule 82].”[112]  Pursuant to this broad language, Rule 82 has been held to be a rule of general applicability with only a few narrow exceptions.[113]

We conclude that in post-arbitration proceedings, Civil Rule 82 is applicable to the extent that it has not been expressly excluded, either by the arbitration agreement itself, by our precedent, or by the legislature.  This conclusion stems from the fact that post-arbitration proceedings in Alaska are civil in nature.   We have recognized that the superior court “exercises original jurisdiction over applications to confirm or vacate arbitration awards,” which is rooted in its jurisdiction over civil actions.[114]   And the Civil Rules, which were promulgated pursuant to this court’s constitutional authority,[115] govern “all actions or proceedings of a civil nature — legal, equitable, or otherwise” in superior court.[116]   Applying the Civil Rules to post-arbitration proceedings is consistent with the text of the RUAA, which provides that “an application for judicial relief under [the RUAA] shall be made and heard in the manner provided by the court rules of this state.”[117]

Additionally, Civil Rule 82’s primary purpose is to “partially compensate a prevailing party for attorney’s fees incurred in enforcing or defending the party’s rights, *regardless of the nature of those rights*.”[118]  Without Rule 82, “the rights of the

---

[112]     Alaska R. Civ. P. 82(a) (emphasis added).

[113]     *See, e.g.*, *City of Kenai v. Cook Inlet Nat. Gas Storage Alaska, LLC*, 373 P.3d 473, 484 (Alaska 2016) (“We have recognized Rule 72 as ‘creat[ing] a narrow exception’ to the general applicability of Rule 82 . . . .” (alteration in original) (quoting *R & Y, Inc. v. Mun. of Anchorage*, 34 P.3d 289, 301 (Alaska 2001))).

[114]     *Moore*, 351 P.3d at 1076 & n.27.

[115]     Alaska R. Civ. P. 93.

[116]     Alaska R. Civ. P. 1.

[117]     AS 09.43.320.

[118]     *State v. Native Vill. of Nunapitchuk*, 156 P.3d 389, 398 (Alaska 2007) (emphasis added).

prevailing party would be less completely vindicated because of the uncompensated expense of litigation."[119]   Because of this, Rule 82 "may be viewed as intrinsic to an effective system for the administration of justice."[120]   Taking that into consideration, application of Rule 82 to post-arbitration proceedings comports with the civil nature of the proceedings and is consistent with the text of the RUAA.

> ### b.    Rule 82 is applicable because it works in harmony with the RUAA.

As Oenga correctly notes, the model RUAA expressly includes a provision that allows attorney's fee awards in post-arbitration proceedings, but the legislature omitted this provision when it enacted Alaska's RUAA.[121]   Oenga argues that this omission from the model RUAA means that Alaska's RUAA does not authorize a court to award attorney's fees in post-arbitration proceedings.

Givens argues that our decision in *Kinn v. Alaska Sales & Service, Inc.*[122] supports the superior court's conclusion that it could make an award of attorney's fees under Civil Rule 82.   In *Kinn*, we held that the UAA "gives the superior court broad discretion to award, or decline to award, fees in [post-arbitration] confirmation proceedings," so the superior court had discretion to grant attorney's fees in accordance with Rule 82.[123]   Givens contends that the absence of express language addressing fees in the RUAA actually *reduces* the superior court's discretion "to either follow or deviate from the provisions of Rule 82."   In other words, because the RUAA was meant to

---

[119]    *Id.*

[120]    *Id.*

[121]    *Compare* Unif. Arb. Act § 25(c) (Unif. L. Comm'n 2000), *with* ch. 170, § 2, SLA 2004.

[122]    144 P.3d 474 (Alaska 2006).

[123]    *Id.* at 490-91; *see also* AS 09.43.140.

update and address deficiencies in the UAA,[124] absence of that language indicates a legislative intent to deny courts the broad discretion over fees contained in the UAA. Without that language, Givens argues that "the superior courts are required to follow Rule 82" in proceedings to confirm or vacate arbitration awards.

Here, the legislature's omission of a fee provision in the RUAA was not sufficient to divest the superior court of its authority under Civil Rule 82 to award attorney's fees to a prevailing party.[125] We have recognized that Rule 82 is a procedural rule "promulgated under this court's constitutional rule-making authority,"[126] but the authority reserved to the courts in our procedural rules may be limited or altered by the legislature, especially where the rule may be "closely related to . . . matters of public policy properly within the sphere of elected representatives."[127] The legislature may enact fee-shifting provisions in substantive statutes, and we have previously recognized that those substantive statutory provisions, "[i]n cases where they apply, . . . govern the

---

[124]    Carl H. Johnson & Pete D.A. Petersen, *Is the Revised Uniform Arbitration Act A Good Fit for Alaska?*, 19 Alaska L. Rev. 339, 344-49 (2002).

[125]    "We construe statutes according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose." *Alaska Airlines, Inc. v. Darrow*, 403 P.3d 1116, 1121 (Alaska 2017) (citing *Louie v. BP Expl. (Alaska), Inc.*, 327 P.3d 204, 206 (Alaska 2014)).

    "We give unambiguous statutory language its ordinary and common meaning," though we may also look to legislative history as an interpretive guide. *Cora G. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 461 P.3d 1265, 1277 (Alaska 2020) (quoting *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 74 (Alaska 2013)). "The plainer the meaning of the statute, the more persuasive any legislative history to the contrary must be." *City of Dillingham v. CH2M Hill Nw., Inc.*, 873 P.2d 1271, 1276 (Alaska 1994).

[126]    *State v. Native Vill. of Nunapitchuk*, 156 P.3d 389, 400-02 (Alaska 2007) (citing *Ware v. City of Anchorage*, 439 P.2d 793, 794 (Alaska 1968)).

[127]    *Nolan v. Sea Airmotive, Inc.*, 627 P.2d 1035, 1042-43 (Alaska 1981).

award of fees rather than Rule 82."[128]  But for a statute to modify one of our procedural rules, including Rule 82, the statute and the rule must actually conflict.[129]

In the present case, the RUAA and Rule 82 do not conflict.  Unlike substantive statutes that include fee award provisions that vary from — and thus conflict with — Rule 82,[130] or statutes that expressly preclude the application of Rule 82,[131] AS 09.43.520 is simply silent on the availability of attorney's fee awards for post-arbitration proceedings.  The RUAA thus does not conflict with or "otherwise provide[]"[132] that Rule 82 should not apply to post-arbitration proceedings, and in the absence of this language, Rule 82 is applicable to the proceedings.

### c. Allowing Civil Rule 82 fee awards in post-arbitration proceedings is consistent with public policy.

Oenga asserts that permitting Civil Rule 82 fee awards in proceedings to confirm or vacate an attorney's fee arbitration award would undermine the purpose of the fee arbitration program.  Oenga urges us to treat the proceedings before the superior court as an administrative appeal and apply Appellate Rule 508(e)(4)(B), which

---

[128]  *Native Vill. of Nunapitchuk*, 156 P.3d at 403.  Rule 82 itself recognizes that substantive statutory provisions governing attorney's fees are controlling, since Rule 82 is only applicable "[e]xcept as otherwise provided by law."  Alaska R. Civ. P. 82(a).

[129]  *See Nolan*, 627 P.2d at 1040-42; *see also* Alaska R. Civ. P. 93.

[130]  *See, e.g.*, *Bobich v. Stewart*, 843 P.2d 1232, 1237 (Alaska 1992) (holding that one-way fee shifting provision in Alaska Wage and Hour Act "require[d] an award of reasonable attorney's fees to the plaintiff"); *Vazquez v. Campbell*, 146 P.3d 1, 2 (Alaska 2006) (holding that provision in Uniform Child Custody Jurisdiction and Enforcement Act requiring actual reasonable attorney's fees supplanted Rule 82's reasonably partial fees).

[131]  *See, e.g.*, *Vote Yes for Alaska's Fair Share v. Res. Dev. Council for Alaska, Inc.*, 539 P.3d 482, 493 (Alaska 2023) (holding that mandatory language in AS 09.60.010(c)(2) precluded Rule 82 fee award against qualified constitutional claimant).

[132]  Alaska R. Civ. P. 82(a).

provides for an exception to the mandatory fee award in an administrative appeal when it "would be so onerous" as to "deter similarly situated litigants from the voluntary use of the courts."[133]    Oenga argues that the public policies behind the fee arbitration program, including protecting vulnerable clients and providing a more affordable alternative to litigation, weigh against awarding attorney's fees to Givens.

Oenga also notes our recognition that limiting judicial review of arbitration decisions instills "public confidence in the lawyer/client relationship" and protects clients of limited income from the costs of hiring an attorney for a post-arbitration proceeding.  Finally, Oenga argues that Professional Conduct Rule 1.5(f), which provides that attorneys "should seek to avoid controversies over fees with clients and should attempt to resolve [fee disagreements] amicably," weighs against permitting Rule 82 awards in cases like this.

In response, Givens argues that applying Rule 82 to post-arbitration court proceedings actually furthers the fee arbitration program's purpose of providing quick and inexpensive dispute resolution by "discourag[ing] protracted litigation following an arbitration decision."   Accordingly, Givens urges us to permit Rule 82 awards in post-fee arbitration proceedings just as we have in other contexts.   Finally, Givens argues that Bar Rule 40(q), cited by Oenga, applies only to the arbitration itself — and not to post-arbitration proceedings.[134]

---

[133]    To support this proposition, Oenga points out that the superior court, in a December 2023 order, stated that a post-arbitration proceeding is "essentially" an administrative appeal and adopted Appellate Rules 210, 212, and 605(a).

[134]    Givens also rejects Oenga's reliance on Professional Conduct Rule 1.5(f), noting that the arbitration panel declined to refer Givens to Bar Counsel for disciplinary proceedings.

Although we have described the superior court's role in post-fee arbitration proceedings as that of an intermediate appellate body,[135] we have not held that post-arbitration proceedings constitute administrative appeals controlled by Appellate Rule 508. In fact, we have expressly distinguished between the superior court's appellate jurisdiction over administrative appeals and its original jurisdiction over post-arbitration proceedings under the RUAA.[136] Further, Appellate Rule 508(e)(4) only applies to appeals made under Appellate Rule 601, which invokes the superior court's appellate jurisdiction over subordinate courts and administrative agencies.[137] Because the superior court exercised its original jurisdiction in this case, applying Appellate Rule 508(e)(4)(B) would be inappropriate.

Oenga is correct that some public policy justifications behind the fee arbitration program, such as protecting vulnerable clients and providing a more affordable alternative to litigation, might weigh against awarding attorney's fees in post-arbitration proceedings. However, awarding attorney's fees in post-arbitration proceedings actually furthers the goals of arbitration by discouraging all but the most aggrieved from pursuing lengthy legal battles over arbitration decisions. In this way, arbitration can continue to be an inexpensive, speedy, and final alternative to litigation.

---

[135]   *See Breeze v. Sims*, 778 P.2d 215, 218 & n.5 (Alaska 1989) ("The superior court was acting in this case as an intermediate appellate court.").

[136]   *Moore v. Olson*, 351 P.3d 1066, 1076 (Alaska 2015) ("[T]he superior court does not exercise appellate jurisdiction over arbitration disputes; rather, the court exercises original jurisdiction over applications to confirm or vacate arbitration awards.").

[137]   Alaska R. App. P. 601(a); *see also* AS 22.10.020(d); AS 22.15.240(a). Interpreting the requirements of the Alaska Bar Rules involves questions of law that we review using our independent judgment. *In re Reinstatement of Wiederholt*, 24 P.3d 1219, 1222 (Alaska 2001) (citing *Disciplinary Matter Involving Wiederholt*, 877 P.2d 765, 767 (Alaska 1994)).

On balance, the policy considerations weigh in favor of awarding attorney's fees to Givens.

Although it is true that Bar Rule 40(q) states that "[a]ttorney's fees for arbitration may not be awarded," we agree with Givens that this rule only applies to the arbitration itself and not to post-arbitration proceedings. By its plain language Bar Rule 40(q) states that attorney's fees are not to be awarded for arbitration, but it is silent on awarding attorney's fees for post-arbitration proceedings.

Because Appellate Rule 508(e) and Bar Rule 40(q) are inapplicable here, and because, on balance, awarding attorney's fees in post-arbitration proceedings furthers the goals of arbitration, fee awards under Civil Rule 82 are permissible in post-arbitration proceedings governed by the RUAA.

### 2. The superior court did not abuse its discretion by awarding Givens enhanced fees under Civil Rule 82(b).

Civil Rule 82 provides that "the prevailing party in a civil case shall be awarded attorney's fees" and includes a schedule for calculating such awards.[138] The schedule fixes the amount of the award based on the amount of the underlying judgment and any prejudgment interest, whether the case was contested, and whether a trial was held.[139] When there is no monetary judgment and no trial, the court presumptively awards the prevailing party 20% of its "necessarily incurred" attorney fees.[140] But the superior court may deviate from that schedule if a variation is warranted based on certain factors listed in Rule 82(b), which include a party's "vexatious or bad faith conduct."[141]

---

[138] Alaska R. Civ. P. 82(a)-(b).

[139] Alaska R. Civ. P. 82(b)(1).

[140] Alaska R. Civ. P. 82(b)(2).

[141] Alaska R. Civ. P. 82(b)(3)(G).

The superior court based its enhanced award of 60% of Givens's attorney's fees on several Civil Rule 82(b)(3) factors, specifically, the complexity of the litigation; the reasonableness of the attorney's hourly rates and the number of hours expended; the reasonableness of the number of attorneys used; the reasonableness of the claims and defenses pursued by each side; and vexatious or bad faith conduct. Both Oenga and Givens focus their arguments exclusively on the court's consideration of either party's "vexatious or bad faith conduct."

In the enhanced fee award context, "we have equated 'bad faith' with 'devoid of good faith.' "[142] Under Civil Rule 82(b)(3)(G), a court may find that an enhanced fee award is warranted when a party's filing is "either legally or factually so deficient as to reasonably permit an inference of vexatious or bad faith litigation conduct."[143] But "mere evasiveness in responding, contentiousness over difficult issues, or delay in completing testimony do not, in themselves, constitute bad faith or vexatious conduct."[144] Rather, "[c]onduct justifying an increased award must be such that the parties are prevented from litigating the action on an equal plane."[145]

The superior court's decision to vary from the default 20% fee award under Rule 82(b)(1) was based on five factors. The court found the following: (1) Although the case "was relatively simple" given the RUAA's limited judicial review, Oenga's "unreasonable positions" made the case "significantly more complex and lengthy than necessary";[146] (2) Givens "hired no additional attorneys";[147] (3) Givens's

---

[142] *Johnson v. Johnson*, 239 P.3d 393, 400 (Alaska 2010) (quoting *Van Dort v. Culliton*, 797 P.2d 642, 644 (Alaska 1990)).

[143] *Id.* at 401.

[144] *Kowalski v. Kowalski*, 806 P.2d 1368, 1373 (Alaska 1991).

[145] *Id.*

[146] *See* Alaska R. Civ. P. 82(b)(3)(A), (F).

[147] *See* Alaska R. Civ. P. 82(b)(3)(D).

fees were reasonable;[148] (4) Oenga "repeatedly made frivolous arguments or those devoid of any legal merit";[149] and (5) Oenga's conduct, in lengthening the dispute, undermined the purposes of arbitration to provide "fast, less costly, efficient, and final resolution to arbitration disputes."[150]

With regard to allegations of vexatious and bad faith conduct, the superior court found that this factor weighed in favor of Givens. Specifically, the court observed that it "gave notice to Oenga that many of [his] arguments would not be considered, but Oenga persisted in making them." However, the court also found that one of Oenga's primary arguments — that the arbitrators exceeded their authority by limiting the scope of arbitration — was not "*completely* devoid of legal merit."[151] But the court believed that even this argument was "a stretch." In light of the "repeated filings that lacked legal merit," the court concluded that this factor "weigh[ed] heavily" in Givens's favor.

Oenga argues that the pleadings he filed "were not vexatious, unreasonable, or in bad faith." Rather, Oenga asserts that the superior court "ordered [Oenga] to brief all the issues, including scope," and that Oenga's filings "were a direct response to Givens'[s] attempts to obstruct the process and deprive [Oenga] of his chance."[152] Givens responds that because the superior court only awarded him 60% of his fees, a finding of vexatious or bad faith conduct was unnecessary to justify the award; regardless, the superior court "described in detail Oenga's litigation conduct justifying the award."

---

[148]    *See* Alaska R. Civ. P. 82(b)(3)(C).

[149]    *See* Alaska R. Civ. P. 82(b)(3)(G).

[150]    *See* Alaska R. Civ. P. 82(b)(3)(F).

[151]    Emphasis in original.

[152]    In support, Oenga cites to several of his own responsive motions opposing Givens's filings.

We conclude that the superior court did not abuse its discretion in awarding Givens 60% of his reasonable attorney's fees. Oenga's conduct, which included filing numerous frivolous arguments, made this litigation needlessly more complex.

Oenga argues that his conduct was not vexatious or in bad faith, but he does not address or contest the court's finding that he complicated the issues or that his arguments were frivolous. Although Oenga asserts that his many lengthy filings were simply attempts to respond to Givens's own maneuvering, several of those filings appear more focused on expanding the scope of the post-arbitration proceeding so that Oenga could relitigate the issues decided in arbitration, vacate the arbitration panel's decision on grounds beyond those listed in the RUAA, and obtain rulings from the superior court on issues that were beyond the scope of the arbitration. For example, Oenga's Complaint for Vacatur included more than 40 pages of factual allegations, many of which were irrelevant to the issue of arbitrability or the RUAA's statutory factors.[153] The superior court subsequently reminded the parties that its review was "a narrow and limited inquiry" and "not a re-litigation of the merits of the arbitration panel['s] decision." The court reiterated that it could only vacate the panel's decision pursuant to the "narrow statutory parameters" in AS 09.43.500 and that the panel's findings of fact were unreviewable; it directed the parties "to formulate their briefs accordingly."

Despite the superior court's direction, Oenga filed a 53-page opening brief that, again, went far beyond the limited scope of judicial review authorized by the

---

[153]     At one point, Oenga stated that Givens "launched a campaign of written and verbal emotional blackmail" against Oenga and that Givens "engaged in extortion and emotional blackmail, . . . [and] facilitated bribery among the [Oenga] Heirs." Oenga also attacked Givens's witnesses from the arbitration hearing at length.

Case 3:23-cv-00121-SLG     Document 134-1     Filed 01/29/26     Page 42 of 44     Exhibit 1
Page 42 of 44

RUAA. Rather than addressing arbitrability or the RUAA factors, nearly all of Oenga's opening brief was dedicated to challenging the enforceability of the fee agreement,

In addition to raising numerous irrelevant arguments, Oenga engaged in needlessly adversarial motion practice. For example, he repeatedly raised substantive legal arguments regarding the scope of arbitration and the panel's decision in seemingly unrelated motions. As a result, Givens was required to file lengthy responses — and incur additional expenses — to address these arguments. Considering this conduct in light of the relevant factors under Civil Rule 82(b), it was not an abuse of discretion for the superior court to award Givens 60% of his reasonable attorney's fees.

> **3. The superior court did not abuse its discretion by finding Givens's fees were reasonable for purposes of calculating an award under Rule 82.**

The superior court acted within its discretion when it found that Givens's fees were reasonable because it took into account the full context of the litigation. Oenga argues that Givens's request for attorney's fees under Rule 82 was unreasonable. Specifically, Oenga points to several filings for which he believes Givens's hours and fees are excessive. Givens responds that the superior court's decision was supported by an affidavit from Givens's counsel and an itemized list of time spent on various filings before the court.

The superior court found that the hourly rate for Givens's attorney and the hourly rate for his paralegal were both reasonable under Bar Rule 35. Further, the court noted that the time spent on individual items was not unreasonable "[w]hen looked at in context, and based partially on the reasoning in [Givens's]" motion for fees.[154]

---

[154] As discussed above, and as Givens argued in his motion for fees, Oenga had "repeatedly filed lengthy motions and briefs" to which "Givens was required to respond," "attempted to relitigate the arbitrators' decision," and repeatedly accused Givens of misconduct that was irrelevant to the superior court's review.

Finally, the superior court observed that Givens "hired no additional attorneys" and did not "include any work related to the removal to federal court."

We conclude that the superior court did not abuse its discretion by finding that the amount of attorney's fees requested by Givens was reasonable for representation in the post-arbitration proceedings. Givens's motion for fees detailed Oenga's voluminous filings before the superior court and the significant time Givens spent responding to them. And Givens supported his motion with a detailed description of the work performed. Givens's billings thus "allow[ed] a fair determination that they were reasonably incurred or incurred in connection with the . . . lawsuit."[155]

## V. CONCLUSION

The order of the superior court confirming the arbitration panel's decision is AFFIRMED.

---

[155] *See Hodari v. State, Dep't of Corr.*, 407 P.3d 468, 473 (Alaska 2017) (quoting *Bobich v. Hughes*, 965 P.2d 1196, 1200 (Alaska 1998)).

Case 3:23-cv-00121-SLG    Document 134-1    Filed 01/29/26    Page 44 of 44    Exhibit 1
Page 44 of 44