# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

MARIA M. GIVENS, *as Personal Representative of the Estate of Raymond C. Givens*,

Plaintiff,

v.

JOSEPH DELIA,

Defendant.

Case No. 3:23-cv-00121-SLG

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Before the Court at Docket 96 is Defendant Joseph Delia's Motion for Summary Judgment. Plaintiff Maria M. Givens, as Personal Representative of the Estate of Raymond C. Givens, responded in opposition at Docket 105, to which Mr. Delia replied at Docket 115. Also before the Court at Docket 120 is Mr. Givens's[1] Cross-Motion for Summary Judgment. Mr. Delia responded in opposition at Docket 125, to which Mr. Givens replied at Docket 129.

## BACKGROUND

This case arises from a dispute over a contingency fee agreement between attorney Raymond C. Givens and several heirs of a Native allotment originally owned by Andrew Oenga. The facts below are undisputed.

---

[1] For ease of reference, the Court refers to "Mr. Givens" to include both Mr. Raymond C. Givens and, following his death, the personal representative of his estate, Ms. Maria M. Givens.

## I. The Oenga Allotment

In 1971, Mr. Delia's grandfather, Andrew Oenga, received a forty-acre Alaska Native allotment near Prudhoe Bay, Alaska from the United States Department of the Interior ("DOI"), Bureau of Land Management ("BLM").[2] The allotment included a provision reserving to the United States "[a]ll of the oil and gas in the land so allotted, and to it, or persons authorized by it, the right to prospect for, mine, and remove such deposits from the same."[3] The allotment was also held in restricted fee status, which allowed Mr. Oenga to lease the allotment premises for oil exploration and development only upon the approval of the Bureau of Indian Affairs ("BIA").[4] In addition to reviewing potential leases, the BIA had a fiduciary duty to ensure that tenants complied with any lease requirements through appropriate inspections and enforcement actions necessary to protect the interests of the Native landowners.[5] In 1989, Mr. Oenga and BP Exploration (Alaska) ("BPX") entered into a lease agreement ("Lease Agreement") granting BPX the right to operate oil and gas development and production facilities on the allotment, which the BIA subsequently approved.[6]

---

[2] Docket 96 at 13; *Oenga v. United States* (*Oenga I*), 83 Fed. Cl. 594, 598 (2008).

[3] Docket 96 at 13; *Oenga I*, 83 Fed. Cl. at 598.

[4] *Oenga v. Givens (Oenga II)*, 582 P.3d 988, 994 (Alaska 2026).

[5] *Id.* at 994-95.

[6] Docket 96 at 14; Docket 105 at 5.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 2 of 44

Case 3:23-cv-00121-SLG    Document 137    Filed 03/30/26    Page 2 of 44

## II. The Fee Agreement

When Mr. Oenga died, ownership of the allotment passed to his heirs, including Mr. Delia.[7] Over time, the Oenga heirs came to believe that the BIA had breached its fiduciary duty and failed to obtain fair market rental payments for the allotment under the Lease Agreement.[8] In 2003, the Oenga heirs sought legal representation to pursue claims against the United States regarding the management of the allotment.[9] The Oenga heirs retained Ray Givens, and the Oenga heirs and Mr. Givens executed a contingency fee agreement ("Fee Agreement") on October 31, 2003.[10]

The Fee Agreement provides, in relevant part, that

[the Oenga heirs] agree to pay [Mr. Givens] for professional services 30% of the "Gross Recovery" of any and all funds received in settlement without an action having been filed in any Court; 33½% of the "Gross Recovery" of any and all funds recovered through arbitration, or received in settlement after filing an action in any Court but prior to trial; 35% of the "Gross Recovery" of any and all funds recovered through arbitration, settlement or judgment once trial begins; or 40% of said sums if said matter is settled or resolved upon appeal or following post-verdict proceedings, and said sums payable to attorney for professional services are to be a lien upon any sums received in settlement or payment of any said claim, or upon any judgment recovered.[11]

---

[7] Docket 96 at 15; Docket 105 at 5.

[8] Docket 96 at 15; Docket 105 at 5.

[9] Docket 96 at 15-16; Docket 105 at 5-6.

[10] Docket 96 at 16 (citing Docket 96-6 (Fee Agreement)); Docket 105 at 6 (citing Docket 96-6).

[11] Docket 96-6 at 1.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 3 of 44

Case 3:23-cv-00121-SLG    Document 137    Filed 03/30/26    Page 3 of 44

The Fee Agreement also provides that "'Gross Recovery" shall mean all of the following:

> a.) The amount received as compensation for the leased premises or under the Lease Agreement for the time period from the date of this Agreement back to the effective date of the Lease, which is January 1, 1989. (Back payments.)
>
> b.) The increase in lease payments under the Lease Agreement or extended term, from the date hereof and into the future, which are brought about through a modification, reformation, or cancellation of the Lease Agreement or otherwise.
>
> c.) All compensation and or damages and fees and costs which the clients become entitled to, but which the clients would not be entitled to receive under the existing Lease Agreement as modified.
>
> d.) The amount received in a sale of the subject leased premises less the amount set forth in the last appraisal of the subject property performed by the Bureau of Indian Affairs.
>
> e.) Judgment or settlement amounts received from any governmental branch or agency.
>
> f.) The parties understand that an appraisal is now being performed pursuant to the requirements of the Lease Agreement, as modified. In the event the appraised value is used for increasing payments due commencing November 1, 2002, and thereafter, as opposed to the "cost adjustment factor" (which has been historically used for any increase in rent) the recovery shall be the increase in those rents based upon appraisal.[12]

"[I]f there are no sums collected or received in the causes of action," the Fee Agreement provides that Mr. Givens would "make no charge for professional services" but would "be reimbursed by [the Oenga heirs] for any and all fees, costs,

---

[12] Docket 96-6 at 1-2.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 4 of 44

and expenses incurred by [Mr. Givens] for and on behalf of [the Oenga heirs] in the representation of [their] claim, cause or causes of action."[13]

Mr. Givens "did not ask the government for its approval of the [Fee Agreement] because he believed that the government likely would not approve it or would insist on terms that would dissuade him from taking the case in the first place."[14]

### III. *Oenga v. United States*

In June 2006, Mr. Givens filed a lawsuit on behalf of the Oenga heirs in the Court of Federal Claims alleging that the "United States has breached its fiduciary obligation and trust responsibility" to the Oenga heirs by failing to collect and pay to the heirs fair market rent for their allotment.[15] BPX and other oil companies operating at Prudhoe Bay intervened in the case as defendants.[16] On February 12, 2010, the Court of Federal Claims determined that the United States had breached its trust duties to the Oenga heirs and ultimately entered final judgment in favor of the Oenga heirs for $4,924,000.[17] The United States, oil company intervenors, and the Oenga heirs each appealed the damages award.[18]

---

[13] Docket 96-6 at 2.

[14] Docket 105 at 7.

[15] Docket 96 at 18; Docket 105 at 7.

[16] Docket 96 at 18; Docket 105 at 7.

[17] Docket 96 at 18-19; Docket 105 at 8.

[18] Docket 96 at 19; Docket 105 at 8.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 5 of 44

Case 3:23-cv-00121-SLG    Document 137    Filed 03/30/26    Page 5 of 44

On June 23, 2011, while the appeal was pending, the parties reached a settlement agreement and signed a Confidential Term Sheet outlining the general terms of the settlement.[19] The Confidential Term Sheet provided that the Oenga heirs "will be paid $13,500,000 as a lump sum payment," and that "[t]he lease will be amended to allow for $650,000 annual rent starting in 2012, with the rent modified annually using the CPI-based adjustment method set forth in paragraph 5 of the lease."[20] The Confidential Term Sheet also stated that "[s]ome of lump sum and future rents will be paid to Givens Law firm and some to BIA for the Plaintiffs' benefit, as agreed to by Plaintiffs and Givens Law firm."[21]

On August 5, 2011, Mr. Givens and the Oenga heirs signed the Contingency Fee Contract First Amendment ("Amendment").[22] The Amendment modified the Fee Agreement to provide that:

> [the Oenga heirs] agree to pay [Mr. Givens] for professional services 35% of the $13.5 million Lump Sum Settlement Amount paid under the Settlement Agreement resolving *Oenga et al v. United States et al.* . . . and 25% of annual rental on Alaska Native Allotment F-14632 paid for both the 2012-2013 inclusive period and for the extended term period of 2014-2038 inclusive. . . . No fees shall be owed for the second possible extended term from 2039-2063 inclusive. [23]

---

[19] Docket 108-1 (Confidential Term Sheet).

[20] Docket 108-1 at 2.

[21] Docket 108-1 at 3.

[22] Docket 96-8 at 1 (Contingency Fee Contract First Amendment).

[23] Docket 96-8 at 1-2 (emphasis omitted).

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 6 of 44

Case 3:23-cv-00121-SLG    Document 137    Filed 03/30/26    Page 6 of 44

The Amendment also provided that:

> [the Oenga heirs] shall direct that these payments for professional services shall be paid directly to [Mr. Givens] by Lessee BP Exploration (Alaska), Inc. and or the United States or any subdivision thereof from the funds due Clients at the same time the remaining funds due are paid to Clients. [24]

On December 9, 2011, Eugene Virden, the Regional Director of the BIA Alaska Region, wrote a letter to Mr. Givens "to follow-up on a series of conversations and email exchanges" regarding the BIA's review, pursuant to 25 C.F.R. §§ 115.400 *et seq.*, of a request to pay Mr. Givens's attorney's fees from a minor Oenga heir's Individual Indian Money ("IIM") account.[25] In the letter, Mr. Virden requested additional information invoicing Mr. Givens's legal services and costs incurred, stating that "BIA has reviewed the materials that the Givens Law Firm previously provided during the course of these settlement negotiations, and BIA determined that they do not constitute the type of 'invoice or bill of sale' contemplated by the regulations."[26] The letter also stated that, pursuant to 25 CFR *§§* 115.417, 115.421(e), "BIA must determine whether the disbursement plan is in the best interest of" the minor Oenga heir. [27] The letter requested that Mr. Givens

---

[24] Docket 96-8 at 2.

[25] Docket 96-13 (Letter from Virden to Givens).

[26] Docket 96-13 at 3; *see also* 25 C.F.R. § 420(f).

[27] Docket 96-13 at 5.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 7 of 44
Case 3:23-cv-00121-SLG    Document 137    Filed 03/30/26    Page 7 of 44

provide "explanation and support for the reasonableness" of the Fee Agreement, as amended, stating that:

> BIA is uncertain whether or not the [Fee Agreement] meets the standard for "reasonableness" under Rule 1.5(a) [of the Model Rules of Professional Conduct]. BIA is particularly concerned about the 25% of fees collected on future rents until 2038 because it does not appear that the attorney will have to expend any time or labor to continue receiving that significant compensation. *See* Rule 1.5(a)(1). Similarly, if one converts the fee amounts to an hourly rate (based on the hourly estimates provided by the Givens Law Firm in its EAJA letter, i.e. 4,909.25 hours through March, 2011), then the fees may be perceived by some as excessive when compared to rates typically charged in the relevant locality. *See* Rule 1.5(a)(3). On the other hand, BIA recognizes that many of the other factors that are relevant under Rule 1.5(a) may weigh in the other direction.[28]

On May 24, 2012, the Oenga heirs, the United States, and the intervenor oil companies signed a Settlement Agreement and Release of All Claims ("Settlement Agreement").[29] Consistent with the terms of the Confidential Term Sheet, the Settlement Agreement provided that the United States and the oil companies would pay the Oenga heirs a lump sum of $13.5 million in exchange for dismissal of all appeals and actions regarding the allotment.[30] The Settlement Agreement also provided that the BIA would "distribute the Settlement Payments to the Oengas in proportion to their respective ownership interests" in the allotment

---

[28] Docket 96-13 at 6-7.

[29] Docket 98-3 (Settlement Agreement)

[30] Docket 98-3 at 8-18, 20.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 8 of 44

Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 8 of 44

through their IIM accounts.[31] With the BIA's approval, the Oenga heirs and BPX also executed a replacement lease agreement for the allotment ("2012 Lease Agreement").[32]

Also on May 24, 2012, the Oenga heirs and Mr. Givens signed the Fee/Cost Reduction Agreement ("Reduction Agreement").[33] The Reduction Agreement states that the "Fee First Approach"—"the contingent fee formula" in the Fee Agreement and the Amendment under which the "the contingent fee was to be calculated on the Gross Recovery, with the costs advanced being reimbursed from the client's net recovery after payment of the contingent fee"—"has been questioned by the Bureau of Indian Affairs, suggesting that the costs should be reimbursed before the fee is paid [Cost First Approach], which is more advantageous to" the Oenga heirs.[34] Thus, the Reduction Agreement provides that "despite the provisions of the [Fee Agreement] as amended to the contrary," $444,463 in litigation costs would be deducted from the $13.5 million lump sum settlement before calculating Mr. Givens's attorney's fees, resulting in $4,569,437 in attorney's fees and $8,486,100 of the settlement remaining for the Oenga

---

[31] Docket 98-3 at 19.

[32] Docket 98-4 (2012 Lease Agreement).

[33] Docket 96-12.

[34] Docket 96-12 at 1.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 9 of 44

heirs.[35] The Reduction Agreement also provides that "the contingency fee due on future rents, which was specifically provided for in both the original [Fee Agreement] and the . . . Amendment thereof, remains due each year as a 25% fee of the total rent received each year due as compensation for [Mr. Givens's] work in securing the increased rent amount."[36]

The BIA subsequently "approved payment of the fees in the disbursement plan for the minor's account" that was the subject of Mr. Virden's December 9, 2011 letter.[37]

### IV. *Givens v. Wallace Oenga*

After the litigation between the United States and the Oenga heirs settled, disputes arose between Mr. Givens and some of the Oenga heirs regarding the payment of attorney fees. On February 14, 2019, Mr. Givens sued Wallace Oenga in this Court, alleging that Mr. Oenga had failed to pay Mr. Givens the amounts owed to him under the Fee Agreement.[38] On June 10, 2019, the Court entered default judgment against Wallace Oenga and ordered him to instruct the Office of the Special Trustee ("OST") to pay Mr. Givens 25% of his share of the annual rental

---

[35] Docket 96-12 at 2.

[36] Docket 96-12 at 2.

[37] Docket 96-15 at 9; Docket 105 at 12 (citing Docket 96-15 at 9).

[38] Docket 96-16 (Complaint, *Givens v. Wallace Oenga*, Case No. 3:19-cv-00043-HRH (D. Alaska Feb. 14, 2019)).

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 10 of 44

Case 3:23-cv-00121-SLG   Document 137   Filed 03/30/26   Page 10 of 44

payments from the allotment.[39] When Mr. Oenga did not do so, the Court directed the Clerk of Court to sign documents authorizing the OST to distribute funds in Mr. Oenga's trust account to Mr. Givens.[40] After the OST did not distribute the funds at issue, Mr. Givens filed a Motion to Enforce Judgment,[41] and the Court ordered the OST to "appear and show cause why the OST should not be held in civil contempt of court for failure to comply with the terms of the court's default judgment and order enforcing judgment."[42]

On January 10, 2020, the United States appeared in the case and stated that OST had not made payment pursuant to the Court's order because "such a payment would be contrary to federal law."[43] The United States asserted that 25 U.S.C. § 410 requires that "[m]oney earned from the lease or sale of lands held in trust by the United States for an Indian may not be used to pay the debts of, or claims against, the Indian without the approval and consent of the Secretary."[44] "In order to initiate this process, BIA must first receive a request to encumber the

---

[39] Docket 106-2 (Default Judgment, *Givens v. Wallace Oenga*).

[40] Docket 106-3 (Order Enforcing Judgment, *Givens v. Wallace Oenga*).

[41] Plaintiff's Motion to Enforce Judgment, *Givens v. Wallace Oenga*, Docket 55.

[42] Order to Show Cause at 3, *Givens v. Wallace Oenga*, Docket 59.

[43] Docket 106-4 at 2 (U.S. Notice of Statement, *Givens v. Wallace Oenga*).

[44] Docket 106-4 at 4.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 11 of 44
Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 11 of 44

account," and according to the United States, Mr. Givens had not made such a request.[45]

On August 14, 2020, the Court granted Mr. Givens's Motion to Enforce Judgment, stating that "Section 410 does not prevent OST from making payment to plaintiff."[46] The United States moved for reconsideration,[47] which the Court denied.[48] After Wallace Oenga's death, the United States moved for relief from the Court's orders because Wallace Oenga's IIM account and rights to future disbursements from the Lease Agreement became subject to BIA probate proceedings upon his death.[49] The Court granted the government's motion.[50]

## V. *Givens v. Leroy Oenga, Jr.*

On January 19, 2021, Mr. Givens sued Leroy Oenga, Jr. in this Court also alleging that he had failed to pay Mr. Givens the amounts owed to him under the Fee Agreement.[51] On May 7, 2021, Leroy Oenga, Jr. moved to dismiss the action pursuant to Alaska Bar Rule 39,[52] which provides, in relevant part:

---

[45] Docket 106-4 at 7.

[46] Docket 108-2 at 19 (Order on Motion to Enforce Judgment, *Givens v. Wallace Oenga*).

[47] Docket 106-7 (U.S. Motion for Reconsideration, *Givens v. Wallace Oenga*).

[48] Docket 106-8 (Order on Motion for Reconsideration, *Givens v. Wallace Oenga*).

[49] Docket 96-17 at 2 (Order on Motion for Rule 60(b) Relief, *Givens v. Wallace Oenga*).

[50] Docket 96-17 at 3.

[51] Docket 96-14 (Complaint, *Givens v. Leroy Oenga, Jr.*, Case No. 3:21-cv-00008-HRH (D. Alaska Jan. 19, 2021)).

[52] Defendant's Motion to Dismiss, *Givens v. Leroy Oenga, Jr.*, Docket 17.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 12 of 44

Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 12 of 44

> At the time of service of a summons in a civil action against his or her client for the recovery of fees for professional services rendered, an attorney will serve upon the client a written "notice of client's right to arbitrate or mediate" . . . . Failure to give this notice will be grounds for dismissal of the civil action.

The Court denied the motion to dismiss.[53] Leroy Oenga, Jr. moved for reconsideration,[54] which the Court granted.[55] On July 21, 2021, the Court entered an amended order denying the motion to dismiss but allowing Leroy Oenga, Jr. 20 days to petition for arbitration or request mediation and file a motion for a stay of the court case pending resolution of that arbitration or mediation.[56] On August 10, 2021, Leroy Oenga, Jr. moved to stay the case pending resolution of a "Fee Arbitration filed with the Alaska Bar Association pursuant to Alaska Bar Rule 39."[57] The Court granted the motion and stayed the case, stating in its order that

> the issue of whether the fee agreement is fair and reasonable underlies all of plaintiff's claims. There is nothing for the court to do in this case until the arbitration proceedings are completed. Once the arbitration proceedings are completed, the court can take up any complex Indian law issues, or any other issues, that remain to be resolved.[58]

---

[53] Order Denying Motion to Dismiss, *Givens v. Leroy Oenga, Jr.*, Docket 30.

[54] Defendant's Motion for Reconsideration, *Givens v. Leroy Oenga, Jr.*, Docket 32.

[55] Order on Motion for Reconsideration, *Givens v. Leroy Oenga, Jr.*, Docket 41.

[56] Amended Order Denying Motion to Dismiss, *Givens v. Leroy Oenga, Jr.*, Docket 42.

[57] Defendant's Motion to Stay at 1, *Givens v. Leroy Oenga, Jr.*, Docket 48 at 1.

[58] Docket 106-11 at 7 (Order on Motion for Stay of Proceedings, *Givens v. Leroy Oenga, Jr.*) at 7.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 13 of 44

In February 2023, the arbitration panel issued a decision ("Arbitration Decision") "finding that the amount of Givens's fee was reasonable."[59] "The panel declined to consider the other issues raised by Oenga's petition, specifically the broad array of challenges Oenga made to the enforceability of the fee agreement" and also "decided not to refer Givens to Bar Counsel for any alleged ethical violation."[60]

In May 2023, Leroy Oenga, Jr. filed a petition in Alaska Superior Court seeking to vacate the Arbitration Decision, alleging that it violated federal law, it was procured through fraud, and the panel was not impartial.[61] In May 2024, the superior court denied Mr. Oenga, Jr.'s petition, concluding that the arbitration panel "did not exceed its powers when it limited the scope of arbitration to the question of the reasonableness of Givens's fee."[62] "[T]he court held that 'because the panel's legal finding of their jurisdiction is unreviewable, [the superior court] affirms the panel's finding on the federal court retaining jurisdiction over complex Indian law and any issues that remain.'"[63] Mr. Oenga, Jr. appealed the superior court's

---

[59] *Oenga II*, 582 P.3d at 996.

[60] *Id.*

[61] *See id.*

[62] *Id.*

[63] *Id.* at 996-97 (second alteration in original).

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 14 of 44
Case 3:23-cv-00121-SLG    Document 137    Filed 03/30/26    Page 14 of 44

decision, [64] and on January 23, 2026, the Alaska Supreme Court affirmed the order of the superior court confirming the Arbitration Decision.[65]

## VI. *Givens v. Joseph Delia*

On May 26, 2023, Mr. Givens initiated this action against Joseph Delia, also an Oenga heir, alleging that Mr. Givens had not received payment from Mr. Delia from his share of rents from the allotment for lease years 2022 and 2023.[66] The Complaint seeks a declaratory judgment that (1) the Fee Agreement, as amended, is valid and enforceable; (2) Joseph Delia's interest in the Allotment is subject to a continuing obligation to pay Mr. Givens 25% of Mr. Delia's share of the annual rents from the allotment through 2036; and (3) Mr. Delia is precluded from disputing that obligation.[67] The Complaint also seeks damages of $102,228.78 plus prejudgment interest for unpaid past rents and an order of specific performance requiring Mr. Delia to (1) direct the lessee and/or the Bureau of Trust Funds Administration ("BTFA") to remit the past-due amounts to Mr. Givens and (2) direct ongoing automatic payments of 25% of his share of annual rents from the allotment to Mr. Givens through lease year 2036.[68]

---

[64] *Id.* at 997.

[65] *Id.* at 1014.

[66] Docket 1 at 7, ¶ 20.

[67] Docket 1 at 12-13.

[68] Docket 1 at 13-14.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 15 of 44

Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 15 of 44

On May 22, 2024, Mr. Givens moved for a writ of attachment under Federal Rule of Civil Procedure 64, Alaska Civil Rule 89, and Alaska Statute §§ 09.40.010-.110, requesting that the Court sequester Mr. Delia's share of attorney fees pending a determination of the merits of this case.[69] Mr. Delia opposed the motion, asserting that 25 U.S.C. § 410 and Alaska law do not authorize a writ of attachment.[70] The Court denied the motion, concluding that it is "inappropriate to address the merits of potentially dispositive, conflicting legal opinions as to the absence of BIA approval of Givens' fee contract or other disputed contract or probate issues in the context of a motion for a prejudgment writ of attachment."[71]

After Mr. Givens's death in March 2025, Plaintiff Maria M. Givens was appointed as Personal Representative of Mr. Givens's estate and was substituted as Plaintiff in this action.[72] On June 6, 2025, Mr. Delia moved for summary judgment,[73] and on August 28, 2025, Mr. Givens cross-moved for summary judgment.[74] The Court held oral argument on the cross motions on February 11, 2026.[75]

---

[69] Docket 36; Docket 78 at 2-3.

[70] Docket 78 at 3.

[71] Docket 78 at 7.

[72] Docket 91.

[73] Docket 96.

[74] Docket 120.

[75] Docket 135.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 16 of 44

Case 3:23-cv-00121-SLG    Document 137    Filed 03/30/26    Page 16 of 44

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact lies with the movant.[76] If the movant meets this burden, the non-moving party must demonstrate "specific facts showing that there is a genuine issue for trial."[77] The non-moving party may not rely on "mere allegations or denials"; rather, to reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[78]

When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[79] "[W]here the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment *sua sponte* for the nonmoving party."[80] Even when, as here, "both parties assert[] that there are

---

[76] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[77] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e) (1986)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[78] *Anderson*, 477 U.S. at 248-49 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

[79] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

[80] *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014) (first citing *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982); and then citing *Gospel Missions of Am. v. City of Los Angeles*, 328

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 17 of 44

Case 3:23-cv-00121-SLG    Document 137    Filed 03/30/26    Page 17 of 44

no uncontested issues of material fact," a court still has the independent "responsibility to determine whether disputed issues of material fact are present."[81] Where a case contains undisputed facts and presents a pure question of law, the matter is suitable for dispositive relief.[82]

In reviewing cross motions for summary judgment, a court "review[s] each separately, giving the non-movant for each motion the benefit of all reasonable inferences."[83]

## DISCUSSION

In their cross motions for summary judgment, the parties dispute the enforceability of the Fee Agreement under 25 U.S.C. § 410, which provides:

> No money accruing from any lease or sale of lands held in trust by the United States for any Indian shall become liable for the payment of any debt of, or claim against, such Indian contracted or arising during such trust period, or, in case of a minor, during his minority, except with the approval and consent of the Secretary of the Interior.

The parties raise four primary issues: (1) whether the Court has previously determined that the Fee Agreement does not violate 25 U.S.C. § 410; (2) whether § 410 applies to the Fee Agreement; (3) whether, if § 410 applies, the Fee

---

F.3d 548, 553 (9th Cir. 2003)).

[81] *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978).

[82] *See Smith v. Califano*, 597 F.2d 152, 155 n.4 (9th Cir. 1979) (holding that where "parties . . . have agreed on the material facts" and "the dispute involv[ed] the proper interpretation of relevant statutes and regulations[,] . . . the case could . . . be resolved as a matter of law, [and] summary judgment was the proper procedural device").

[83] *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016) (citing *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't,* 533 F.3d 780, 786 (9th Cir. 2008)).

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 18 of 44
Case 3:23-cv-00121-SLG    Document 137    Filed 03/30/26    Page 18 of 44

Agreement satisfies § 410's approval and consent requirement; and (4) whether, if the Fee Agreement is unenforceable, Mr. Givens may nonetheless recover under a theory of quantum meruit. The Court addresses each issue in turn.

### I. The Court has not previously determined whether the Fee Agreement violates 25 U.S.C. § 410.

As a threshold matter, the parties dispute whether this Court has already ruled on whether the Fee Agreement violates 25 U.S.C. § 410. Mr. Delia asserts that the question of whether the Fee Agreement violates § 410 "has not yet been decided" and is "squarely presented now" for decision on the merits. [84] Mr. Givens maintains that the Court has determined—both in this action and in *Givens v. Wallace Oenga*—that § 410 does not bar enforcement of the Fee Agreement or the relief sought.[85]

Mr. Givens primarily relies on the Court's prior order denying his motion for a writ of attachment in this action to assert that the Court has already concluded that Fee Agreement does not violate § 410.[86] Mr. Givens contends that in its order denying the motion for writ of attachment, "the Court held that the injunctive relief that Givens seeks against Delia—to enforce his promise to direct OST (now BTFA) to pay Givens—does not violate the terms of 25 U.S.C. § 410."[87] Mr. Delia disputes

---

[84] Docket 115 at 14-18.

[85] Docket 105 at 28-29; Docket 120 at 6-7.

[86] Docket 105 at 28-29.

[87] Docket 120 at 6-7.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 19 of 44

Case 3:23-cv-00121-SLG    Document 137    Filed 03/30/26    Page 19 of 44

Mr. Givens's characterization of the order, noting that the Court "stated clearly that it was not deciding the merits of this legal question."[88]

Mr. Givens also relies on *Givens v. Wallace Oenga*, asserting that the Court there concluded that the Fee Agreement does not violate § 410 in its order enforcing the default judgment.[89] Mr. Givens points to the Court's statement in that order that "[t]he injunctive relief which Givens seeks does not violate the terms of 25 U.S.C. § 410."[90] Mr. Delia contends that the Court did not resolve this issue in *Wallace Oenga*, because the Court's orders addressed only whether it could enforce its default judgment—specifically, whether OST could be compelled to honor payment directives—and did not reach the legality of the underlying Fee Agreement under § 410.[91]

Although Mr. Givens is correct that the Court has addressed issues arising from the Fee Agreement in prior proceedings, those rulings do not constitute a merits determination on the legality of the Fee Agreement under § 410. In the prejudgment attachment order in this case, the Court expressly declined to reach the merits of the § 410 issue when it stated that it was "inappropriate to address the merits of potentially dispositive, conflicting legal opinions as to the absence of

---

[88] Docket 115 at 15 (quoting Docket 78).

[89] Docket 105 at 28.

[90] Docket 78 at 6; Docket 120 at 6.

[91] Docket 115 at 16-18; Docket 125 at 24-25

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 20 of 44

Case 3:23-cv-00121-SLG    Document 137    Filed 03/30/26    Page 20 of 44

BIA approval of Givens's fee contract or other disputed contract or probate issues in the context of a motion for prejudgment writ of attachment."[92] That order cannot be read as a ruling on the merits on whether the Fee Agreement is enforceable under § 410.

The Court also did not resolve the issue in *Givens v. Wallace Oenga*. As Mr. Delia correctly notes, *Givens v. Wallace Oenga* proceeded by default judgment, and the Court's subsequent orders specifically addressed the enforcement of that judgment.[93] In its order enforcing the judgment, the Court stated that "Section 410 does not prevent OST from making payment to [Mr. Givens]" because "[if] the OST forms signed by the clerk of court are treated as if they were signed by [Mr. Oenga], then what is at issue here is not payment of a debt, but rather compliance with a request from an IIM account holder."[94] Thus, it appears that the Court determined that the forms signed by the Clerk of Court directing the OST to make payments to Mr. Givens had the same effect as Mr. Oenga himself directing the OST to make payments to Mr. Givens. The Court framed the question as whether § 410 barred Mr. Oenga from directing the OST to make payments to Mr. Givens—not whether § 410 barred Mr. Givens from enforcing the Fee Agreement.[95]

---

[92] Docket 115 at 15 (quoting Docket 78 at 7).

[93] Docket 96 at 39-40; Docket 115 at 14-18.

[94] Docket 108-2 at 19.

[95] Mr. Delia also asserts that, in any event, he would not be bound by the outcome of *Givens v. Wallace Oenga*, even if the Court had ruled on the merits of whether the Fee Agreement violates § 410, because Mr. Delia was not a party in *Given v. Wallace Oenga* and was not in "privity" with

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 21 of 44
Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 21 of 44

Accordingly, the Court finds that it did not determine whether the Fee Agreement violates 25 U.S.C. § 410 in this case or in *Givens v. Wallace Oenga*.

## II. 25 U.S.C. § 410 applies to the Fee Agreement.

Because the Court has not previously resolved this issue, it now turns to whether 25 U.S.C. § 410 applies to the Fee Agreement. Section 410 provides that "[n]o money accruing from any lease or sale of lands held in trust by the United States for any Indian shall become liable for the payment of any debt . . . except with the approval and consent of the Secretary of the Interior." "25 U.S.C. § 410 establishes the general rule that funds derived from trust property are not available for the payment of debts of, or claims against, the account holder. However, the section grants the Secretary of the Interior discretion to approve payments for debts or claims from trust funds."[96] Because § 410 is "a federal statute designed to protect from creditors certain categories of Indian property," it "should be construed broadly" and "ambiguities must be resolved in favor of the Indians."[97]

---

Wallace Oenga. Docket 96 at 40 (first citing *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits."); and then citing *Powers v. United Servs. Auto Ass'n*, 6 P.3d 294, 297-98 (Alaska 2000) (stating that a non-party may only be bound by a prior judgment if the non-party was in "privity" with the party that actually litigated a case that resulted in a final judgment on the merits)). The Court need not decide whether Mr. Delia and Wallace Oenga were in privity because *Givens v. Wallace Oenga* did not resolve whether the Fee Agreement violates § 410.

[96] *Pretty Paint v. Rocky Mtn. Reg'l Dir.,* 38 IBIA 177, 179 (2002).

[97] *L. Offs. of Vincent Vitale, P.C. v. Tabbytite*, 942 P.2d 1141, 1147 (Alaska 1997) (quoting *Matter of City of Nome*, 780 P.2d 363, 367 (Alaska 1989)); *see also Confederated Tribes of Chehalis Indian Rsrv. v. Washington*, 96 F.3d 334, 340 (9th Cir. 1996) ("Courts have uniformly held that treaties, statutes and executive orders must be liberally construed in favor of establishing Indian rights."); *South Dakota v. Bourland,* 508 U.S. 679, 687 (1993) ("Statutes are to be construed

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 22 of 44
Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 22 of 44

Mr. Delia asserts that 25 U.S.C. § 410 applies to the Fee Agreement because the Fee Agreement "is purportedly a 'covenant running with the land,' which Givens claims may be enforced against Delia's successors or assigns."[98] Mr. Delia highlights that Mr. Givens "seeks specific performance to enforce a 'lien,' or an 'interest' in the lease proceeds accruing from the Oenga allotment."[99] Because the lien attaches to future lease proceeds, Mr. Delia asserts that the Fee Agreement must meet the requirements of 25 U.S.C. § 410.[100]

Mr. Givens asserts that 25 U.S.C. § 410 does not apply to the Fee Agreement for several reasons. First, Mr. Givens asserts that he "was not required by 25 U.S.C. § 410 to obtain the government's approval of the [Fee Agreement] before suing the government for breach of its fiduciary duty to the Oenga heirs."[101] He maintains that the statute "cannot be applied to require an Indian or Alaska Native to ask for permission from the government before suing the government for breach of its fiduciary duty."[102] He contends "[t]he facts here are analogous to

---

liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit.") (quoting *County of Yakima v. Confederated Tribes and Bands of Yakima Nation*, 502 U.S. 251, 269 (1992))).

[98] Docket 115 at 19 (first citing Docket 96-3 at 18-19; and then citing Docket 96-14 at 6).

[99] Docket 115 at 19 (citing Docket 96-3 at 19 ("[T]he interest in the allotment inherited by Oenga was impressed by the contingency fee contract.")).

[100] Docket 115 at 19.

[101] Docket 105 at 29.

[102] Docket 105 at 30.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 23 of 44

Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 23 of 44

those present in" *United States v. Equitable Trust Company of New York*[103] and *Arenas v. Preston*,[104] where fees were awarded to attorneys after they successfully represented allottees against the United States.[105] Mr. Delia maintains that *Equitable Trust* and *Arenas* are distinguishable because both cases involved equitable fee awards in the underlying litigation, not the enforcement of private contracts in separate lawsuits.[106] He contends that "the Alaska Supreme Court . . . interpreted Section 410 to prohibit lawyers from claiming funds derived from Native allotments to satisfy debts owed by their clients" in *Law Offices of Vincent Vitale, P.C. v. Tabbytite*,[107] and this Court should apply the holding in *Tabbytite* to conclude the Fee Agreement violates Section 410.[108]

In *Equitable Trust*, Jackson Barnett, a Creek Indian allottee who had been "adjudged . . . a mental incompetent and appointed a guardian of his estate," was induced to enter into an agreement that diverted proceeds from his allotment to third parties.[109] The Secretary of the Interior approved the agreement and

---

[103] 283 U.S. 738 (1931).

[104] 181 F.2d 62 (9th Cir. 1950).

[105] Docket 105 at 33.

[106] Docket 115 at 20-21.

[107] 942 P.2d 1141 (Alaska 1997).

[108] Docket 96 at 29-30.

[109] *Equitable Trust*, 283 U.S. at 739-41.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 24 of 44

Case 3:23-cv-00121-SLG    Document 137    Filed 03/30/26    Page 24 of 44

distributed the allotment proceeds as requested.[110] Upon learning of the distribution, Mr. Barnett's guardian retained attorneys to bring a suit in equity to cancel the distribution and restore the proceeds to Mr. Barnett's trust.[111] The United States intervened in support of the guardian.[112] The district court found that Mr. Barnett lacked the mental capacity to authorize the distribution and that the Secretary of the Interior's approval could not validate such a transaction.[113] The district court ordered that the diverted funds be returned to the trust.[114] After Mr. Barnett's trust was restored, the district court awarded attorney's fees and expenses to the guardian's attorneys, directing that those amounts be paid from the restored trust fund.[115] The United States challenged these awards, arguing that statutory restrictions on the use of Indian trust funds prohibited any such payments without approval by the Secretary[116] and that the fees were excessive.[117] The

---

[110] *Id.* at 741.

[111] *Id.* at 741-42.

[112] *Id.* at 742.

[113] *Id.* at 743.

[114] Id.

[115] *Id.* at 743-44.

[116] *Id.* at 740 (first citing Act of March 1, 1901, ch. 676, 31 Stat. 861; then citing Act of June 30, 1902, ch. 1323, 32 Stat. 500; and then citing Act May 27, 1908, ch. 199, 35 Stat. 312).

[117] *Id.* at 744.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 25 of 44
Case 3:23-cv-00121-SLG    Document 137    Filed 03/30/26    Page 25 of 44

Second Circuit reduced the attorneys' fee by approximately 46% and otherwise affirmed the decree.[118]

On appeal, the Supreme Court held that "[i]t is a general rule in courts of equity that a trust fund which has been recovered or preserved through their intervention may be charged with the costs and expenses, including reasonable attorney's fees, incurred in that behalf."[119] The Court explained that statutory restrictions on Indian trust funds, while intended to provide "comprehensive" protection, were not meant to "restrain courts of equity" from applying rules "essential to the adequate protection of a wronged *cestui que trust*."[120] At the same time, the Court emphasized that "special care" must be taken to ensure that fees are confined to what is reasonable.[121] Applying that standard, the Court held that the fee award, even as reduced by the Second Circuit, was excessive, reduced it an additional 50% to what it determined was a reasonable amount, and affirmed the decree as modified.[122]

In *Arenas*, Lee Arenas, a Mission Indian, retained attorneys and "sued the United States to have determined his right to an allotment."[123] Mr. Arenas and his

---

[118] Id.

[119] *Id.*

[120] *Id.* at 745 (emphasis in original).

[121] *Id.* at 746.

[122] *Id.* at 746-47.

[123] *Arenas*, 181 F.2d at 63.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 26 of 44

Case 3:23-cv-00121-SLG    Document 137    Filed 03/30/26    Page 26 of 44

attorneys executed a written contract that "provided for an aggregate fee of 10% of the value of the land recovered," which was later superseded by another contract in which Mr. Arenas agreed to compensate his attorneys on a quantum meruit basis.[124] "After extended litigation, [Mr. Arenas] was substantially though not wholly successful in his claim."[125] The district court then awarded fees to Mr. Arenas's attorneys and imposed a lien on the allotment to secure payment for those fees.[126] The United States appealed, arguing that the lien was invalid for several reasons, including because any fee arrangement affecting an Indian allotment required government approval.[127] On appeal, the Ninth Circuit held that courts may apply equitable principles to impose such a lien despite statutory restrictions on Indian allotments where the lien is necessary to protect the allottee.[128] The Court emphasized that the statutory restrictions at issue were intended "to afford effective protection to the Indian allottees," not to "restrain courts of equity" from safeguarding their interests.[129] However, the Court limited the basis for such liens, holding that fees "cannot be awarded upon any contract

---

[124] *Id.* at 67.

[125] *Id.* at 63.

[126] *Id.* at 64.

[127] *Id.* (first citing Mission Indian Act of January 12, 1891, § 5, 26 Stat. 712; and then citing General Allotment Act of 1887, § 5, 24 Stat. 388, 389 (codified at 25 U.S.C.A. 348).

[128] *Id.* at 66 (citing *Equitable Trust*, 283 U.S. at 744).

[129] *Id.*

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 27 of 44

Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 27 of 44

by and between the allottee and his attorneys."[130] Rather, "[w]hen, as here, the attorneys seek to secure their fees by a lien upon the property the judge as the chancellor has the jurisdiction to impress the lien for a sum equal to but not in excess of the sum which he deems reasonable."[131] The case was remanded for the district court to determine the reasonable attorney's fees and to fix the amount secured by the lien accordingly.[132]

*Equitable Trust* and *Arenas* recognize a district court's limited equitable authority to award reasonable attorney's fees from an allottee's trust fund. However, unlike the attorneys in *Equitable Trust* and *Arenas*, Mr. Givens seeks attorney's fees through the enforcement of the Fee Agreement. The Ninth Circuit expressly held in *Arenas* that attorney's fees "cannot be awarded upon any contract by and between the allottee and his attorneys," but instead must be imposed by a district court in an amount determined by the court to be reasonable.[133] *Equitable Trust* and *Arenas* do not authorize the Court to disregard

---

[130] *Id.* at 67

[131] *Id.*

[132] *Id.* at 67-68.

[133] *Id.* at 67. Mr. Givens appears to assert that the Court should disregard *Arenas*'s holding that fees "cannot be awarded upon any contract by and between the allottee and his attorneys" because the sentence containing that phrase "is garbled and obviously includes typesetting errors, rendering it unintelligible." Docket 120 at 7-8. As Mr. Delia accurately notes, typos in the Ninth Circuit's decision do not undermine its authority. Docket 125 at 26 n.84. Moreover, even assuming that the sentence Mr. Givens characterizes as unintelligible does not apply, the immediately following sentence clarifies the opinion's intent. It provides that "[w]hen, as here, the attorneys seek to secure their fees by a lien upon the property the judge as the chancellor has the jurisdiction to impress the lien for a sum equal to but not in excess of the sum which he deems reasonable." *Arenas*, 181 F.2d at 67. The Court agrees with Mr. Delia's interpretation of this

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 28 of 44

§ 410's express mandate and enforce a contract that operates as a lien against the allottee's lease income. Rather, these cases reaffirm the Court's limited authority to award reasonable attorney fees in equity, even when a federal statute would otherwise prohibit enforcement of a lien against an allottee's trust property.[134]

Further, while *Equitable Trust* and *Arenas* do not address 25 U.S.C. § 410, in *Law Offices of Vincent Vitale, P.C. v. Tabbytite*, the Alaska Supreme Court held that an attorney must obtain the government's approval and consent under 25 U.S.C. § 410 before claiming funds derived from a Native allotment to satisfy an attorney fee debt owed by an allottee. In *Tabbytite*, attorney Vincent Vitale represented Bertha Mae Tabbytite in a condemnation action involving her Alaska Native allotment brought by the Municipality of Anchorage.[135] Following trial, the district court awarded Ms. Tabbytite damages, and the award was affirmed on

---

sentence to mean that "an attorney may be entitled to an award of quantum meruit for their legal services, but they cannot enforce a contingent fee contract for allotment proceeds, except with the approval and consent of Interior." Docket 125 at 26 n.84.

[134] Mr. Delia also asserts that *Equitable Trust* and *Arenas* are distinguishable because the attorneys in those cases sought compensation in the underlying litigation, while here Mr. Givens "filed this private lawsuit against [Mr. Delia], the allottee, to enforce a contingency fee agreement that had not been approved by Interior, rather than as an equitable claim for compensation in the underlying litigation to protect trust assets." Docket 96 at 35-36, 38-39. Mr. Givens takes issue with this argument, stating that he "could not have sued Delia before he refused to pay Givens' fee from the annual rents." Docket 105 at 33. The Court need not resolve this issue because the Court finds that the Fee Agreement is not enforceable based on its finding that the Fee Agreement was not approved by the BIA. This conclusion does not turn on whether Mr. Givens sought compensation in the underlying litigation or through a separate action against Mr. Delia.

[135] *Tabbytite*, 942 P.2d at 1144-45.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 29 of 44

Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 29 of 44

appeal. Ms. Tabbytite then terminated her lawyer-client relationship with Mr. Vitale, but prior to his termination, Mr. Vitale filed an attorney's lien seeking security for payment of his fees from the damages award. After the award became payable, the Municipality filed an interpleader action seeking to deposit the damages with the state court due to the competing claims of Ms. Tabbytite and Mr. Vitale. The dispute shifted to fee arbitration, which resulted in an award to Mr. Vitale for the reasonable value of his services. Ms. Tabbytite challenged the enforcement of that award, arguing that the damages were protected trust funds under 25 U.S.C. § 410 for which government approval was required. Mr. Vitale asserted that the interpleaded funds did not need to be approved by the government because § 410 did not apply. On appeal, the Alaska Supreme Court held that § 410 prohibited Mr. Vitale's lien because "all of the proceeds from the condemnation action reasonably can be considered to have accrued from the lease or sale of allotment lands."[136]

Mr. Givens asserts that *Tabbytite* is distinguishable because it "did not concern an attorney's claim for payment of his fee in representing an Alaska Native against the United States."[137] He maintains that 25 U.S.C. § 410 should not apply here because "the government likely would not [have] approve[d] [the Fee Agreement] or would [have] insist[ed] on terms that would [have] dissuade[d] [Mr.

---

[136] *Id.* at 1148.

[137] Docket 105 at 34.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 30 of 44

Givens] from taking the case in the first place."[138] However, as the Alaska Supreme Court held in *Tabbytite*, "we cannot assume that the Secretary of the Interior will unreasonably disapprove of reasonable fees under section 410."[139] The Court agrees with that assessment and will not disregard an express statutory requirement based on a concern that the government would unreasonably disapprove of reasonable attorney's fees.

Next, Mr. Givens asserts that the protections of 25 U.S.C. § 410 "apply only to funds that are already held in trust by the government" and "do not apply to an attorney's contingent fee that attach to any newly generated funds, resulting from a successful suit for breach of the government's fiduciary duty to collect fair market rent, before those funds are added to the trust."[140] Mr. Givens contends that "[u]nder Alaska law, [Mr. Givens] has a trust and an equitable lien against the increased rents received by [Mr. Delia], before they are deposited into his IIM account."[141]

---

[138] Docket 105 at 7.

[139] *Tabbytite*, 942 P.2d at 1148 n.6.

[140] Docket 105 at 35 (emphasis omitted).

[141] Docket 105 at 35-36 (first citing *In re Estate of Fields*, 219 P.3d 995, 1014 (Alaska 2009) ("A constructive trust is an equitable remedy available to the superior court upon a showing of clear and convincing evidence that the party upon whom the trust will be imposed has been unjustly enriched by receiving assets that belong to the party in whose favor the trust will be created."); and then citing *Young v. Embley*, 143 P.3d 936, 947 (Alaska 2006) ("An equitable lien arises from an agreement that both identifies property and evidences an intention that such property serve as security for an obligation." (internal quotation marks and citation omitted))).

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 31 of 44
Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 31 of 44

Again, 25 U.S.C. § 410 broadly protects "money accruing from any lease or sale of lands held in trust by the United States for any Indian" and does not distinguish between funds already held in trust and funds not yet deposited.[142] Mr. Givens's reliance on the Alaska law doctrines of constructive trust and equitable lien does not alter this analysis. Federal law governs the treatment of Indian trust property, and state law is preempted to the extent it conflicts with federal statutory protections.[143] While equitable principles may inform the nature of the appropriate remedy, they cannot be applied in a manner that circumvents § 410's express requirements.

For the foregoing reasons, the Court finds that 25 U.S.C. § 410 applies to the Fee Agreement.

---

[142] *See* Docket 115 at 22-23.

[143] *See New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 334 (1983) ("State jurisdiction is preempted by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify the assertion of state authority."); *In re Blue Lake Forest Prods., Inc.*, 30 F.3d 1138, 1142 (9th Cir. 1994) ("Indian law preemption [is] broader than traditional preemption: That is, in the Indian law context, state law is preempted not only by an explicit congressional statement—the traditional preemption standard—but also if the balance of federal, state and tribal interests tips in favor of preemption. In conducting this balancing, we note that federal interests are very extensive and normally prevail over state interests in the regulation of timbering on Indian reservations." (internal citations omitted)).

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 32 of 44
Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 32 of 44

### III. The Fee Agreement does not satisfy § 410's approval and consent requirement.

Having determined that 25 U.S.C. § 410 applies to the Fee Agreement, the Court turns to whether the Fee Agreement complied with the statute's approval and consent requirement. The parties do not dispute that Mr. Givens "did not ask the government for its approval" of the Fee Agreement.[144] However, Mr. Givens asserts that the government nonetheless provided the "approval and consent" required under 25 U.S.C. § 410 "[a]s part of the settlement" in *Oenga v. United States*.[145] Mr. Givens contends that the government's signature on the Confidential Term Sheet, which stated that "[s]ome of lump sum and future rents will be paid to Givens Law firm," "constituted the 'approval and consent'" as required by § 410.[146] Mr. Givens further asserts that "the BIA reviewed the [Fee Agreement] between [Mr. Givens] and the Oenga heirs, under 25 C.F.R. §§ 115.400 et seq." and "BIA approved the net payment to a minor heir, after the payment of [Mr. Givens's] fee."[147] According to Mr. Givens, those actions by the BIA confirm that "the government necessarily consented to the fee agreement."[148]

The Court finds that the record does not support Mr. Givens's contention that the government provided its "approval and consent" of the Fee Agreement as

---

[144] Docket 105 at 7; *see also* Docket 96 at 17-18.

[145] Docket 105 at 36.

[146] Docket 105 at 36.

[147] Docket 105 at 37.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 33 of 44

Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 33 of 44

required by § 410. The Confidential Term Sheet executed by the United States and the Oenga heirs states only that "[s]ome of lump sum and future rents will be paid to Givens Law Firm and some to BIA for [the Oenga heirs'] benefit, as agreed to by [the Oenga heirs] and Givens Law Firm."[149] The Confidential Term Sheet does not expressly reference the Fee Agreement and reflects, at most, that the government "recognized that an agreement existed between [Mr. Givens] and the Oenga heirs."[150] The record contains no evidence that the government separately reviewed and approved the Fee Agreement itself before executing the Confidential Term Sheet. Moreover, as Mr. Delia correctly notes, the timing of the amendments to the Fee Agreement—which were executed after the Confidential Term Sheet and materially alter the payment terms—further undermines any assertion that the government approved the terms of the Fee Agreement and its amendments by executing the Confidential Term Sheet.[151]

The BIA letter dated December 9, 2011 on which Mr. Givens relies also does not demonstrate the government's approval and consent to the Fee Agreement and, if anything, reflects the government's uncertainty regarding its reasonableness. The letter does not endorse, let alone approve, the Fee

---

[148] Docket 105 at 37.

[149] Docket 108-1 at 2.

[150] Docket 96-15 at 8.

[151] Docket 115 at 24.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 34 of 44

Case 3:23-cv-00121-SLG   Document 137   Filed 03/30/26   Page 34 of 44

Agreement's terms; rather, it expressly states that the "BIA is uncertain whether or not the [Fee Agreement] meets the standard for 'reasonableness' under Rule 1.5(a)" of the Model Rules of Professional Conduct.[152] The letter expresses particular concern "about the 25% of fees collected on future rents until 2038 because it does not appear that [Mr. Givens] will have to expend any time or labor to continue receiving that significant compensation."[153] It further observes that when converted to an hourly rate, Mr. Givens's "fees may be perceived by some as excessive when compared to rates typically charged in the relevant locality."[154] While the BIA ultimately "approved payment of the fees in the disbursement plan for the [minor Oenga heir's] account," the BIA's approval of a discrete transaction does not amount to the government's consent and approval of the Fee Agreement in its entirety between Mr. Givens and the Oenga heirs.[155]

---

[152] Docket 96-13 at 6.

[153] Docket 96-13 at 6.

[154] Docket 96-13 at 6.

[155] Docket 96-15 at 9. Mr. Delia highlights that the "United States has already refuted [Mr. Givens's] contentions that the [Fee Agreement] was approved" in *Givens v. Wallace Oenga*. Docket 96 at 33 (first citing Docket 96-15 at 8 ("The confidential terms sheet recognized that an agreement existed between [Mr. Givens] and the Oenga heirs regarding attorney's fees, but the United States did not approve the agreement between the two parties."); then citing Docket 96-15 at 9 ("BIA approved payment of the fees in the disbursement plan for the minor's account, but it did not purport to broadly approve the agreement between the Oenga heirs and [Mr. Givens]."); and then citing Docket 96-15 at 10 ("BIA denied [Mr. Givens's] request for automatic payments for the Oenga heirs' IIM accounts."). However, whatever weight, if any, the United States' statements in separate litigation may carry, the Court need not consider them to conclude that no approval and consent was provided here.

Mr. Delia also asserts that Mr. Givens was required to follow the procedures set forth in 25 C.F.R. §§ 115.601(b)- 615 "to request approval of certain contracts encumbering trust property, including allotment proceeds." Docket 96 at 33 n.94. Mr. Givens contends that "those regulations have no

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 35 of 44
Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 35 of 44

Accordingly, the Court finds that neither the Confidential Term Sheet nor the BIA's approval of the minor heir's disbursement to Mr. Givens constitutes the government's approval and consent of the Fee Agreement. Because § 410 applies to the Fee Agreement and the required approval and consent were not obtained, the Fee Agreement is unenforceable as a matter of law.[156]

## IV. Mr. Givens may pursue recovery under the doctrine of quantum meruit.

"Under the doctrine of quantum meruit, when a valid contract does not exist, a plaintiff is entitled to 'the reasonable value of the services rendered to the defendant.'"[157] Alaska courts "treat unjust enrichment and quantum meruit claims as essentially the same."[158] Therefore, to recover under quantum meruit, Mr. Givens must show that (1) he conferred a benefit upon Mr. Delia; (2) Mr. Delia

---

application here" because they outline procedural requirements when requesting the BIA to place a restriction or an encumbrance on an IIM account, and the Fee Agreement "is not a restriction or encumbrance on the Oenga heirs' IIM accounts." Docket 105 at 37-38. The Court need not resolve this issue, however, because Mr. Givens did not obtain the approval or consent required by § 410.

[156] Mr. Delia contends that the Fee Agreement is also unenforceable on public policy grounds because Mr. Givens's representation of the Oenga heirs "was rife with serious ethical violations." Docket 96 at 40-48. Mr. Givens asserts that "claim preclusion prevents [Mr. Delia] from relitigating before this Court the claim that Givens engaged in unethical and improper conduct in his representation of Delia and the other Oenga heirs" based on the Arbitration Decision. Docket 105 at 45. Mr. Givens states that "[a]lthough the focus of the [Arbitration Decision] was the reasonableness of Givens' fee, the Panel expressly considered Oenga's claims of unethical and improper conduct in that context. The Panel rejected those claims, and the Panel's decision was affirmed by a final judgment of the Alaska Superior Court." Docket 105 at 39-40. The Court need not reach whether the Fee Agreement is unenforceable as a matter of public policy because it has concluded that the Fee Agreement is unenforceable based on the statutory violation.

[157] *Romero v. Cox*, 166 P.3d 4, 9 (Alaska 2007) (quoting *Krossa v. All Alaskan Seafoods, Inc.,* 37 P.3d 411, 419 (Alaska 2001)).

[158] *Bennett v. Artus*, 20 P.3d 560, 563 (Alaska 2001).

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 36 of 44
Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 36 of 44

appreciated the benefit; and (3) Mr. Delia accepted and retained the benefit under circumstances making it inequitable for him to retain the benefit without paying Mr. Givens the value thereof.[159] Unjust enrichment, and therefore, quantum meruit, "is generally a question of fact,"[160] and Mr. Givens has the burden of proving the value of the benefits he conferred upon Mr. Delia.[161]

As an initial matter, Mr. Delia asserts that Mr. Givens has, at points, disclaimed reliance on quantum meruit and therefore waived any such claim.[162] Mr. Givens maintains that there has been no waiver and that he is entitled to additional compensation in an amount consistent with the Fee Agreement under quantum meruit.[163] In his Complaint, Mr. Givens requested that the Court grant him any other relief "as appears just."[164] Mr. Delia raised the issue of recovery under quantum meruit in his opening brief.[165] Mr. Givens addressed the argument that his "fee should be limited to reimbursement under quantum meruit" in his opposition, asserting that the Court should find the Fee Agreement enforceable

---

[159] *See id.; Beluga Mining Co. v. Alaska Dep't of Nat. Res.,* 973 P.2d 570, 579 (Alaska 1999).

[160] *Matter of Est. of Rodman*, 498 P.3d 1054, 1062–63 (Alaska 2021).

[161] *Bennett*, 20 P.3d at 563.

[162] Docket 115 at 31; Docket 105 at 46 ("[F]or the reasons stated above, the contingent fee agreement should not be found invalid, under 25 U.S.C. § 410. Accordingly, Givens' compensation should be under that agreement, not under the doctrine of quantum meruit.").

[163] Docket 120 at 18.

[164] Docket 1 at 14.

[165] Docket 96 at 48-52 ("Ray's estate is not entitled to the remedy of quantum meruit because the Oenga heirs already paid Ray a reasonable amount of fees.").

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 37 of 44

Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 37 of 44

and grant recovery pursuant to the contract.[166] Then, in his opening brief for his cross motion for summary judgment, Mr. Givens asserted that while he "should be paid by Delia under the terms of the fee agreement," "if the Court rules otherwise, [he] does not waive his claim to payment under quantum meruit," and "the arbitrators' finding that [his] fee was reasonable should guide the Court in determining fair compensation."[167] Under these circumstances, the Court finds no waiver. Mr. Givens has advanced quantum meruit as an alternative basis for recovery in the event the Fee Agreement is found to be unenforceable. That he primarily argued for enforcement of the Fee Agreement does not constitute waiver of this alternative theory of recovery.

Next, Mr. Delia asserts that no further recovery is warranted under quantum meruit because Mr. Givens has already received more than reasonable compensation.[168] He points to the more than $7 million already paid as evidence that Mr. Givens has been compensated at a rate well above what would be considered reasonable, particularly in light of the absence of contemporaneous billing records.[169] Mr. Givens maintains that he is entitled to further recovery, asserting that the value of his services is reflected in the substantial recovery he

---

[166] Docket 105 at 46.

[167] Docket 120 at 18.

[168] Docket 96 at 50-52.

[169] Docket 96 at 50-52.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 38 of 44

Case 3:23-cv-00121-SLG    Document 137    Filed 03/30/26    Page 38 of 44

obtained for the Oenga heirs and maintains that payment to his estate of future rents—whether measured by the Fee Agreement or in quantum meruit—remains reasonable under the circumstances.[170] The parties' competing positions underscore that the determination of the reasonable value of Mr. Givens's services—and whether the payments already made fully compensate that value, or whether additional recovery is necessary to prevent unjust enrichment—turns on disputed issues of fact. Accordingly, that determination cannot be resolved on summary judgment.

### V.     AS 13.16.645 does not apply to Mr. Givens's claims.

The parties dispute whether AS 13.16.645 limits Mr. Givens's ability to recover fees from Mr. Delia's inherited allotment interest. AS 13.16.645 provides in full:

> Unless previously adjudicated in a formal testacy proceeding or in a proceeding settling the accounts of a personal representative or otherwise barred, the claim of any claimant to recover from a distributee who is liable to pay the claim, and the right of any heir or devisee, or of a successor personal representative acting in their behalf, to recover property improperly distributed or the value of it from any distributee is forever barred at the later of (1) three years after the decedent's death; or (2) one year after the time of distribution of it. This section does not bar an action to recover property or value received as the result of fraud.

Mr. Delia asserts that any claim to payments tied to the interest he inherited from his brother in 2013, after the Fee Agreement was first executed, is time-

---

[170] Docket 129 at 29.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 39 of 44
Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 39 of 44

barred because Mr. Givens failed to file a claim in the probate proceeding within the limitations period under AS 13.16.645.[171] Mr. Givens contends that the statute applies only to claims against distributions made through probate, not to ongoing obligations tied to future rent payments, and that Mr. Delia remains bound by the fee agreements he signed after acquiring the larger interest.[172]

As Mr. Givens highlights, by its terms, the statute applies to claims seeking to recover property that has already been distributed from a decedent's estate to a distributee.[173] It does not govern claims arising outside of probate or directed at future payments. Here, Mr. Givens does not seek to recover assets previously distributed to Mr. Delia through a probate proceeding. Rather, he seeks payment of fees allegedly owed from future rent proceeds. Because those claims do not involve the recovery of estate distributions, AS 13.16.645 does not apply.

## VI. Affirmative Defenses

Mr. Givens seeks summary judgment on several of Mr. Delia's affirmative defenses. First, Mr. Givens asserts that five of Mr. Delia's affirmative defenses are boilerplate and unsupported by any facts or legal argument.[174] When a plaintiff

---

[171] Docket 125 at 30-32.

[172] Docket 120 at 13-15; Docket 129 at 7-8.

[173] Docket 129 at 7.

[174] Docket 120 at 15 ("They include the following affirmative defenses: (1) The Plaintiff fails to state a claim upon which relief may be granted; (2) The Plaintiff's claims are barred, in whole or in part, by the doctrines of issue preclusion/collateral estoppel and/or res judicata; (3) The Plaintiff's claims are barred, in whole or in part, by the statute of limitations and/or the equitable doctrine of laches; (4) The Plaintiff has failed to adequately mitigate damages, if any; and (7) The Defendant fully performed all obligations under the Contingency Fee Contract and owes the

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 40 of 44

Case 3:23-cv-00121-SLG   Document 137   Filed 03/30/26   Page 40 of 44

moves for summary judgment and the defendant contends that an affirmative defense precludes liability, the defendant must designate specific facts showing a genuine dispute.[175] Here, Mr. Delia does not adequately identify specific facts or evidence to support any of these five affirmative defenses, instead asserting that discovery is ongoing and that he may later develop support for these defenses.[176] This is insufficient to defeat summary judgment. Mr. Delia's failure to identify sufficient evidentiary bases for these boilerplate defenses warrants their dismissal. Accordingly, summary judgment is granted in favor of Mr. Givens on these five affirmative defenses.

Next, Mr. Givens asserts that three of Mr. Delia's affirmative defenses—each premised on Mr. Givens's alleged ethical violations—are barred by claim

---

Plaintiff nothing.") (citing Docket 7 at 10-11); Docket 129 at 20-23.

[175] *See Celotex Corp.*, 477 U.S. at 323-24; *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (Courts "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

[176] Docket 125 at 32.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 41 of 44

Case 3:23-cv-00121-SLG   Document 137   Filed 03/30/26   Page 41 of 44

preclusion.[177] The two defenses relating to the Fee Agreement[178] are moot in light of the Court's determination that the Fee Agreement is unenforceable. With respect to the remaining defense of unclean hands,[179] summary judgment is denied without prejudice. The Arbitration Decision expressly limited its scope to the question of whether the fee was reasonable, which suggests that broader allegations of attorney misconduct were not squarely before the panel.[180] At the same time, the record indicates that at the fee arbitration, Mr. Oenga, Jr. raised concerns about Mr. Givens's conduct in connection with the fee,[181] and the panel declined to refer the matter to bar counsel for disciplinary proceedings.[182] On this record, the Court cannot resolve as a matter of law the preclusive effect of the Arbitration Decision on the unclean hands affirmative defense. Accordingly,

---

[177] Docket 120 at 16 ("They include the following affirmative defenses: (5) The Plaintiff's claims are barred by his own actions and the equitable doctrine of unclean hands. On information and belief, the Plaintiff committed serious breaches of his ethical and professional duties while purporting to represent the Defendant.; (8) The Contingency Fee Contract, as amended, cannot be enforced because it violates public policy. Among other things, the Contingency Fee Contract, as amended, imposes an unreasonable fee for attorney services in violation of the applicable rules of professional conduct governing attorneys and the Plaintiff's ethical duties.; and (10) The Contingency Fee Contract, as amended, cannot be enforced because it was entered into as a result of coercion, undue influence, or duress. On information and belief, the Plaintiff intimidated the Defendant and other Oenga heirs, including through physical acts, to sign the attorney fee agreements.") (citing Docket 7 at 10-11).

[178] Docket 7 at 11 ¶¶ 8, 10.

[179] Docket 7 at 10 ¶ 5.

[180] Docket 35-1 at 8.

[181] Docket 129 at 17-19.

[182] Docket 35-1 at 15.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 42 of 44

Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 42 of 44

summary judgment on the unclean hands defense is denied without prejudice to a renewed motion addressing whether the Arbitration Decision should have a preclusive effect on this affirmative defense.

Finally, Mr. Givens seeks summary judgment on Mr. Delia's affirmative defense asserting "full relief cannot be granted without joinder of the United States as a defendant in this action, and this Court lacks subject matter jurisdiction to join the United States based on sovereign immunity."[183] This defense fails as a matter of law. The United States has participated in this action as amicus curiae and has not asserted that it is a required party whose absence precludes adjudication.[184] Nor has Mr. Delia demonstrated that complete relief cannot be accorded among the existing parties or that the United States claims a legally protected interest that would be impaired in its absence. Accordingly, summary judgment is granted to Mr. Givens on this affirmative defense.

## CONCLUSION

IT IS HEREBY ORDERED:

- Mr. Delia's Motion for Summary Judgment at Docket 96 is **GRANTED IN PART** and **DENIED IN PART**.
    - ○ Summary judgment is **GRANTED** to Mr. Delia as to the unenforceability of the Fee Agreement under U.S.C. § 410.

---

[183] Docket 7 at 11 ¶ 5; Docket 120 at 17.

[184] Docket 64.

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 43 of 44
Case 3:23-cv-00121-SLG    Document 137    Filed 03/30/26    Page 43 of 44

- o Mr. Delia's Motion for Summary judgment is **DENIED** in all other respects.

- Mr. Givens's Cross-Motion for Summary Judgment at Docket 120 is **GRANTED IN PART** and **DENIED IN PART**.

  - o Summary judgment is **GRANTED** to Mr. Givens as to the inapplicability of AS 13.16.645 and as to Mr. Delia's affirmative defenses pled in paragraphs 1, 2, 3, 4, 5, and 7 of his Answer.

  - o Mr. Givens's Cross-Motion for Summary judgment is **DENIED** in all other respects.

- Mr. Givens's claim for the recovery of additional attorney's fees under a theory of quantum meruit remains for further proceedings.

IT IS SO ORDERED.

DATED this 30th day of March, 2026, at Anchorage, Alaska.

_/s/ Sharon L. Gleason_
UNITED STATES DISTRICT JUDGE

Case No. 3:23-cv-00121-SLG, *Givens v. Delia*
Order on Cross Motions for Summary Judgment
Page 44 of 44

Case 3:23-cv-00121-SLG     Document 137     Filed 03/30/26     Page 44 of 44