Andrew Erickson, Alaska Bar No. 1605049
Matt Mead, Alaska Bar No. 0711095
LANDYE BENNETT BLUMSTEIN LLP
701 West Eighth Avenue, Suite 1100
Anchorage, AK 99501
(907) 276-5152
andye@lbblawyers.com
mattm@lbblawyers.com

*Attorneys for Defendant Joseph Delia*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARIA M. GIVENS, as Personal Representative of the Estate of Raymond C. Givens, <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH DELIA, <br><br> Defendant. | <br><br><br><br><br><br><br><br> Case No. 3:23-cv-00121-SLG |

## DEFENDANT'S MOTION FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38 and the Seventh Amendment to the United States Constitution, Defendant Joseph Delia respectfully moves for an order confirming his right to a trial by jury on the Plaintiff's claim for money damages under the theory of quantum meruit.

Case 3:23-cv-00121-SLG    Document 150    Filed 05/19/26    Page 1 of 26

**INTRODUCTION**

This case arises from a contract dispute. Attorney Raymond C. Givens sued his former client, Mr. Delia, to enforce the terms of a contingency fee agreement.[1] The complaint sought $102,227.78 in damages and an order requiring Mr. Delia to make additional payments to Mr. Givens each year until 2036.[2] Mr. Delia denied that Mr. Givens was entitled to any relief and timely requested a jury trial on all issues so triable by right.[3]

On March 30, 2026, this Court granted in part Mr. Delia's motion for summary judgment on his defense that the Fee Agreement was an illegal contract. This Court concluded that the Fee Agreement had not been approved by the Secretary of the Interior as required by 25 U.S.C. § 410.[4] Thus, the "Fee Agreement is unenforceable as a matter of law."[5]

---

[1]   Docket No. 1 at 2. Mr. Delia follows this Court's example by referring to "Mr. Givens to include both Mr. Raymond C. Givens and, following his death, the personal representative of his estate, Ms. Maria M. Givens." Docket No. 137 at 1 n.1.

[2]   Docket No. 1 at 12-14.

[3]   Docket No. 7; Docket No. 8.

[4]   Docket No. 137 at 18. "No money accruing from any lease or sale of lands held in trust by the United States for any Indian shall become liable for the payment of any debt of, or claim against, such Indian . . . except with the approval and consent of the Secretary of the Interior." 25 U.S.C. § 410.

[5]   Docket No. 137 at 36.

Case 3:23-cv-00121-SLG   Document 150   Filed 05/19/26   Page 2 of 26

However, this Court also determined that Mr. Givens had not waived his claim to recover the "reasonable value of his services" to Mr. Delia under the theory of quantum meruit.[6] "[T]o recover under quantum meruit, Mr. Givens must show that (1) he conferred a benefit upon Mr. Delia; (2) Mr. Delia appreciated the benefit; and (3) Mr. Delia accepted and retained the benefit under circumstances making it inequitable for him to retain the benefit without paying Mr. Givens the value thereof."[7] Importantly, this Court observed that "quantum meruit 'is generally a question of fact.' Mr. Givens has the burden of proving the value of the benefits he conferred upon Mr. Delia."[8]

As Mr. Delia previewed in his summary judgment briefs, the facts necessary for Mr. Givens to establish a claim for quantum meruit are disputed in this case.[9] Because Mr. Givens admitted that he "didn't keep good time records" and "just quit keeping time records all together,"[10] he will have to come up with

---

[6] Docket No. 137 at 36 ("Under the doctrine of quantum meruit, when a valid contract does not exist, a plaintiff is entitled to 'the reasonable value of the services rendered to the defendant.' " (quoting *Romero v. Cox*, 166 P.3d 4, 9 (Alaska 2007))).

[7] Docket No. 137 at 36-37 (citing *Bennett v. Artus*, 20 P.3d 560, 563 (Alaska 2001) and *Beluga Mining Co. v. Alaska Dep't of Nat. Res.*, 973 P.2d 570, 579 (Alaska 1999)).

[8] Docket No. 137 at 37 (quoting *Estate of Rodman*, 498 P.3d 1054, 1062-63 (Alaska 2021)).

[9] *See* Docket No. 115 at 11-13; Docket No. 125 at 12-22.

[10] Docket No. 98-1 at 4 (SEALED).

some other way to prove the "reasonable value of his services."[11] Mr. Givens must also convince the fact-finder that the circumstances of his representation of Mr. Delia—including a pattern of ethical violations, conflicts of interest, and other misconduct (e.g., Mr. Givens drafted and enforced an illegal Fee Agreement)—do not make an award under quantum meruit unjust.[12] Each of those factual issues must be resolved after a trial.[13]

This Court should conclude that Mr. Delia has a Seventh Amendment right to a jury trial on the quantum meruit claim. To properly evaluate the doctrine of quantum meruit, it is necessary to understand its common law roots. Under English law, quantum meruit was a species of the action for

---

[11] *See Seward Prop., LLC v. Arctic Wolf Marine, Inc.,* No. 3:18-cv-00078-SLG, 2022 U.S. Dist. LEXIS 218084 at 5 (D. Alaska Dec. 5, 2022) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983))).

[12] *Alaska Native Tribal Health Consortium v. Settlement Funds Held for E.R.*, 84 P.3d 418, 435 n.56 (Alaska 2004) ("In Alaska, the general rule has been that once a conflict of interest or other ethical violation has been established, the attorney is prohibited from collecting fees for his or her services." (quoting *In re Estate of Brandon*, 902 P.2d 1299, 1317 (Alaska 1995))).

[13] *See Smith v. Johnson*, (1699) 88 Eng. Rep. 1252 (K.B.) 1252; 12 Mod. 187 ("[F]or who can tell what a man deserves until it be tried."). *See* Appendix for reprints of English cases and treatises referenced herein.

*Givens v. Delia*
Defendant's Motion for Jury Trial

Case No. 3:23-cv-00121-SLG
Page 4 of 26

*assumpsit* (the "legal panacea of modern times").[14] Although Lord Mansfield

commented that quantum meruit arose "from the ties of natural justice"

founded in "the equity of the plaintiff's case,"[15] the claim was distinctly an ac-

tion "at law."[16] Quantum meruit claims were created by English common law

courts and tried by juries. The Seventh Amendment preserved the jury right

---

[14] *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So.2d 383, 386 (Fla. Dist. Ct. App. 1997) ("[A]ll implied contract actions were part of the action of assumpsit, which was an action at law under the common law."); *Georgia v. Brailsford*, 2 U.S. (Dall.) 415, 417, 1 L. Ed. 483, 2 Dall. 415 (1793) (Iredell, J.).

[15] *Partipilo v. Hallman*, 510 N.E.2d 8, 11 (Ill. App. Ct. 1987) ("The theory on which the plaintiff in this suit seeks money damages, unjust enrichment, sometimes referred to as restitution, a contract implied in law, quasi-contract, or an action in assumpsit, is the product of a long tradition in law and is an action at law. The confusion with equity emanates from the decision of the King's Bench in 1760 in the case of *Moses v. Macferlan*, (1760) 2 Burr. 1005, 97 Eng. Rep. 976, where Lord Mansfield stated that the defendant's obligation came 'from the ties of natural justice' founded in 'the equity of the plaintiff's case' . . . [T]he statement concerning the action of quasi-contract being equitable has been repeated many times, but merely refers to the way in which a claim should be approached 'since it is clear that the action is at law and the relief given is a simple money judgment.' " (quoting 1 G. Palmer, Restitution § 1.2, at 7 (1978) (internal citations omitted)); *accord Jones v. Mackey Price Thompson & Ostler*, 355 P.3d 1000, 1015-16 (Utah 2015); *Realmark Devs. v. Ranson*, 588 S.E.2d 150, 153 (W. Va. 2003); *Nehi Beverage Co. v. Petri*, 537 N.E.2d 78, 85 (Ind. Ct. App. 1989).

[16] *See infra* notes 26-38 and accompanying text.

---

*Givens v. Delia*         Case No. 3:23-cv-00121-SLG
Defendant's Motion for Jury Trial      Page 5 of 26

Case 3:23-cv-00121-SLG  Document 150  Filed 05/19/26  Page 5 of 26

for that claim in the United States.[17] Thus, this Court should issue an order confirming that Mr. Delia is entitled to a jury trial in this case.[18]

## LEGAL STANDARDS

In this diversity action, "the right to a jury trial in the federal courts is to be determined as a matter of federal law."[19] Whether Alaska courts characterize the nature of a quantum meruit claim as legal or equitable is irrelevant. This Court must determine whether Mr. Delia is entitled to a jury trial by examining his federal constitutional rights.[20]

---

[17]  U.S. Const. amend. VII ("In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."); *see Capital Traction Co. v. Hof*, 174 U.S. 1, 8 (1899) ("Beyond all question, the common law here alluded to is not the common law of any individual State, (for it probably differs in all), but it is the common law of England, the grand reservoir of all our jurisprudence." (quoting *United States v Wonson*, 1 Gall. 5, 28 F. Cas. 745, 750 (CC. Mass. 1812) (No. 16,750) (Story, C.J.))).

[18]  *See Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 501 (1959) ("Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury should be scrutinized with the utmost care." (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935))).

[19]  *Simler v. Conner*, 372 U.S. 221, 222 (1963); *see also Barry v. Shell Oil Co.*, 175 F. Supp. 3d 1147, 1149 (D. Alaska 2016) ("Whether a party is entitled to a jury trial in federal court is a question of law.") (citing *S.E.C. v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993)).

[20]  *Simler*, 372 U.S. at 222 (noting that while "the substantive dimension of the claim asserted finds its source in state law . . . the characterization of that state-created claim as legal or equitable for purposes of [deciding] whether a right to jury trial is indicated must be made by recourse to federal law").

*Givens v. Delia*  
Defendant's Motion for Jury Trial

Case No. 3:23-cv-00121-SLG  
Page 6 of 26

Under Federal Rule of Civil Procedure 38, the "right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by federal statute—is preserved to the parties inviolate." The Seventh Amendment provides, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." "Suits at common law" refers to "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered."[21] The "thrust of the Amendment was to preserve the right to jury trial as it existed in 1791."[22]

The Supreme Court has established a two-part test to determine whether the Seventh Amendment provides a right to a jury trial on a claim.[23] First, the Court must compare the claim to "18th Century actions brought in the courts of England prior to the merger of the courts of law and equity."[24]

---

[21] *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989) (quoting *Parson v. Bedfort*, 28 U.S. 433 (1830) (emphasis in original)); *see also United States v. Wonson*, 1 Gall. 5, 28 F. Cas. 745, 750 (CC. Mass. 1812) (No. 16,750) (Story, C.J.).

[22] *Granfinanciera*, 492 U.S. at 41-42 (quoting *Curtis v. Loether*, 415 U.S. 189, 193 (1974)).

[23] *Id.* at 42

[24] *Id.* (quoting *Tull v. United States*, 481 U.S. 412, 417-18 (1987)).

Second, the Court must "examine the remedy sought and determine whether it is legal or equitable in nature."[25]

## ARGUMENT

## I. Quantum meruit claims were decided by juries in English common law courts in 1791.

A brief primer on English law is helpful to set the stage for this analysis. In 1215, the Magna Carta declared a right of the English people to have judgments rendered by juries of their peers rather than the king alone.[26] Subsequently, judges appointed by the king established non-royal courts of "common pleas" to decide cases "at law."[27] The "common law" courts adhered to a rigid system in which only certain claims that were recognized based on their own precedents could be heard.[28] The quintessential feature of the common law courts was that they could only award damages.[29]

---

[25]     *Id.*

[26]     *See* W. S. Holdsworth, I A History of English Law 59-61 (3d ed. 1922).

[27]     *See* James W. Eaton, Handbook of Equity Jurisprudence 5 (Throckmorton 2d ed. 1923). The common law courts consisted mainly of the Court of King's Bench (K.B.), Court of Exchequer (Exch.), and Court of Common Pleas (C.P.).

[28]     *Id.* at 11; Holdsworth, *supra* note 26 at 456.

[29]     Holdsworth, *supra* note 26 at 456.

At the same time, the king retained his prerogative to grant other forms of relief to applicants based on his royal discretion.[30] The king delegated that prerogative to the chancellor, who presided over the royal "courts of the chancery" on any matters where the common law courts failed to provide an adequate remedy.[31] Thus, England developed a bifurcated legal system in which common law courts heard claims "at law" and chancery courts heard claims "in equity."

Modern concepts of contract law were invented during the late Middle Ages in a period of intense rivalry and competition between the common law and chancery courts.[32] Initially, claims at law consisted only of actions "in rem," or disputes concerning property.[33] A claim to enforce a simple promise generally could not be brought at law and instead was subject to the unpredictable discretion of the chancellors.[34] However, the common law courts eventually embraced and expanded "contract law" based on a new type of claim they developed called "*assumpsit*":

---

[30] *Id.*

[31] *See* Eaton, *supra* note 27 at 7-8; Holdsworth, *supra* note 26 at 456.

[32] Holdsworth, *supra* note 26 at 455.

[33] *See* James B. Ames, Lectures on Legal History 76 (1913).

[34] *See* Holdsworth, *supra* note 26 at 455 ("The action of covenant was only available if the contract was in writing and under seal; and the action of debt applied only to certain kinds of executed contract.").

From the middle of the fourteenth century onwards, they so developed a form of the action of trespass on the case, called the action of *assumpsit*, that it became an adequate remedy for the breach of simple contracts; and, in and through this action, the common law theory that simple contract is an agreement based on consideration was developed.[35]

Over time, the common law courts evolved the action of *assumpsit* to include claims based on implied (quasi-) contracts and to recover the value of services rendered (quantum meruit).

In 1610 in the case of *Warbrooke v. Griffin* it was recognized that the innkeeper could sue for the value of the entertainment which he had provided, and thus was introduced the idea that, when a promise to pay can be implied, assumpsit can be brought on a quantum meruit.

This principle was soon accepted; and Shepard in his book on *Actions on the Case* cites a case of the year 1632 for the general proposition that, "If one bid me do work for him, and do not promise anything for it; in that case the law implieth the promise, and I may sue for the wages."[36]

---

[35]    Holdsworth, *supra* note 26 at 456.

[36]    W. S. Holdsworth, III A History of English Law 446-47 (3d ed. 1923) (citing *Warbrook v. Griffin*, (1609), 123 Eng. Rep. 927 (C.P.) 927; 2 Brownlow 254; S.C. Moore 876-877).

Thus, the doctrine of quantum meruit was created by the common law courts as an action "at law."[37] *Assumpsit* "made unnecessary much of the jurisdiction which, in the Middle Ages, equity had exercised over contracts. Similarly, the admission of *assumpsit* on a quantum meruit rendered unnecessary a certain class of applications to the Chancellor."[38] A plaintiff without a contract who sought to recover the value of his services had an adequate remedy at law; he could bring a claim for "*assumpsit* on a quantum meruit" in the common law courts, and if a jury found in his favor, he would be awarded a money judgment.[39]

---

[37]    *See id.*

[38]    W. S. Holdsworth, Blackstone's Treatment of Equity, 43 Harv. L. Rev. 1, 14 n.54 (1929).

[39]    *See id.*

There are myriad cases from the 17th through 18th Centuries where common law courts decided quantum meruit claims as actions at law.[40] Notably, in one English case that was decided around the same time as the Seventh Amendment, the common law Court of King's Bench affirmed a jury verdict denying a quantum meruit claim based on the value of professional services that had been performed with "gross negligence."[41]

In *Denew v. Daverell*, a leaseholder hired a professional auctioneer to sell a leasehold house in London.[42] The auctioneer held the sale but failed to include a provision in the sale conditions specifying that the leaseholder would not be required to show the buyer proof of the lessor's title. When the buyer demanded such proof—and it could not be provided—the buyer backed out of

---

[40]    *See, e.g.*, *Frathers v. Bryan*, (1747) 95 Eng. Rep. 561 (K.B.) 561; 1 Wils. K.B. 180 (affirming jury verdict for plaintiff on quantum meruit claim for rent due); *Snow v. Firebrace*, (1701) 91 Eng. Rep. 1309 (K.B.); S.C. Holt, 609; Salk. 557; 12 Mod. 434 (affirming jury verdict for plaintiff on claim for "*assumpsit* on a quantum meruit for sufficient, meat, drink, washing, and lodging"); *Gatehouse v. Row*, (1697) 87 Eng. Rep. 671 (K.B.) 671; S.C. 2 Salk. 663; S.C. Comb. 404; S.C. Carth. 379; S.C. 1 Ld. Ray. 145 (affirming jury verdict "in an action on the case upon an *indebitatus assumpsit and quantum meruit*, brought by Gatehouse for meat, drink, etc."); *How v. Norton*, (1677) 83 Eng. Rep. 358 (K.B.) 358; S.C. 1 Sid. 272, 150; 2 Keb. 8; 1 Danv. 29, 50; 1 Lev. 180 (affirming jury verdict for plaintiff on quantum meruit claim for use of lands); *Warbrook v. Griffin*, (1609), 123 Eng. Rep. 927 (C.P.) 927 (recognizing innkeeper could sue under quantum meruit for value of services provided without contract).

[41]    *Denew v. Daverell*, (1813) 170 Eng. Rep. 1442 (K.B.) 1442; 3 Camp. 449.

[42]    *Id.*

the sale. The auctioneer then sued his client, the leaseholder, to recover a 2.5-percent commission on the aborted sale under the theory of quantum meruit.[43]

The case was tried before a jury in the common law courts.[44] The leaseholder's defense centered on his argument that the auctioneer didn't deserve compensation because there was negligence in conducting the sale. The leaseholder called several witnesses "who stated that it has been the constant usage of auctioneers . . . to insert a proviso in the [sale conditions] that the vendor shall not be called upon to show the title of the landlord."[45] On the other side, the auctioneer insisted that was no defense to a claim for quantum meruit because he had done the work and performed the sale, and "more especially as the defendant himself had seen and approved of the [sale conditions] under which the house was sold."[46] The jury rendered a verdict for the leaseholder, denying the auctioneer's claim for quantum meruit damages.

On appeal, the King's Bench affirmed the jury verdict. Lord Chief Justice Ellenborough stated, "where the plaintiff proceeds, as here, upon a quantum meruit, I have no doubt that the just value of his services may be appreciated,"

---

[43]  *Id.*

[44]  *Id.* at 1443.

[45]  *Id.*

[46]  *Id.*

but "[i]n the present case, the plaintiff appears to have been guilty of gross negligence, and the defendant has suffered an injury instead of deriving any benefit from employing him."[47] In an apt observation regarding agreements for professional services, Lord Ellenborough noted,

> It is no answer that the [sale conditions] were shown to him, and that he made no objection to them. I pay an auctioneer, as I do any other professional [], for the exercise of skill on my behalf which I do not myself possess; and I have a right to the exercise of such skill as is ordinarily possessed by risen of that profession or business. If from his ignorance or carelessness he leads me into mischief, he cannot ask for a recompense, although from a misplaced confidence I followed his advice without remonstrance or suspicion.[48]

Thus, *Denew v. Daverell* stands not only for the proposition that common law courts decided quantum meruit claims, but also that defendants were entitled to put forward evidence that no award of damages should be given at all under the circumstances of the plaintiff's performance. Alaska courts have incorporated that principle into the modern law of quantum meruit.[49] The

---

[47] *Id.*

[48] *Id.*

[49] *See* Docket No. 137 at 37.

burden is on the plaintiff to prove that the circumstances justify compensation

for the "reasonable value" of services rendered.[50]

In the United States, courts have widely and repeatedly recognized that

quantum meruit claims are actions "at law," which are covered by the Seventh

Amendment jury trial right.

> Our courts have used the phrases quasi-contract, con-
> tract implied-in-law, constructive contract, and quan-
> tum meruit synonymously. These are legal fictions
> providing a remedy to prevent unjust enrichment,
> thereby promoting justice and equity. But, they are le-
> gal fictions created by courts of law. They were triable
> at law and not in equity, thus one is entitled to jury
> trial upon them.[51]

---

[50]   *See Bennett v. Artus*, 20 P.3d 560, 563 (Alaska 2001).

[51]   Corbin on Contracts § 1.20 n.8 (rev. ed. 2020) (quoting *Nehi Beverage Co. v. Petri*, 537 N.E.2d 78, 85 (Ind. Ct. App. 1989)). *See also Austin v. Shalala*, 994 F.2d 1170, 1176 (5th Cir. 1993) ("A suit in quasi-contract falls under the common law writ of general assumpsit . . . In England in 1791, these actions were at law and were tried to a jury."); *Jones v. Mackey Price Thompson & Ostler*, 355 P.3d 1000, 1015 (Utah 2015) ("These claims [for monetary relief under quantum meruit] are claims at law in every sense, first because they seek simple monetary relief, and second because they are historically brought in the separate law courts." (quoting 1 Dan B. Dobbs, Law of Remedies § 2.6(3) (2d ed. 1993))); *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 81 Cal. Rptr. 503, 508 (Cal. Ct. App. 2008) ("[Q]uantum meruit is an action at law and thus carries with it the right to a jury trial."); *Auburn Mech., Inc. v. Lydig Constr., Inc.*, 951 P.2d 311, 317 (Wash. Ct. App. 1998) ("Most authorities agree that quasi contract, while invoking equitable principles, is a legal remedy.").

For example, in *Skepnek v. Roper & Twardowsky, LLC,* the federal district court for the District of Kansas concluded that a jury trial was required to decide a quantum meruit claim for attorney's fees.[52] The plaintiffs were attorneys who sought "to recover the value of legal services performed for defendants in the absence of an enforceable contract."[53] After determining that "actions in quasi-contract grew out of the common law writ of assumpsit and, therefore, are actions at law,"[54] the district court held that "plaintiffs' quantum meruit claim is an action at law and seeks legal relief. It is therefore triable to a jury."[55]

Similarly, in *SJS Mechanical Services LLC v. Walsh Construction Co. II, LLC*, the United States Bankruptcy Court for the Western District of Washington concluded that a quantum meruit claim must be tried by jury.[56] The plaintiff brought a quantum meruit claim "for compensation for the fair and reasonable value of its work, material, and services."[57] The bankruptcy court

---

[52]    2015 U.S. Dist. LEXIS 118496 (D. Kan. Sept. 4, 2015).

[53]    *Id.* at * 5.

[54]    *Id.*

[55]    *Id.* at * 7 (citing U.S. Const. amend. VII; *Fischer Imaging Corp. v. Gen. Elec. Co.*, 187 F.3d 1165, 1168 (10th Cir. 1999)).

[56]    2024 Bankr. LEXIS 2168 (Bankr. W.D. Wash. Sept. 17, 2024).

[57]    *Id.* at * 10.

noted correctly that "[h]istorically, claims for amounts due based on quantum meruit were considered actions for assumpsit. Actions for assumpsit were legal in nature in 18th-century actions brought in the courts of England."[58] Thus, the bankruptcy court concluded that the plaintiff had "a Seventh Amendment right to a jury trial on its claim for quantum meruit."[59]

The Eleventh Circuit reached the same conclusion. In *Hughes v. Priderock Capital Partners, LLC,* the Eleventh Circuit affirmed the district court's decision to submit a quantum meruit claim to a jury.[60] The plaintiff had sued an investment firm for unpaid work performed without an explicit contract.[61] After the investment fund conceded liability, the "only question remaining was the amount of damages" that the plaintiff was entitled to.[62]

In *Hughes*, the federal district court for the Southern District of Florida submitted the quantum meruit claim to a jury, which rendered a $1,250,000

---

[58]   *Id.* (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 43 (1989); *see also Healy-Tibbits Constr. Co. v. Hawaiian Indep. Refinery, Inc.*, 673 F.2d 284, 286 (9th Cir. 1982) ("Suits for extra work performed under a contract and for quantum meruit were considered to be actions in assumpsit.").

[59]   *Id.*

[60]   812 Fed. Appx. 828 (11th Cir. 2020).

[61]   *Id.* at 830.

[62]   *Id.* at 830-31.

verdict for the plaintiff.[63] The investment fund appealed, arguing that the district court should have decided the claim following a bench trial. However, the Eleventh Circuit affirmed, concluding that it was not error to hold that the plaintiff had a Seventh Amendment right to a jury trial.[64]

First, the Eleventh Circuit analyzed the nature of the quantum meruit action. "The action has a somewhat confusing history, compounded by the fact that courts 'have synonymously used a number of different terms' to refer to it."[65] But the court concluded that "whatever the terminology, the action was at law and not in equity, thereby triable by jury."[66]

Second, the Eleventh Circuit examined "the remedy sought" to determine whether it was equitable or legal. "What [the plaintiff] actually sought— indeed, what the parties specifically agreed the measure of damages would be—was the value of the benefit [the investment firm] received from [plaintiff's] services."[67] The court concluded that "type of relief is legal, not equitable

---

[63]    *Id.* at 830-32.

[64]    *Id.* at 836.

[65]    *Id.* at 833 (quoting *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So.2d 383, 386 (Fla. Dist. Ct. App. 1997)).

[66]    *Id.* at 834 (quoting Corbin on Contracts § 1.20 n.8 (rev. ed. 2020)).

[67]    *Id.* at 835.

in nature."[68] Thus, the plaintiff "had a right to a jury trial under the Seventh Amendment."[69]

The overwhelming weight of authorities hold that quantum meruit is an action at law and the Seventh Amendment preserves a jury trial right for that claim. In fact, Mr. Delia is not aware of any decision in which a court examined the pre-1791 English law and concluded that a quantum meruit claim like the one asserted here was not an action "at law." Notably, in a recent unpublished Ninth Circuit opinion, the court held it was not error to deny a request for a jury trial on a claim for quantum meruit.[70] Without adhering to *Granfinanciera* or analyzing any history of quantum meruit claims, the Ninth Circuit cursorily stated that "[r]egardless of whether a quantum meruit claim is legal or equitable, the trial concerned only the reasonable amount of attorneys' fees, which is an equitable claim that does not carry a Seventh Amendment right to a jury

---

[68] *Id.* (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)).

[69] *Id.* at 836.

[70] *Finato v. Fink*, 803 Fed. Appx. 84, 89 (9th Cir. 2020).

*Givens v. Delia*                                      Case No. 3:23-cv-00121-SLG
Defendant's Motion for Jury Trial                              Page 19 of 26

trial."[71] However, that unpublished opinion is not binding, and if the question were squarely presented again, the Ninth Circuit would likely apply *Granfinanciera*'s two-part test[72] and conclude that Mr. Delia does have a Seventh Amendment right to a jury trial on Mr. Givens' claim for quantum meruit.

## II.     The remedy sought by Mr. Givens is an award of money damages, which is legal in nature.

The second part of the *Granfinanciera* two-part test requires this Court to "examine the remedy sought and determine whether it is legal or equitable."[73] The Supreme Court has noted that the second part "is more important than the first."[74]

Mr. Givens brought this lawsuit as a breach of contract action seeking payments from Mr. Delia. Count I sought a declaratory judgment that the Fee

---

[71]     *Id*. Neither of the cases cited in the unpublished opinion support the court's conclusion regarding a quantum meruit claim. First, in *Hale v. U.S. Tr.*, 509 F.3d 1139 (9th Cir. 2007), the Ninth Circuit concluded that an attorney's fees award determined by a bankruptcy court under 11 U.S.C. § 329(b) did not violate the Seventh Amendment because the reasonableness of a debtor's attorney's fees is integrated into bankruptcy law, which is a public regulatory scheme rather than a common law action. *Id*. at 1146-47 (citing *In re Wood*, 210 U.S. 246, 250 (1908)). Second, in *Schmidt v. Zazzara*, 544 F.2d 412 (9th Cir. 1976), the Ninth Circuit concluded that it was not error for a district court to award attorney's fees in a patent case under 35 U.S.C. § 285, but that case did not even address quantum meruit or the Seventh Amendment.

[72]     *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989).

[73]     *Id*. at 42.

[74]     *Id*.

*Givens v. Delia*                                          Case No. 3:23-cv-00121-SLG
Defendant's Motion for Jury Trial                          Page 20 of 26

Agreement "is a valid and enforceable contract," and that Mr. Delia is obligated to pay the past-due amount of $102,228.78 and future payments each year until 2036 under the Fee Agreement.[75] Count II sought damages for breach of the Fee Agreement.[76] Count III sought specific performance in the form of "an order of the Court requiring [Mr. Delia] to instruct Hilcorp and/or" the United States to pay the past-due amounts to Mr. Givens pursuant to the Fee Agreement.[77] Finally, Count IV sought specific performance in the form of "an order of the Court requiring [Mr. Delia] to direct Hilcorp and/or" the United States to make "automatic, annual payments" to Mr. Givens pursuant to the Fee Agreement.[78]

This Court concluded that the Fee Agreement is illegal and unenforceable.[79] Thus, Mr. Givens is not entitled to declaratory relief, damages, or specific performance on any of Counts I through IV.[80] However, this Court also determined that Mr. Givens was entitled to pursue "recovery under the doctrine of quantum meruit" pursuant to the catch-all provision in the Complaint

---

[75]    Docket No. 1 at 9-10.

[76]    Docket No. 1 at 10-11.

[77]    Docket No. 1 at 11.

[78]    Docket No. 1 at 11-12.

[79]    Docket No. 137 at 36.

[80]    Docket No. 137 at 43.

requesting "any other relief 'as appears just.' "[81] In other words, the only issue remaining is "Mr. Givens' claim for recovery of additional attorney's fees under a theory of quantum meruit."[82]

Because attorney's fees are simply a monetary amount, the only possible relief Mr. Givens could achieve now is an award of money damages, which is a "classical form of *legal* relief."[83] As the Supreme Court explained in *Dairy Queen, Inc. v. Wood*, "however the complaint is construed," a "claim for a money judgment is a claim wholly legal in nature."[84] "As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character."[85] Even in actions based on "quasi contract," seeking "substantial money damages," like here, "[t]here can be no serious dispute" that a jury trial is a matter of right under the Seventh Amendment.[86]

---

[81]     Docket No. 137 at 37 (quoting Docket No. 1 at 14).

[82]     Docket No. 137 at 44.

[83]     *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (emphasis in original); *see also Walmart Stores, Inc. Associates' Health & Welfare Plan v. Wells,* 213 F.3d 398, 401 (7th Cir. 2000) (concluding that "suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.").

[84]     369 U.S. 469, 477 (1962).

[85]     *Id.*

[86]     *Paper Stylists, Inc. v. Fitchburg Paper Co.*, 9 F.R.D. 4, 5 (N.D.N.Y. 1949).

In his Motion for Order that Delia is Prevented by Claim Preclusion from Relitigating the Findings and Conclusions of the Fee Arbitration Panel in *Oenga v. Givens*, Mr. Givens incorrectly contends that he is still entitled to specific performance or other equitable relief under Counts III and IV of the Complaint.[87] However, this Court ruled that the Fee Agreement is illegal; consequently, it cannot be enforced through specific performance or otherwise. Mr. Delia has prevailed on Counts I through IV of the Complaint. The only issue left is the catch-all provision allowing a potential recovery of additional attorney's fees under quantum meruit.[88]

Importantly, even if—as Mr. Givens posits—there is such a thing as a quantum meruit claim "in equity, seeking an order of specific performance,"[89] which there is not, Mr. Givens would not be entitled to equitable relief in this case.[90] It is blackletter law that "[o]ne who seeks the interposition of equity must generally show that he either has no remedy at law or that no legal

---

[87]    Docket No. 144 at 27-28.

[88]    Docket No. 137 at 43-44.

[89]    Docket No. 144 at 27.

[90]    *Bradley v. Nationstar Mortg. LLC*, 2025 U.S. Dist. LEXIS 78768 at * 12 n.54 (D. Alaska Apr. 25, 2025) ("Equitable relief refers to relief other than declaratory relief or damages, including specific performance or an injunction." (quoting *United States v. Gerlach Live Stock Co.*, 339 U.S. 725, 752 (1950))).

remedy is adequate."[91] A "court will not grant specific performance when money damages are an adequate remedy."[92] Here, Mr. Givens has an adequate "legal action" for "damages that will compensate him fully,"[93] if he is successful in proving his claim.

Finally, Mr. Givens is not entitled to "an equitable lien in quantum meruit"[94]—whatever that means.[95] The Fee Agreement is unenforceable, and thus, Mr. Givens does not have any lien on Mr. Delia's allotment lease

---

[91] *Flint Hills Res. Alaska, LLC v. Williams Alaska Petro., Inc.*, 377 P.3d 959, 973 (Alaska 2016) (quoting *Knaebel v. Heiner*, 663 P.2d 551, 553 (Alaska 1983)).

[92] *Lee v. Blumenthal*, 588 F.2d 1281, 1283 (9th Cir. 1979) (citing Corbin on Contracts § 1136; Restatement of Contracts § 358).

[93] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 864 F. Supp. 2d 839, 850 (D. Alaska 2012) (quoting Wright & Miller, Fed. Prac. & P. § 2944); *see also Santander Consumer USA Inc. v. drive.car LLC,* 2024 U.S. Dist. LEXIS 213596 at * 9-10 (D. Alaska Nov. 25, 2024) ("In order to entertain a request for equitable relief, a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." (quoting *Guzman v. Polaris Indus. Inc.,* 49 F.4th 1308, 1313 (9th Cir. 2022), *cert denied sub nom. Polaris Indus. Inc. v. Albright*, 143 S. Ct. 2612 (2023))).

[94] Docket No. 144 at 28.

[95] *See United States v. Reditus Labs., LLC*, 2026 U.S. Dist. LEXIS 20696 at 30 (C.D. Ill. Jan. 30, 2026) ("At the outset, the Court is unsure what to make of the phrase 'quantum meruit lien'—a phrase Potter employs several times . . . Quantum meruit, as it happens, is a 'cause of action' to recover the reasonable value of services rendered 'where no contract exists to dictate payment.' . . . . A cause of action, by itself, does not give the plaintiff anything unless and until they vindicate it through judicial process. 'Quantum meruit lien' thus carries no more meaning than would the phrase 'negligence lien,' or 'breach of contract lien,' or 'fraud lien.' " (internal citations omitted)).

---

proceeds. As of today, Mr. Delia owes Mr. Givens *nothing*. Mr. Givens has an unproven claim for quantum meruit, nothing more—and he has the burden to prove that claim. If the jury agrees that Mr. Givens is owed compensation above and beyond the $6.5 million he has already received, he may be entitled to a money judgment against Mr. Delia, which Mr. Delia may decide to pay all at once and be done with Mr. Givens for good. But there is no need to anticipate what judgment may be entered or how that hypothetical judgment may be collected. Whether Mr. Givens is entitled to any additional attorney's fees, and the amount thereof, should be up to a jury of Mr. Delia's peers to decide.

## CONCLUSION

For the foregoing reasons, this Court should conclude that Mr. Givens' claim for quantum meruit should be decided by a jury. In pre-1791 England, quantum meruit was an action "at law" that was tried in common law courts. The Seventh Amendment preserved the jury trial right for that claim in the United States. Here, the only relief available to Mr. Givens is money damages, which is a legal remedy. Thus, this Court should enter an order confirming Mr. Delia's right to a jury trial on Mr. Givens' claim for quantum meruit.

Respectfully submitted.

DATED: May 19, 2026        LANDYE BENNETT BLUMSTEIN LLP

*/s/ Andrew Erickson*

_____

Andrew Erickson, Alaska Bar No. 1605049
Matt Mead, Alaska Bar No. 0711095

*Attorneys for Defendant Joseph Delia*

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2026, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

*/s/ Andrew Erickson*

_____

Andrew Erickson