Andrew Erickson, Alaska Bar No. 1605049
Matt Mead, Alaska Bar No. 0711095
LANDYE BENNETT BLUMSTEIN LLP
701 West Eighth Avenue, Suite 1100
Anchorage, AK 99501
(907) 276-5152
andye@lbblawyers.com
mattm@lbblawyers.com

*Attorneys for Defendant Joseph Delia*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARIA M. GIVENS, as Personal Representative of the Estate of Raymond C. Givens,<br><br>       Plaintiff,<br><br>  v.<br><br>JOSEPH DELIA,<br><br>       Defendant. | Case No. 3:23-cv-00121-SLG |

## DEFENDANT'S OPPOSITION TO GIVENS' MOTION FOR ORDER THAT DELIA IS PREVENTED BY CLAIM PRECLUSION FROM RELITIGATING THE FINDINGS AND CONCLUSIONS OF THE FEE ARBITRATION PANEL IN *OENGA V. GIVENS*

Case 3:23-cv-00121-SLG    Document 153    Filed 05/26/26    Page 1 of 29

# INTRODUCTION

To date, the Oenga family—including Joseph Delia—has paid Raymond Givens more than **$6.5 million**[1] in attorney's fees under a contingency fee agreement that this Court ruled was illegal.[2] Because Mr. Givens has already received a reasonable fee, he is entitled to nothing more. Now, Mr. Givens is attempting to enforce the illegal Fee Agreement's terms by circumventing this Court's Order, which concluded that the Fee Agreement was "unenforceable" but allowed Mr. Givens to pursue an alternative claim for the "reasonable value" of his services under the theory of quantum meruit.[3]

In his motion, Mr. Givens seeks to prevent Mr. Delia from disputing the "reasonableness" of the claimed contingent fee by binding Mr. Delia to the confidential Alaska Bar Association Fee Arbitration Decision in *Oenga Jr. v. Givens*.[4] However, Mr. Delia was not a party to that arbitration; he did not have an opportunity to participate in or control that arbitration; he never agreed to

---

[1]    *See* Docket No. 96-1 at 8. Mr. Delia follows this Court's example by referring to "Mr. Givens to include both Raymond C. Givens and, following his death, the personal representative of his estate, Ms. Maria M. Givens." Docket No. 137 at 1 n.1.

[2]    Docket No. 137 at 36.

[3]    Docket No. 137 at 36, 39.

[4]    Docket No. 144.

be bound by the outcome of that arbitration; and he has no substantive legal relationship with the petitioner in that arbitration, Leroy Oenga, Jr.

Importantly, Mr. Delia exercised his right to defend himself against the illegal Fee Agreement in this Court. Mr. Delia never agreed to arbitration involving the illegal Fee Agreement, and in fact, after Mr. Givens filed and served a "Notice of Client's Right to Arbitrate or Mediate"[5] in this case, Mr. Delia specifically declined arbitration.[6] Under the Alaska Bar Rules, fee arbitration is fundamentally different than other types of arbitration because it is completely voluntary for the client.[7] Neither the Bar Association nor an attorney—and not even the courts—can compel a client to arbitrate a fee dispute. Mr. Delia could not be forced to join Mr. Oenga, Jr.'s fee arbitration, and it was Mr. Delia's right to defend himself against Mr. Givens' claims in this Court.

This Court should conclude that Mr. Delia is not bound by the Arbitration Decision and, therefore, he is not precluded from raising any of his own factual and legal arguments in this case. Even if the Arbitration Panel could

---

[5]     Docket No. 3.

[6]     Docket No. 17 at 5 ("Delia has filed an answer in this case and believes that this Court is the appropriate forum in which to raise his defenses to the purported contingency fee contract.").

[7]     *See* Alaska Bar R. 40(a) (providing that fee arbitration may only be initiated by the client).

have decided Mr. Givens' quantum meruit claim in Mr. Oenga, Jr.'s arbitration, which it did not and could not have,[8] claim preclusion does not apply here. First, Mr. Delia was not in "privity" with Mr. Oenga, Jr. Other than being family members and co-heirs to Andrew Oenga's Alaska Native Allotment,[9] Mr. Delia and Mr. Oenga, Jr. have no substantive legal relationship. Thus, applying offensive non-mutual claim preclusion based solely on a non-immediate familial relationship and some shared interests would violate Mr. Delia's due process rights.[10]

Second, claim preclusion would violate the legal policy established in the Alaska Bar Rules. Under Bar Rule 40(a), fee arbitration proceedings may only be initiated by the client. "[A] client having a fee dispute with an attorney has a right to have the dispute resolved by arbitration. An attorney does not have a reciprocal right."[11] But here, Mr. Givens' argument is that Mr. Delia was

---

[8]    *Oenga v. Givens*, 582 P.3d 988, 996 (Alaska 2026) (noting Bar Counsel's ruling that "the issues before the panel would still be limited to those set forth in Bar Rules 34 through 42").

[9]    *See* Docket No. 30-1 at 5 (SEALED).

[10]    *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." (citing *Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 329 (1971)).

[11]    *A. Fred Miller, P.C. v. Purvis*, 921 P.2d 610, 611-12 (Alaska 1996).

required to join Mr. Oenga, Jr.'s arbitration or waive the right to contest the outcome. In essence, that would have compelled Mr. Delia to join the fee arbitration—even if he did not want to arbitrate—in violation of the letter and spirit of the voluntary fee arbitration policy created by the Bar Rules. It is even more striking here that Mr. Delia never agreed to a joint representation with Mr. Oenga, Jr. and they were never co-clients of Mr. Givens.

Third, this Court has already concluded that the "reasonableness" of Mr. Givens' fee under the Fee Agreement—the only issue decided in the Arbitration Decision—is moot.[12] Thus, for each of those reasons, this Court should conclude that claim preclusion does not apply.

## FACTS AND PROCEEDINGS

This Court is familiar with the basic facts in this case.[13] Mr. Givens was a Washington attorney who came to Alaska looking for Alaska Native clients.[14] The Oenga heirs were an Alaska Native family who had inherited a valuable allotment on the North Slope that was leased to several major oil companies.[15]

---

[12]    Docket No. 137 at 42 (concluding defense that the Fee Agreement imposes an unreasonable fee is "moot in light of the Court's determination that the Fee Agreement is unenforceable") (citing Docket No. 7 at 11).

[13]    *See* Docket No. 137 at 1-16; *Oenga*, 582 P.3d at 994-97.

[14]    Docket No. 98-1 at 2 (SEALED).

[15]    Docket No. 137 at 2.

*Givens v. Delia*                                           Case No. 3:23-cv-00121-SLG
Opposition to Motion for Order Re: Claim Preclusion          Page 5 of 29

Mr. Givens agreed to represent the Oenga heirs in their dispute regarding allotment lease payments on a contingent fee basis.[16]

In 2006, "Mr. Givens filed a lawsuit on behalf of the Oenga heirs in the Court of Federal Claims alleging that the United States has breached its fiduciary obligation and trust responsibility to the Oenga heirs by failing to collect and pay to the heirs fair market rent for their allotment."[17] After prevailing at trial and securing a final judgment of $4,924,000,[18] the Oenga heirs, the United States, and the intervenor oil companies agreed to settle the litigation on appeal. The Oenga heirs would receive a $13.5 million lump sum in exchange for dismissing their claims. The parties also agreed to execute a replacement lease agreement for the allotment.[19]

After the settlement terms had been negotiated, but before the settlement agreement was signed, Mr. Givens drafted an amendment to his Fee Agreement providing that each of the Oenga heirs would pay him "a 25% fee of the total rent received each year" from the allotment's new lease until 2036.[20]

---

[16]     Docket No. 137 at 3.

[17]     Docket No. 137 at 5 (internal quotation marks omitted).

[18]     *Oenga v. United States*, 97 Fed. Cl. 80, 88 (2011).

[19]     Docket No. 137 at 8.

[20]     *See* Docket No. 137 at 3-10; Docket No. 108-1 (SEALED); Docket No. 96-8 at 1.

Mr. Givens threatened the Oenga heirs that if they did not agree to the settlement agreement and sign his amendment to the Fee Agreement, then none of the Oenga heirs "would receive anything."[21] Faced with those threats and demands, the Oenga heirs voted to approve the settlement agreement and amended Fee Agreement.[22] The Oenga heirs made fee payments to Mr. Givens for several years under the Fee Agreement, but eventually, "disputes arose between Mr. Givens and some of the Oenga heirs regarding the payment of attorney fees."[23]

**I.** ***Givens v. Leroy Oenga, Jr.***

In 2013, "Leroy Oenga, Jr., Andrew Oenga's grandson, inherited his father's interest in the allotment through his father's will."[24] Although Mr. Oenga, Jr. had never signed the Fee Agreement and was never one of Mr.

---

[21]     Docket No. 41-2 at 1 (SEALED); Docket No. 125-10 at 2-3.

[22]     Docket No. 25-10 at 2-3.

[23]     Docket No. 137 at 10. Mr. Givens stopped providing legal services to the Oenga heirs in 2012, but he argued that the Fee Agreement required his former clients to continue making payments to him each year until 2036. Docket No. 1 at 9. Mr. Givens also continued to hold himself out as the Oenga heirs' attorney so that he could have access to their confidential financial information. *See, e.g.*, Docket No. 125-7 at 1.

[24]     *Oenga v. Givens*, 582 P.3d 988, 995 (Alaska 2026).

Givens' clients, Mr. Givens argued that the payment obligations under the Fee Agreement "run with the land" and were passed on to Mr. Oenga, Jr.[25]

"On January 21, 2021, Mr. Givens sued Leroy Oenga, Jr. in this Court" to enforce the Fee Agreement.[26] On August 10, 2021, Mr. Oenga, Jr. "moved to stay the case pending resolution of a Fee Arbitration filed with the Alaska Bar Association pursuant to Alaska Bar Rule 39," which this Court granted.[27]

Under Bar Rule 40(r), the *Oenga v. Givens* fee arbitration was a confidential proceeding.[28] Mr. Delia only learned the details of that arbitration after its conclusion. Some of the arbitration documents and records remain sealed; the following facts were disclosed to Mr. Delia subject to a protective order but were subsequently made public by Mr. Givens' filings or court orders.

---

[25]   Docket No. 96-3 at 19-20 (alleging that "the contingency fee contract included an implied-in-fact covenant that Givens' fee would be paid from annual rents through 2036, even if a signatory to the contract died before then").

[26]   Docket No. 137 at 12.

[27]   Docket No. 137 at 13. "At the time of service of a summons in a civil action against his or her client for the recovery of fees for professional services rendered, an attorney will serve upon the client a written 'notice of client's right to arbitrate or mediate.' . . . Failure to give this notice will be grounds for dismissal of the civil action." Alaska Bar R. 39(a).

[28]   "All records, documents, files, proceedings and hearings pertaining to the arbitration of any dispute under these rules will be confidential and will be closed the public  . . . ." Alaska Bar R. 40(r).

As part of the arbitration proceedings, Mr. Oenga, Jr. was permitted limited discovery into the reasonableness of the Fee Agreement.[29] Mr. Oenga, Jr. took Mr. Givens' deposition;[30] however, Mr. Delia was not provided notice or an opportunity to attend the deposition and ask Mr. Givens questions. And none of the Oenga heirs, including Mr. Delia, were deposed.

In November 2022, the arbitration panel held a three-day confidential hearing.[31] Mr. Oenga, Jr. testified, as well as Mr. Givens and three of Mr. Givens' witnesses.[32] Because Mr. Delia was not provided notice or an opportunity to attend the confidential hearing, he could not have called his own witnesses, asked questions of the other witnesses, or testified on his own. None of Mr. Givens' former clients testified in the arbitration. The arbitration panel acknowledged that glaring deficiency in its decision, noting that Mr. Oenga, Jr. "was not a client" of Mr. Givens, and Mr. Oenga, Jr. "*did not have material*

---

[29]    *Oenga v. Givens*, 582 P.3d 988, 996 (Alaska 2026) (noting that "Bar Counsel directed the panel to limit its consideration to evidence and arguments that help to determine whether the fees [under the Fee Agreement] are fair and reasonable based upon the eight (8) factors listed in Bar Rule 35(a) and [Alaska Rule of Professional Conduct] 1.5(a).").

[30]    Docket No. 144 at 5.

[31]    *Oenga v. Givens*, 582 P.3d 988, 996 (Alaska 2026).

[32]    Docket No. 144 at 5-7.

*personal knowledge regarding the details of the representation and the issues between*" Mr. Givens and the Oenga heirs.[33]

Finally, Mr. Oenga, Jr. did not call any expert witnesses to counter Mr. Givens' witness testimony. Consequently, the arbitration panel heard unrebutted opinion testimony regarding the Fee Agreement that was incomplete, inaccurate, or misleading.[34] In this case, Mr. Delia intends to introduce evidence that contradicts the arbitration panel's erroneous findings, including that Mr. Givens "devoted 6,000 hours of attorney time and 2,000 hours of paralegal time to representation of the Oenga heirs;"[35] the Fee Agreement amendments reduced Mr. Givens' fee;[36] the contingent fee sought was approximately "30.7% of the additional value" of Mr. Givens' representation;[37] and that the "added

---

[33]     Docket No. 35-1 at 13 (SEALED) (emphasis added).

[34]     For example, Mr. Givens introduced and relied on an affidavit from attorney Michael J. Schneider for the proposition that the "fee sought by Mr. Givens is thus quite close to 33-1/3%." Docket No. 144 at 7; Plaintiff's Exhibit 3 at 3. However, Mr. Schneider's affidavit admitted that his information was based solely on Mr. Givens' representations, and not any objective evidence of billings and payments. Exhibit 3 at 2. Mr. Schneider also failed to consider that Mr. Givens never reconciled the overpayments that the Oenga heirs had made between 2006 and 2012, before the second amendment to the Fee Agreement revised the fee structure to clarify that litigation costs should be deducted before Mr. Givens' contingent fee. For some reason, Mr. Oenga, Jr. did not depose Mr. Schneider or call him as a witness to dispute his faulty conclusions.

[35]     Docket No. 144 at 14.

[36]     Docket No. 144 at 9.

[37]     Docket No. 144 at 9.

value" of Mr. Givens' representation was $31 million.[38] None of those supposed "facts" can withstand close scrutiny by experts armed with Mr. Delia's "personal knowledge regarding the details of the representation."[39]

On February 10, 2023, the arbitration panel issued its confidential decision, "finding that the amount of Givens' fee was reasonable" based on the limited information that was presented at the confidential hearing.[40] The arbitration panel "declined to consider the other issues raised by Oenga's petition, specifically the broad array of challenges Oenga made to the enforceability of the fee agreement."[41] And despite the facially invalid provisions in the Fee Agreement,[42] the arbitration panel also declined to "refer Givens to Bar Counsel for any alleged ethical violation,"[43] which was likely because Mr. Oenga, Jr. had never signed the Fee Agreement, was not one of Mr. Givens' clients, and

---

[38]     Docket No. 144 at 8.

[39]     *See* Docket No. 35-1 at 13 (SEALED).

[40]     Docket No. 137 at 14 (quoting *Oenga v. Givens*, 582 P.3d at 996).

[41]     Docket No. 137 at 14 (quoting *Oenga v. Givens*, 582 P.3d at 996).

[42]     *See* Docket No. 96 at 44 (citing *Hayes v. Eagle-Picher Indus., Inc.*, 513 F.2d 892, 894 (10th Cir. 1975) (disapproving "majority rule" settlement provisions in representation agreements); *see also* Docket No. 125-9 at 8 (noting that Alaska Rule of Professional Conduct 1.8(g) "prohibits an attorney from engaging in aggregate settlements unless the advanced informed consent of the client is given in writing").

[43]     Docket No. 137 at 14 (quoting *Oenga v. Givens*, 582 P.3d at 996).

had no "personal knowledge" of Mr. Givens' ethical violations.[44] On January 23, 2026, the Alaska Supreme Court affirmed the superior court's order confirming the Arbitration Decision.[45]

## II.  *Givens v. Delia*

On May 26, 2023—more than three months after the Arbitration Decision—Mr. Givens sued Mr. Delia in this case. Mr. Givens' complaint sought $102,228.78 in damages and "an order of specific performance" requiring Mr. Delia to make additional payments to Mr. Givens each year until 2036.[46]

As required by Bar Rule 39(a), Mr. Givens filed and served a "Notice of Client's Right to Arbitrate or Mediate," informing Mr. Delia that he could "file a Petition for Arbitration of Fee Dispute or Request for Mediation and stay this civil action."[47] In the Notice, Mr. Givens did not indicate that he believed that Mr. Delia was prevented from relitigating the findings and conclusions of the Arbitration Decision. Regardless, Mr. Delia declined arbitration.[48]

On June 16, 2023, Mr. Delia answered the complaint, denying that Mr. Givens was entitled to any relief. Mr. Delia raised several affirmative defenses

---

[44]    Docket No. 35-1 at 13 (SEALED).

[45]    *Oenga v. Givens*, 582 P.3d 988 (Alaska 2026).

[46]    Docket No. 1 at 1 at 12-14.

[47]    Docket No. 3 at 1 (quoting Alaska Bar R. 39(a)).

[48]    Docket No. 17 at 5.

to the claims, including that the Fee Agreement was illegal and unenforceable because it was not approved by the United States as required by 25 U.S.C. § 410, and that Mr. Givens' claims "are barred by his own actions and the equitable doctrine of unclean hands" based on "serious breaches of his ethical and professional duties."[49] Mr. Delia also raised the defense that the Fee Agreement "imposes an unreasonable fee for attorney services in violation of the applicable rules of professional conduct governing attorneys."[50]

On July 11, 2023, Mr. Delia and Mr. Givens entered into a Confidentiality Agreement in this case and jointly moved for this Court's approval.[51] The parties recognized that "by such approval, Plaintiff's disclosures to Defendant may include all documents regarding the fee arbitration in *Leroy Oenga Jr. v. Raymond C. Givens* . . . pursuant to Alaska Bar Rule 40(r)."[52] On July 17, 2023, this Court approved the Confidentiality Agreement, authorizing for the first time Mr. Delia to receive confidential documents from the *Oenga v. Givens* fee arbitration.[53]

---

[49]    Docket No. 7 at 10-11, ¶¶ 5, 9.

[50]    Docket No. 7 at 11 ¶ 8.

[51]    Docket No. 12.

[52]    Docket No. 12 at 1-2.

[53]    Docket No. 13.

On November 11, 2023, Mr. Givens served his initial disclosures to Mr. Delia in this case, including over 9,500 pages of documents "used or generated in the fee arbitration proceeding" with Mr. Oenga, Jr. That was the first time that Mr. Delia received the entire arbitration record—nearly five months *after* the Arbitration Decision was issued.

On March 30, 2026, this Court granted in part Mr. Delia's motion for summary judgment, concluding that the Fee Agreement was an illegal contract.[54] "Because § 410 applies to the Fee Agreement and the required approval and consent were not obtained, the Fee Agreement is unenforceable as a matter of law."[55] However, this Court determined that Mr. Givens had not waived his claim to recover the "reasonable value of his services" to Mr. Delia under the theory of quantum meruit.[56]

The Order also addressed Mr. Delia's other affirmative defenses. First, this Court concluded that Mr. Delia's defense that the Fee Agreement imposed an unreasonable fee was "moot in light of the Court's determination that the Fee Agreement is unenforceable."[57] Second, this Court determined that it

---

[54]    Docket No. 137.

[55]    Docket No. 137 at 36.

[56]    Docket No. 137 at 36.

[57]    Docket No. 137 at 42 (citing Docket No. 7 at 11 ¶ 8).

"cannot resolve as a matter of law the preclusive effect of the Arbitration Decision on the unclean hands affirmative defense."[58]

On April 28, 2026, Mr. Givens filed this motion, seeking an order that Mr. Delia "is prevented by claim from relitigating here the findings and conclusions of the Panel regarding reasonable compensation to Givens" and "that Givens did not act unethically or have unclean hands in his representation of the Oenga heirs."[59]

On May 18, 2026, Mr. Delia filed a Motion for Jury Trial, arguing that under the Seventh Amendment to the United States Constitution, Mr. Delia has a right to a jury trial on Mr. Givens' quantum meruit claim.[60] Mr. Delia's motion pointed out that the facts necessary for Mr. Givens to succeed on his quantum meruit claim are disputed and must be decided by a jury after a trial.[61] For the reasons explained below, this Court should conclude that the Arbitration Decision has no preclusive effect on Mr. Delia's case.

---

[58]    Docket No. 137 at 42.

[59]    Docket No. 144-1 at 2.

[60]    Docket No. 150.

[61]    Docket No. 150 at 3-4.

## LEGAL STANDARD

"For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits."[62] However, a state's preclusion rules may not violate a party's constitutional right to due process. The Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution set a minimum standard that any court's preclusion rules must meet.[63] To the extent that a state's preclusion rules violate due process, they are preempted by federal law.[64]

## ARGUMENT

### I.  Mr. Delia was not in privity with Mr. Oenga, Jr.

Under Alaska law, claim preclusion (res judicata) applies when there is "(1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same

---

[62]  *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008).

[63]  *See id.* at 896-97 (noting that where non-parties' interests are not protected, "the application of claim preclusion was inconsistent with 'the due process of law guaranteed by the Fourteenth Amendment' (quoting *Richards v. Jefferson Cnty.*, 517 U.S. 793, 797 (1996))).

[64]  *See Richards*, 517 U.S. at 797 n.4 (holding that a state "cannot, without disregarding the requirement of due process, give a conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein." (quoting *Postal Telegraph Cable Co. v. Newport*, 247 U.S. 464, 476 (1918))).

cause of action."[65] Mr. Givens argues that the Arbitration Decision "is now a final judgment" and should be binding on Mr. Delia.[66] But even assuming a fee arbitration decision can have preclusive effect,[67] Mr. Delia was not a party to the arbitration and was not in "privity" with Mr. Oenga, Jr.

According to the Alaska Supreme Court,

> A non-party will be found to have been in privity with a party to a prior legal proceeding only if that non-party (1) substantially participated in the control of a party's presentation in the adjudication or had an opportunity to do so; (2) agreed to be bound by the adjudication between the parties; or (3) was represented by a party in a capacity such as trustee, agent, or executor.[68]

Alaska law "has adopted the approach of the Second Restatement of Judgments to issues involving privity; it is an approach that 'relies on the various specific relationships that justify preclusion.' "[69]

---

[65]   *Strong v. Williams*, 435 P.3d 872, 875 (Alaska 2018) (quoting *Patterson v. Infinity Ins. Co.*, 303 P.3d 493, 497 (Alaska 2013)).

[66]   Docket No. 144 at 23.

[67]   *But see infra* Argument II.

[68]   *Strong*, 436 P.3d at 875.

[69]   *Powers v. United Servs. Auto. Ass'n*, 6 P.3d 294, 297-98 (Alaska 2000) (quoting *Alaska Foods, Inc. v. Nichiro Gyogo Kaisha, Ltd.*, 768 P.2d 117, 121 (Alaska 1989)).

First, Mr. Delia never "substantially participated in the control" of Mr. Oenga, Jr.'s presentation to the arbitration panel. Mr. Delia could not have controlled Mr. Oenga, Jr.'s presentation in that proceeding because fee arbitrations are "confidential."[70] Mr. Delia did not receive any specific information or filings from *Oenga v. Givens* until November 16, 2023, when Mr. Givens provided his initial disclosures in this case—more than nine months after the February 10, 2023 Arbitration Decision. Mr. Delia was not privy to any of the discovery conducted in the fee arbitration; he was never served notices of the depositions taken ahead of the fee arbitration; and he was never served notice and an invitation to attend the confidential hearing. The sole fact that Mr. Delia was generally aware that Mr. Oenga, Jr. was in fee arbitration with Mr. Givens does not mean that Mr. Delia had an opportunity to substantially participate in the control of Mr. Oenga, Jr.'s case.

Second, Mr. Delia "never agreed to be bound by" the Arbitration Decision.[71] The only evidence that Mr. Givens has pointed to in support of such an agreement is Mr. Delia's statement that certain information requested by Mr. Givens in discovery was protected by the "common interest privilege."[72] Mr.

---

[70]     Alaska Bar R. 40(r).

[71]     *See* Docket No. 115 at 28.

[72]     Docket No. 129 at 12 (citing Docket No. 106-21).

Delia acknowledged that he and Mr. Oenga, Jr. "share a common interest in their defenses to [Mr. Givens'] claims and have agreed to cooperate and coordinate their legal strategies through their respective attorneys."[73] As the Ninth Circuit recognized, "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims."[74] However, simply entering into a common interest or joint defense agreement to share privileged information and strategy does not bind either party to the outcome of the other party's case.[75]

Federal courts have concluded that common interest or joint defense agreements alone are not sufficient to create "privity" between two parties. For example, in *Universal Engraving, Inc. v. Metal Magic, Inc.*, the federal district court for the District of Arizona explained that "[t]o the Court's knowledge, no court has held that the existence of a joint defense agreement, as a matter of law, establishes privity."[76] And in *Asahi Glass Co. Ltd. v. Toledo Engineering*

---

[73] Docket No. 106-21 at 6.

[74] *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012) (quoting *In re Grand Jury Subpoena,* 902 F2d 244, 249 (9th Cir. 1990)).

[75] *See Omni Food Sales v. Boan*, 2007 U.S. Dist. LEXIS 62844 at * 10 (S.D.N.Y. Aug. 24, 2007) ("Even if this defense agreement existed, however, it would prove only a litigation alliance; it alone would not create privity.").

[76] 2010 U.S. Dist. LEXIS 125702 at * 55 (D. Ariz. Nov. 29, 2010).

*Co.*, the district court for the Northern District of Ohio cautioned that when a prior arbitration was confidential and the non-party "fought its adversary with its vision dimmed," due process prevents the application of preclusion.[77]

Third, Mr. Delia was not "adequately represented" by Mr. Oenga, Jr. in the fee arbitration. The main thrust of Mr. Givens' argument is that Mr. Delia was represented by Mr. Oenga, Jr. because "their claims concern the same Native allotment; their claims concern the same underlying litigation before the Court of Federal Claims and the settlement of that claim; and they make the same arguments regarding compensation to Givens and his representation of the heirs."[78] However, Mr. Givens ignores a critical aspect of the third privity factor, which is that the party and non-party must have a "*substantive legal relationship*"[79] such "that it is fair to legally bind both."[80] Courts have described the third privity factor as applying to "limited circumstances" where a non-party was "adequately represented by someone with the same interests,"[81] such as class actions; "suits brought by trustees, guardians, and other

---

[77]     505 F. Supp. 2d 423, 437-38 (N.D. Ohio 2007).

[78]     Docket No. 144 at 24.

[79]     *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (quoting D. Shapiro, Civil Procedure: Preclusion in Civil Actions 78 (2001)) (emphasis added).

[80]     *Donnelly v. Eklutna, Inc.*, 973 P.2d 87, 92 (Alaska 1999).

[81]     *Taylor*, 553 U.S. at 894.

fiduciaries;"[82] and suits involving "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor."[83]

Here, there is no legal relationship between Mr. Delia and Mr. Oenga, Jr. Mr. Delia was never represented by Mr. Oenga, Jr. in any capacity; they were not successors in interest to the allotment; and they did not share the same interests in defending against the Fee Agreement. Mr. Oenga, Jr. never signed the Fee Agreement and was never one of Mr. Givens' clients. Thus, Mr. Oenga, Jr. lacked standing to challenge the contract formation, unlike Mr. Delia. Their different interests and defenses to the Fee Agreement produced different litigation strategies. While Mr. Oenga, Jr. demanded fee arbitration, Mr. Delia chose to protect himself against Mr. Givens' claims in this Court, including asserting his defense that the Fee Agreement was illegal.

Mr. Givens relies exclusively on *Donnelly v. Eklutna, Inc.* to support his argument that Mr. Delia is bound to the Arbitration Decision because Mr. Delia and Mr. Oenga, Jr. are "closely related."[84] But *Donnelly* is easily distinguishable from the facts here.

---

[82]  *Id.*; *see* Restatement (Second) of Judgments § 41.

[83]  *Taylor* 553 U.S. at 894, *see* Restatement (Second) of Judgments §§ 43-61.

[84]  973 P.2d 87 (Alaska 1999).

*Donnelly* involved a homesteader and his family who claimed equitable title to federal lands that were subsequently patented to an Alaska Native Corporation pursuant to the Alaska Native Claims Settlement Act (ANCSA).[85] In a federal trespass action to eject the homesteader's family, the homesteader argued that he was entitled to the property under certain provisions in ANCSA. Ultimately, the federal courts rejected the homesteader's claims to title of the disputed property.[86]

In a subsequent state court action regarding the same property, the Alaska Supreme Court concluded that the homesteader's wife and children were barred by res judicata from relitigating the same claims that had been decided against the homesteader in the federal action.[87] The Alaska Supreme Court, applying federal law, determined that "the Donnellys were in privity with Mr. Donnelly" because the "family occupied the disputed land jointly as homesteaders" and "the claims all derive from the family's common occupancy and are essentially identical to the section 14(c)(1) claim that Mr. Donnelly advanced in the federal case."[88] Because "all members of the Donnelly family

---

[85]  *Id.* at 89.

[86]  *Id.* at 91-92.

[87]  *Id.*

[88]  *Id.* at 93.

appear to have had a primary and overarching family interest in the homestead claim that Mr. Donnelly asserted," their "unity of interest suffices to establish privity."[89]

Thus, *Donnelly* stands for the proposition that family members who succeeded to the same interest in property may be bound to a prior judgment adjudicating that property interest.[90] But here, Mr. Delia and Mr. Oenga, Jr. are not successors in interest to any property. Although both own interests in the same allotment, Mr. Delia and Mr. Oenga, Jr. inherited their respective interests from different family members.[91] No property interests were transferred between Mr. Oenga, Jr. and Mr. Delia. And regardless, the Arbitration Decision did not resolve any property rights. The only issue determined by the Arbitration Decision was the reasonableness of the Fee Agreement, which was based on an illegal contract that was not even signed by Mr. Oenga, Jr.

Mr. Givens' contention that the *Donnelly* Court endorsed the theory of "virtual representation" based solely on "adequate representation" or a "unity of interests" is wrong.[92] The doctrine of "virtual representation" had a

---

[89]   *Id.*

[90]   Docket No. 144 at 24.

[91]   *See* Docket No. 30-1 at 5 (SEALED).

[92]   Docket No. 129 at 9-14.

controversial and relatively brief tenure in the federal courts, but it is no longer good law.[93] In *Taylor v. Sturgell*, the Supreme Court concluded that "[v]irtual representation would authorize preclusion based on identity of interests and some kind of relationship between the parties and non-parties, shorn of the procedural protections" required by due process.[94]

There is no daylight between Alaska law and the federal due process requirements. Because Alaska follows the Restatement (Second) of Judgments approach to claim preclusion, which emphasizes the substantive legal relationship between the party and non-party, Alaska courts would conclude that Mr. Delia was not in privity with Mr. Oenga, Jr., and therefore Mr. Delia is not bound by the Arbitration Decision.[95] However, to the extent that this Court determines that Alaska law does recognize a form of "virtual representation"— as Mr. Givens contends—then Alaska common law is preempted by the Due Process Clause.[96]

---

[93]    *See Taylor v. Sturgell*, 553 U.S. 880, 885-92 (2008).

[94]    *Id.* at 901.

[95]    *See Powers v. United Servs. Auto. Ass'n*, 6 P.3d 294, 297-98 (Alaska 2000).

[96]    *Richards v. Jefferson Cnty.*, 517 U.S. 793, 797 (1996) (concluding that Alabama Supreme Court's application of preclusion violated due process).

Case 3:23-cv-00121-SLG    Document 153    Filed 05/26/26    Page 24 of 29

Finally, Mr. Givens argues that it would be unfair to him to have to liti-gate his quantum meruit claim in this case because Mr. Delia "made a tactical decision" not to join Mr. Oenga, Jr.'s arbitration.[97] However, even if the issue decided in the Arbitration Decision was identical to the issues remaining in this case, which it is not, it was Mr. Delia's right not to be forced to join an arbitration, and that decision alone does not mean that he should be considered in privity with Mr. Oenga, Jr. As Mr. Delia has reiterated, due process guar-antees that "everyone should have his own day in court."[98] Thus, it is not "a waste of judicial efficiency and resources"[99] for Mr. Delia to defend against Mr. Givens' claim in this case when Mr. Delia never had the opportunity to do so before and was not in privity with anyone who had.

## II.    Mr. Delia had a right under the Alaska Bar Rules to decide whether to arbitrate.

The Restatement (Second) of Judgments, which Alaska courts follow,[100] limits the preclusive effect of arbitration decisions if "[a]ccording preclusive effect to determination of the issue would be incompatible with a legal

---

[97]    Docket No. 144 at 24.

[98]    *Taylor*, 553 U.S. at 893.

[99]    Docket No. 144 at 4.

[100]    *Powers*, 6 P.3d at 297-98.

*Givens v. Delia*                                                   Case No. 3:23-cv-00121-SLG
Opposition to Motion for Order Re: Claim Preclusion            Page 25 of 29

policy."[101] Here, it is important to note that the illegal Fee Agreement did not contain an arbitration provision and there was no separate agreement by the Oenga heirs to arbitrate any disputes with Mr. Givens. Instead, Mr. Oenga, Jr.'s arbitration arose under the Bar Rules, which reflect the Alaska Bar Association's legal policy to allow clients to initiate arbitration of fee disputes but only "upon request by a client."[102]

Indeed, affording preclusive effect to a fee arbitration decision stemming from a joint representation is problematic given the Alaska Bar's voluntary arbitration policy. Often, clients in a joint representation will be in privity with one another. Applying preclusion would mean that if any one client in a joint representation pursued fee arbitration, the other clients would be compelled to join or risk being bound to the decision, even if they did not consent to arbitration. Under the Restatement approach, courts should decline to give preclusive effect to an arbitration decision in that situation because it would violate the Alaska Bar's legal policy promoting only voluntary arbitration.

Here, Mr. Oenga, Jr. may have been entitled to arbitrate his fee dispute, but Mr. Delia did not consent to arbitration and could not be compelled to join, especially because Mr. Delia had never agreed to be in a joint representation

---

[101]    Restatement (Second) of Judgments § 84(3)(a).

[102]    *Oenga v. Givens*, 582 P.3d 988, 1000 (Alaska 2026).

with Mr. Oenga, Jr. Thus, this Court should conclude that according preclusive effect to the Arbitration Decision would be incompatible with the Bar Rules because it was Mr. Delia's right not to be forced to arbitrate.[103]

### III. The reasonableness of the Fee Agreement is moot.

Lastly, Mr. Givens argues that because the Arbitration Decision concluded that the Fee Agreement was reasonable under the Bar Rules, there is nothing further to decide in this case. However, this Court concluded that Mr. Delia's defense that the Fee Agreement imposed an unreasonable fee was "moot in light of the Court's determination that the Fee Agreement is unenforceable."[104] The reasonableness of the Fee Agreement cannot be both a dispositive issue in favor of Mr. Givens and, at the same time, moot.

Implicit in this Court's ruling is the understanding that the remaining issues in this case—Mr. Givens' claim for quantum meruit and the application of Mr. Delia's equitable defenses—are different than the reasonableness of the fee under the Fee Agreement. To prevail on his quantum meruit claim, Mr.

---

[103] Mr. Givens should be estopped from arguing that Mr. Delia never had a right to separately arbitrate his fee dispute here because Mr. Givens filed and served a "Notice of Client's Right to Arbitrate or Mediate," specifically advising Mr. Delia that he had a right to demand arbitration. *See Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 601 (9th Cir. 1996) ("Judicial estoppel is intended to protect against a litigant playing fast and loose with the courts." (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990))).

[104] Docket No. 137 at 42.

Givens has the burden to prove that he is entitled to recover the "reasonable value of his services" to Mr. Delia.[105] That is a different issue than whether the Fee Agreement complied with the Bar Rules.[106]

Because Mr. Givens did not file a motion for reconsideration of this Court's Order on summary judgment, he is bound by that ruling. Thus, even if the Arbitration Decision had preclusive effect, which it does not, the only issue it did and could have decided, is no longer a live controversy in this case.

## CONCLUSION

For the foregoing reasons, this Court should conclude that Mr. Delia is not prevented by claim preclusion from relitigating the findings and conclusions in the Arbitration Decision. Mr. Delia was not a party to the fee arbitration and was not in privity with Mr. Oenga, Jr. It was Mr. Delia's right not to join the fee arbitration because he is entitled to "have his own day in court"[107] in this suit. Mr. Givens' motion should be denied.

Respectfully submitted.

---

[105]    Docket No. 137 at 36.

[106]    Mr. Delia's defense that Mr. Givens' claims "are barred by his own actions and the equitable doctrine of unclean hands" based on Mr. Givens' conduct during the attorney-client relationship could not possibly have been litigated in the arbitration because Mr. Oenga, Jr. had never been a client and "did not have material personal knowledge" of the representation.

[107]    *Taylor*, 553 U.S. at 893.

DATED: May 26, 2026          LANDYE BENNETT BLUMSTEIN LLP

                             */s/ Andrew Erickson*

                             _____

                             Andrew Erickson, Alaska Bar No. 1605049
                             Matt Mead, Alaska Bar No. 0711095

                             *Attorneys for Defendant Joseph Delia*

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2026, a copy of the foregoing was served

by electronic means on all counsel of record by the Court's CM/ECF system.

                             */s/ Andrew Erickson*

                             _____

                             Andrew Erickson